R. Michael Shickich
Law Offices of R. Michael Shickich, LLC
111 W. 2nd Street, Ste. 500
Casper WY 82601
Phone: 307-266-5297
Fax: 307-266-1261
E-mail: rms@injuryfirm.net

Robert D. Sherlock (*pro hac vice forthcoming*)
Sarah Wade (*pro hac vice forthcoming*)
rsherlock@egclegal.com
swade@egclegal.com
EISENBERG, GILCHRIST & CUTT
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone 801-366-9100
Fax 801-350-0065
Attorney for Qui Tam Plaintiffs/Relators

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 JUL 15 PM 4: 07

STEPHAN HARRIS, CLERK
CASPER

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARK GASKILL<br><br>Plaintiffs,<br><br>vs.<br><br>DR. GIBSON CONDIE, PH.D.; BIG HORN BASIN MENTAL HEALTH GROUP; NORTHWEST WYOMING COMMUNITY ACTION PROGRAM, INC.; ACUMEN FISCAL SERVICES; TERI GREEN (INDIVIDUALLY AND IN HER CAPACITY AS WYOMING MEDICAID DIRECTOR); AND JOHN DOES #1-100, FICTITIOUS NAMES,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No.** 16 CV 201 J<br><br>**COMPLAINT<br>FALSE CLAIMS ACT, 31<br>USC 3729 ET. SEQ.**<br><br>**FILED IN CAMERA AND<br>UNDER SEAL PURSUANT<br>TO 31 U.S.C. 3730**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

I. INTRODUCTION ……………………………………………………….……4

II. JURISDICTION & VENUE ……………………………………………….......5

III. PARTIES ……………………………………………………….….…6
    A. RELATORS ……………………..……………………………………....6
    B. DEFENDANTS …………………….….………………………………7

IV. FEDERAL STATUTES AND REGULATIONS APPLICABLE
    TO DEFENDANTS' FALSE CLAIMS ACT VIOLATIONS ……………....…9
    A. THE FEDERAL FALSE CLAIMS ACT ……………………….….…….……….9
    B. THE ANTI-KICKBACK STATUTE ……………….…….….……………10

V. FEDERAL GOVERNMENT HEALTH CARE PROGRAMS: WYOMING
    MEDICAID…..………………….......………………….……………………12
    A. FEDERAL MEDICAL ASSISTANCE:…….........................................12
    B. WAIVERS AND DEMONSTRATION PROJECTS: …………………………14
    C. SELF-DIRECTED SERVICES ……………………….……………….....15

VI. MANDATORY AND MATERIAL REQUIREMENTS FOR WYOMING
    MEDICAID PROVIDERS ……………………………………………......16
    A. ENROLLMENT AND SCREENING OF PROVIDERS …………..…………....16
    B. MEDICAL NECESSITY AND COST EFFECTIVENESS …………………….17
    C. CLAIMS ARISING FROM A VIOLATION OF THE ANTI-KICKBACK
    STATUTE ARE NOT COVERED SERVICES …………………………….17
    D. CLAIMS MUST BE SUPPORTED BY DOCUMENTATION OF
    SERVICES RENDERED AND DIAGNOSIS TO SUPPORT
    THOSE SERVICES……………………………………….…...……….....18

**VII. DEFENDANTS' SCHEMES TO KNOWINGLY AND INTENTIONALLY DEFRAUD WYOMING MEDICAID**.............18

    A. DEFENDANTS BIG HORN BASIN MENTAL HEALTH GROUP, INC., AND DR. GIBSON CONDIE, PH.D. ............................18

    B. DEFENDANT NOWCAP ENTERED INTO A KICKBACK ARRANGEMENT WITH DEFENDANT BHB AND DEFENDANT CONDIE ........................26

    C. DEFENDANT ACUMEN KNOWINGLY DISREGARDED MATERIAL FEDERAL AND WYOMING PROVIDER ENROLLMENT REQUIREMENTS........28

**VIII. SPECIFIC EXAMPLES OF MEDICAID FRAUD AT BIG HORN BASIN MENTAL HEALTH GROUP** ...............................…..30

**IX. DEFENDANTS' RETALIATION AGAINST RELATOR** .....…..........47

**X.   CLAIMS FOR RELIEF** ……………………………………….……48

**XI.  PRAYER FOR RELIEF** ……………...…..………………..……...…55

**XII. DEMAND FOR TRIAL BY JURY**...………..…………….…………56

## I. INTRODUCTION

1. On behalf of the United States of America pursuant to the qui tam provisions of the Federal False Claims Act, 31 U.S.C. § 3729 et seq., Plaintiff/Relator Mark Gaskill files this qui tam Complaint against Defendants for false and fraudulent claims, material failures to perform Medicaid and Medicare regulatory requirements, and receiving government contracts and funds on the basis of false certifications of compliance with these same requirements and regulations. Relators seek treble damages, and civil penalties arising from Defendants' conduct described herein, as well as all relief statutorily available due to the retaliation against Relator as set forth in 31 U.S. Code 3730(h).

2. This action concerns improper and unlawful submission of factually false claims, claims based upon false records and statements, causing the State of Wyoming to submit false certification to the Federal Government to obtain Federal Financial Participation funds, and express and implied certifications, all made by Defendants, in order to, *inter alia*, conceal and misrepresent to Medicaid authorities and the Federal government Defendants' fraudulent and knowingly false claims to  Wyoming Medicaid in violation of 31 U.S.C. § 3729(a).

3. Relator discovered these violations in the course of his work as the Manager of Program Integrity for Wyoming Medicaid. He brought these matters to the attention of his Department and the Federal Government, and was terminated from his position as a result. He also conducted his own investigation in furtherance of a False Claims Act qui tam action. He brings this action on behalf of the United States to recover damages for the false claims that have been and continue to be submitted.

## II. JURISDICTION AND VENUE

4. This action is brought on behalf of the United States Government under 31 U.S.C. § 3729, *et seq.*, commonly known as the False Claims Act ("FCA"). Relators bring this action under 31 U.S.C. § 3730(b) to recover for false claims which Defendants **Dr. Gibson Condie, Ph.D.,** *et al.*, knowingly submitted or caused to be submitted, and were made, used, or caused to be made or used in violation of 31 U.S.C. § 3729.

5. This Court has jurisdiction over such FCA claims pursuant to 31 U.S.C. § 3730(b), 31 U.S.C. § 3732(a), and 28 U.S.C. § 1331.

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found in this district and the conduct described herein occurred in this district.

7. Relators' claims and this Complaint are not based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States Government is or has been a party, as enumerated in 31 U.S.C. § 3730(e)(3).

8. To the extent that there has been a public disclosure known or unknown to the Relators, Relators are the "original source" and meet the requirements under 31 U.S.C. § 3730(e)(4)(B). To the extent there has been a public disclosure of any facts or other matters relevant to this Complaint, Relators' allegations herein are based on their knowledge that is independent of and materially adds to publicly disclosed allegations or transactions – if any – and meets the requirements under 31 U.S.C. § 3730(e)(4)(B).

## III. PARTIES

**A. RELATORS**

9. Plaintiff Relator Mark Gaskill is a resident of Wyoming.  From 1981 to 1987 he
served as a Hospital Corpsman with the United States Navy. He holds a Bachelor's Degree in
Psychology from Old Dominion University (1987) and a Master's Degree in Family Therapy
from Drexel University (1994). He previously taught courses in Psychology and Marital &
Family Therapy at Temple University and La Salle University, and was previously employed
at the Utah Medicaid Office of the Inspector General (OIG), in Salt Lake City, Utah, as the
Manager of Data Analytics.  From July 1, 2015 through May 6, 2016, Relator was employed
by the State of Wyoming as the Manager of Quality Assurance and Program Integrity for the
Wyoming Department of Health, Division of Healthcare Financing, Program Integrity
(Medicaid), i.e., Wyoming Medicaid. The Medicaid Program Integrity Unit reviews claims
paid to providers to ensure documentation supports the billing and payment for services.  The
Program Integrity Unit is also charged with recovering funds that are identified as having been
improperly paid and/or not sufficiently documented.

10. Relator was terminated from that position on May 6, 2016, by his direct supervisor,
Defendant Teri Green (the Wyoming State Medicaid Agent) immediately after Relator met
personally with agents of the U.S. Department of Health and Human Services Office of the
Inspector General. At that meeting the facts underlying this Complaint were provided to the
Agents and Relator disclosed to the relevant Federal Agents substantially all material evidence
and information the Relator possesses. This meeting was held after disclosure of the same

information to agents of the State of Wyoming, which disclosure brought no substantive remedial response from the relevant state agents.

11. Relator has direct and independent knowledge regarding the matters set forth herein. In particular, Relator has direct and independent knowledge regarding Defendants' conduct and practices as described in this Complaint and all related matters as alleged herein.

## B. Defendants

12. Defendant Big Horn Basin Mental Health Group, Inc. is a Wyoming for-profit Corporation located at 1054 Vali Rd, Powell, Wyoming 82435. Its sole officer and shareholder is Defendant Dr. Gibson B. Condie (President). Defendant Big Horn Basin is the registered holder of NPI number 1366658601, as an Organization, with specific taxonomies of "193200000X MULTI-SPECIALTY GROUP and 103TC0700X - Psychologist Clinical." The Authorized Official for the organization is Defendant "DR. GIBSON B. CONDIE PH.D. Title: PSYCHOLOGIST. Defendant Big Horn Basin Mental Health Group is a Wyoming registered Medicaid Participating Provider with number 124068400.

13. Defendant Gibson B. Condie, Ph.D., is a resident of Powell, Wyoming. He is the principal and sole provider, officer, and director of Defendant Big Horn Basin. He developed, conceived, and operated the schemes detailed herein and directly received funds generated by the schemes. Defendant Condie purportedly holds a Ph.D. in School Psychology, and is a psychologist in the State of Wyoming.

14. Defendant Northwest Wyoming Community Action Program, Inc. (hereinafter "NOWCAP") is a Wyoming corporation. It is a "community action" corporation (non-governmental "agency"). NOWCAP operates NOWCAP Services, a program for persons with

7

developmental disabilities. NOWCAP Services provides services to people with developmental disabilities and brain injuries throughout Wyoming and currently has offices in Casper, Cody, Worland and Rock Springs. NOWCAP Services Program elements include: Day Programs, Supported Residential Living, 24-Hour Skilled Nursing, Certified Nurses Assistants, Assistive Technology, Transportation, Medical Services, Speech, Occupational and Physical Therapy.

15. Defendant ACUMEN Fiscal Agent is a Fiscal Employer Agent under a contract for such services with Wyoming Medicaid for handling Home and Community based Self-Directed Care funds. The fiscal intermediary relieves individuals receiving services and their families of the basic tasks (including payment directly to Providers) of an employer-employee relationship. The individual receiving services is the employer, who recruits, hires, schedules, and trains his/her own "employees," i.e. persons actually providing care.

16. Defendant Teri Green is, and at all times relevant to this complaint (as it relates to her wrongful conduct) was the State Medicaid Director for the State of Wyoming Department of Health, at 6101 Yellowstone Road, Suite 210 Cheyenne, WY 82002. Defendant Green, acting on her own volition or, alternatively, at the direction of her superiors in the Wyoming State Department of Health or elsewhere, executed and carried out the wrongful termination of Relator as a direct result of, and in direct retaliation for, Relator's lawful acts done in furtherance of efforts to stop one or more violations of 31 U.S.C. § 3729. Such termination was in direct violation of 31 U.S.C. § 3730(h).

17. Defendants John/Jane Does #1-100, fictitious names, are co-conspirators (which may include Wyoming State government employees in their individual capacities) or co-defendants

8

who together with the Named Defendants also participated in and/or conspired to perpetuate

the scheme described herein. To the extent that any of the conduct or activity described in this

Complaint was not performed by Defendants, but by the individuals described herein as Does

#1-100, fictitious names, the term "Defendants" shall also refer to Does #1-100.

## IV. FEDERAL STATUTES AND REGULATIONS APPLICABLE TO DEFENDANTS' FALSE CLAIMS ACT VIOLATIONS

### A. THE FEDERAL FALSE CLAIMS ACT

18. Pursuant to the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(A) *et seq.*, a cause

of action arises when any person knowingly presents, or causes to be presented, a false or

fraudulent claim for payment or approval or creates a false record or statement to decrease an

obligation to transmit money owed to the United States Government.

19. As defined under 31 U.S.C. §3729(b)(1), "knowing" and "knowingly" means: (i) has

actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of

the information; or (iii) acts in reckless disregard of the truth or falsity of the information.  No

proof of specific intent to defraud is necessary.

20. The False Claims Act further provides that the relator shall receive an amount which

the court decides is reasonable for collecting the civil penalty and damages. The amount is not

less than 15% and not more than 25% of the proceeds of the action if the Government

intervenes in the case, or not less than 25% nor more than 30% if the Government does not

intervene. The relator shall also receive an amount for reasonable expenses, attorney's fees and

costs. All such expenses, fees and costs shall be awarded against the Defendants.

21. The False Claims Act also provides protection and affords a cause of action to any person who suffers discrimination or damaging employment action as a result of taking lawful actions to stop one or more of the types of conduct proscribed by the False Claims Act:

"Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter. (2) Relief.— Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection."

## B. THE ANTI-KICKBACK STATUTE

22. The Medicare and Medicaid Patient Protection Act, also known as the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b), was enacted in 1972 and amended in 1977 to prohibit receiving or paying "any remuneration" to induce referrals. In addition to criminal penalties, a violation of the AKS can subject the perpetrator to exclusion from participation in Federal Health Care Programs, 42 U.S.C. § 1320a-7(b)(7), as well as civil monetary penalties of $50,000 per violation, 42 U.S.C. § 1320a-7a(a)(7), and three times the amount of remuneration paid, regardless of whether any part of the remuneration is for a legitimate purpose, 42 U.S.C. § 1320a-7a(a).

23. The AKS prohibits any person or entity from knowingly and willfully offering to pay or paying any remuneration to another person to induce that person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal Health Care Program. This includes any State health program or health program funded in part by the federal government. 42 U.S.C. §§ 1320a-7b(b), 1320a-7b(f).

24. The statute provides, in pertinent part:

> [W]hoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
>
> 42 U.S.C. § 1320a-7b(b).

25. In the Patient Protection and Affordable Care Act (PPACA) the AKS was amended to explicitly state that "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act ("PPACA"), Pub.L. No. 111-148, 124 Stat. 119 § 6402(f) (2010) (codified as amended at 42 U.S.C. § 1320a-7b(g)).

26. "Kickbacks" are broadly defined to include payments, gratuities, and other benefits provided to physicians. For purposes of the AKS the term "remuneration" includes the transfer of *anything of value*, directly or indirectly, overtly or covertly, in cash or in kind.

27. Compliance with the AKS is a precondition to participation as a health care provider under federally-funded healthcare programs including but not limited to state Medicaid programs. In addition, compliance with the AKS is a condition of payment for claims for which Medicare or Medicaid reimbursement is sought by medical providers.

## V. FEDERAL GOVERNMENT HEALTH CARE PROGRAMS: WYOMING MEDICAID

28. Medicaid was established by Title XIX of the Social Security Act of 1965, 42 U.S.C. §1396-1396v. Medicaid is a jointly funded federal-state program and enables states to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary medical services. Funding for Medicaid is shared between the Federal Government and those state governments that choose to participate in the program, in accordance with Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*

29. Medicaid providers must comply with both state and federal rules and regulations that are applicable to such organizations under federal law, the state's Medicaid plan (as approved by the Department of Health and Human Services), and any federal waivers granted to the state. 42 CFR §438.602.

30. **Federal Medical Assistance:**   The Federal Government pays a portion of Medicaid costs through the Federal Medical Assistance Percentage (FMAP). In Wyoming, the Federal government, from FY 2011 to present, paid for approximately 50 % of all Medicaid health care services in Wyoming. The State of Wyoming funds the remaining percentage.

31. The Federal government pays each state for this portion of the Medicaid program through quarterly grants. To receive Federal Medicaid managed care grants each state submits

a quarterly estimate to the United States for estimated costs, including an estimate for services. The quarterly estimate is submitted on a Form CMS 37, which includes a certification that:

> . . . budget estimates only include expenditures . . . that are allowable in accordance with the applicable federal, state, and local statutes, regulations, policies, and the state plan approved by the Secretary and in effect during the fiscal year under  Title XIX of the Act for the Medicaid Program.

32. The United States uses the estimate in the CMS 37 to make grant awards for that quarter. The award authorizes the state to draw federal funds as needed through a line of credit.

33. At the end of each quarter, the state submits its quarterly expenditure report, Form CMS 64, which details each state's actual expenditures. The form must be executed and certified by the executive officer of the state agency or his/her designee.  The reconciled payments to providers for covered services to eligible beneficiaries are included in Form CMS 64, which includes the same certification as in the CMS 37:

> This report only includes expenditures under the Medicaid program  . . . that are allowable in accordance with applicable implementing federal, state, and local statutes, regulations, policies, and the state plan approved by the Secretary and in effect during the Quarter . . . .

34.  Medicaid programs, constitute "Federal Health Care Programs" as defined in 42 U.S.C. § 1320a-7b(b).

35. Expenditures or payments under the Medicaid program that are made pursuant to a kickback induced scheme are not allowable and not reimbursable under applicable implementing federal and state statutes and regulations.

36. Expenditures or payments under the Medicaid program that are made in violation of material Medicare conditions of payment, participation, or other requirements are excluded from coverage and are not reimbursable under applicable implementing federal and state statutes and regulations.

37. **Waivers and Demonstration Projects**:   Pursuant to Section 1915 (c) of the Social Security Act, 42 U.S.C. 1396n , a state may with the approval of HHS, obtain waivers of contain proper elements to exponent with other delivery methods. The 1915(c) waivers are one of many options available to states to allow the provision of long term care services in home and community based settings under the Medicaid Program.

38. Wyoming currently has approval from HHS for a Section 1915(c) waiver for Home community based (HCBS) services waiver. HCBS services are those services provided under waiver that would not be otherwise available under the Wyoming Medicaid state plan. Such services enable the elderly, disabled, and chronically mentally ill persons, who would otherwise be placed in an institution, to live in the community.

39. States can offer a variety of services under the HCBS Waiver program. Programs can provide a combination of standard medical services and non-medical services. Standard services include but are not limited to: case management (i.e. supports and service coordination), homemaker, home health aide, personal care, adult day health services, habilitation (both day and residential), and respite care.  States can also propose "other" types of services that may assist in diverting and/or transitioning individuals from institutional settings into their homes and community.

40. In addition to the homebound services, the state of Wyoming has a § 1915 (c) waiver to provide a range of services to children and adults with developmental disabilities and intellectual disabilities. The range of services provided under these waivers includes such things as residential rehabilitation, case management, companion services, dietitian and environmental modifications, training, skilled nursing, and the like. Some comprehensive waiver beneficiaries may include some behavioral support services as well. Providers billing state Medicaid for this range of services bill services as "wavier" services. However some beneficiaries receiving services may also qualify for non-waiver services (such as medical and mental health) under Wyoming Medicaid. These services would be billed as non-waiver services. Waiver services are subject to limitations on frequency, intensity, etc., pursuant to their plan of care and regulatory limitations.

41. **Self-Directed Services:** The §1915(C) (HCBS) Waiver in Wyoming also includes home-based "self-directed services."  Self-direction is a service model within the HCBS waiver program that allows public program beneficiaries to direct and manage their own supports and services. Self-directed care is a service delivery mechanism that empowers individuals with the opportunity to select, direct, and manage their needed services and support identified in an individualized service plan and budget plan.

42. Self-direction is not a service, but rather an alternative to the traditional service delivery model. In this alternative, a worker (provider) hired by the Medicaid recipient will furnish the Medicaid service to the Medicaid beneficiary and the Medicaid beneficiary retains the control and authority over who provides the services, how the services are provided, and the hours they work.  However, in Wyoming a Fiscal Agent serves as an intermediary, and

upon receipt of timesheets from the provider undertakes to pay the provider directly for

Medicaid-covered services. The Beneficiary is relieved of payroll and other such tasks that are

incumbent on an employer.

## VI. MANDATORY AND MATERIAL REQUIREMENTS
## FOR WYOMING MEDICAID PROVIDERS

### A. ENROLLMENT AND SCREENING OF PROVIDERS

43. Federal and Wyoming Medicaid regulations require each individual provider

rendering services to Wyoming Medicaid recipients (other than in an emergency, or other

limited circumstances) to have formally enrolled with Wyoming Medicaid.

> 42 CFR 455.410 - Enrollment and screening of providers.
> (a) The State Medicaid agency must require all enrolled providers to be
> screened under this subpart.
> (b) The State Medicaid agency must require all ordering or referring physicians
> or other professionals providing services under the State plan or under a waiver
> of the plan to be enrolled as participating providers. . .[1]

44. Any person rendering Medicaid –compensated services to a beneficiary is a

"provider":

> "Provider means any individual or entity furnishing Medicaid services
> under a provider agreement with the Medicaid agency";
>
> 42 CFR 1000.30

---

[1] See also 42 CFR 1000.30. Wyoming Medicaid Rules, Chapter 13, § 5(a) (2002); Wyoming Medicaid Rules, Chapter 13, § 4(a) (2015); Wyoming Medicaid Rules, Chapter 26, Sections 7 (a) and (b) (2006); Medicaid Provider Participation Agreement, paragraphs 5.A and H; Provider Enrollment Certification 6; CMS-1500 Manual, 3.1; and Medicaid Bulletin, effective 12/1/12, Supervising Physicians and Psychologists Billing Wyoming Medicaid.

(a) Payments only to providers.  No person or entity that provides services to a recipient shall receive Medicaid funds unless the person or entity is a party to a fully executed provider agreement and is enrolled.

(b) Enrollment as provider.  An individual or entity which wishes to participate in the Medicaid program shall apply to be a provider on the forms specified by the Division.

Wyoming Medicaid Rules, Chapter 3, §§ 4 (a) and (b) (1998)

45. All treating providers must be enrolled with Wyoming Medicaid both at the time of an initial treatment and during the course of treatment. Medicaid payment is made only to providers who are actively enrolled in the Medicaid Program. 42 CFR 455.410(b). The State Medicaid agency requires all ordering or referring physicians or other professionals providing services under the State plan or under a waiver of the plan to be enrolled as participating providers.

## B. MEDICAL NECESSITY AND COST EFFECTIVENESS:

46. All services covered by Wyoming Medicaid funds must be medically necessary and cost effective. Services that lack medical necessity are not covered services.  Including any such services and reporting the same on a CMS 1500 or equivalent billing form (upon which Wyoming Medicaid relies in payment and in its CMS 37 and 64 filings) constitutes a false record underlying a claim and an express false certification.

## C. CLAIMS ARISING FROM A VIOLATION OF THE ANTI-KICKBACK STATUE ARE NOT COVERED SERVICES:

47. Services that arise from a kickback scheme are not covered services. They are not rendered in accordance with applicable federal law and cannot be lawfully claimed for Medicaid reimbursement. Including any such services and reporting the same on claim forms

(upon which Wyoming Medicaid relies in its CMS 37 and 64 filings) constitutes false claims, and false records underlying a claim, as well as and express false certifications.

**D. CLAIMS MUST BE SUPPORTED BY DOCUMENTATION OF SERVICES RENDERED AND DIAGNOSIS TO SUPPORT THOSE SERVICES:**

48. As set forth in Wyoming Department Of Health, Wyoming Medicaid Rules, Chapter 3, Provider Participation, Section 7:

> A provider shall maintain medical and financial records, including information regarding dates of services, diagnoses, services furnished, and claims, for at least six years after the end of the state fiscal year in which payment for services was rendered.

49. Further, these documentation requirements must be fulfilled before a claim is filed:

> A provider must have completed all required documentation, including required signatures, before or at the time the provider submits a claim to the Division. Documentation prepared or completed after the submission of a claim <u>will be deemed to be insufficient to substantiate the claim</u> and Medicaid funds shall be withheld or recovered." [emphasis added]

## VII. DEFENDANTS' SCHEMES TO KNOWINGLY AND INTENTIONALLY DEFRAUD WYOMING MEDICAID

**A. DEFENDANTS BIG HORN BASIN MENTAL HEALTH GROUP, INC., AND DR. GIBSON CONDIE, PH.D.**

50. Beginning in approximately 2001 or earlier, Defendant Gibson Condie created, facilitated, and structured a scheme to knowingly and intentionally submit false claims to the Wyoming Department of Health for services purportedly rendered to Wyoming Medicaid

beneficiaries. These claims were, and are, submitted to Wyoming Medicaid and include funds received pursuant to a Federal Health Care program and include federal funding.

51. The scheme created by Defendant Condie involved the creation of a corporate shell, i.e., Defendant Big Horn Basin Mental Health Group, Inc. (hereinafter "BHB"). BHB is a corporation sole, i.e., its only shareholder, officer and director is Defendant Condie. BHB was created to function as a mere conduit through which Defendant Condie and a wide variety of other therapists submitted, and continue to submit, claims to Wyoming Medicaid. Through at least the end of 2015, none of these other providers were enrolled with, contracted to, or otherwise registered with or screened by Wyoming Medicaid. Neither Defendant BHB nor Defendant Condie employed or otherwise entered into any written contracts for services from any of these "providers" or any other recipients of Medicaid funds.

52. These other providers in included but may not be limited to the following individuals:

> Kristen Akin,  Ty Barrus, Dennis Baxter, Gregory Bennett, Jan Brinkerhoff, Gerry Burton, Savina Butler, Amy Campbell, Jessica Campbell, Melinda Campbell, Susie Cervantes, Michelle Chouinard, Kandi Cook, Michelle Croft, Pat D'Alessandro, Jennifer D'Alessandro, Kim Dillon, Devin Dutson,  Megan Garza, Chris Gauger, Beth Gilb, Lauren Graham, Jeff Greaham, Chris Hancock,Will Hiser, ,Jacque Hunter, Karren Jameson, Suzette Jewel,Lila Jolley, Treena Jones, Raena Kary, Julie Laib, Brittany Macleod, Matthew McNiven, Mindy Mickelson, Tasha Miller, NOWCAP Services (Chris Boston, CEO), Northwest Wyoming Treatment Center, Phil Olson, Shane Roberts, Stephanie

Rodriguez, Mark Schledewitz, Jamie Shaffer, Trish Shorb, Shelly Shultz, Colton

Slayter, Blake Vardell, Alana Whitaker,  and Jessica Williams.

53. Defendant BHB is not a "group practice" and does not consist of either employed or

contracted mental health providers. BHB has no employment relationship with any provider or

practitioner submitting its bills through Defendants BHB and Condie. Defendant BHB, in

addition, has no written contractual relationship of any kind with any such provider. Rather, all

providers utilizing the BHB billing and referral scheme are part of this group only on the basis

of verbal or "handshake" agreements. BHB does not provide any services other than referrals,

intra-group referrals, and aggregated billing (together with disbursement of funds when

payment is received at BHB) for any "member" of the group.

54. Those providers for whom Defendant's BHB and Condie provide billing and

referral services maintain a referral "network," referring to each other within the BHB

umbrella for services. Defendants Condie and BHB act as the "hub" for this network.

BHB des not maintain any central location. Big Horn Basin operates out of Defendant

Condie's home.

55. For each claim submitted, Defendant Condie submitted the claims under the identity

of BHB and submitted the claims listing BHB as both the billing provider and the treating

provider for the Medicaid patients on whose behalf the bills for mental health services were

submitted. Neither BHB nor Condie was, in fact, the treating provider for any of the claims

submitted after at least January 1, 2014.

56. For nearly all of such claims, Defendant Condie submitted a claim to Wyoming

Medicaid using a false diagnosis code. Defendant Condie submitted the claims listing the

diagnoses for each patient as ICD (International Classification of Diseases) code 311,
Depressive disorder, not elsewhere classified.

57. In other words, this is a generic code for a patient with depression that cannot be
more specifically defined. However, this code bore no known or identifiable relationship to the
actual diagnoses as documented in medical records or as assigned by the treating clinician.
Defendant Condie, for billing purposes, re-diagnosed each patient even though he had no
records in front of him, had never seen the patients, and had no basis to assign this fraudulent
code to a claim. Relators are informed and believe that such diagnosis was assigned simply for
ease of entry and to "make the claims go through" the Wyoming Medicaid claims-payment
systems.

58. As a result of this scheme, the State of Wyoming and Wyoming Medicaid had no
knowledge or record of the identity of the provider rendering service, no access to clinical
records of the treatment, and no actual knowledge of the correct or proper diagnosis for the
patient for whom services were being rendered.

59. By submitting claims for payment using payment codes that corresponded to
specific counseling and specific diagnoses, Defendants BHB and Condie represented that
they had provided the services billed and that those services were in treatment and medically
necessary for the treatment of the listed diagnoses.

60. Moreover, BHB and Condie made further representations in submitting Medicaid
reimbursement claims by using National Provider Identification numbers corresponding to
specific job titles. These professional titles bore no relationship to the actual qualifications (if
any) of the individuals actually providing the services billed. These representations were

clearly misleading in context. Anyone reviewing the bills/claims submitted for payment would likely —but wrongly—conclude that BHB, through its only known clinician, Defendant Condie, had rendered the service, not that it had "farmed out" the service to another person with whom it had no obvious relationship. By using payment and other codes that conveyed this information without disclosing the actual provider rendering the service and the actual treating diagnosis, this makes the claims submitted on these representations false claims.

61. In addition to other issues identified, the services were not lawfully billed to Wyoming Medicaid because they were rendered by providers not enrolled with or screened by the State of Wyoming for such services.

62. The claims for such services were knowingly and intentionally hidden from the State of Wyoming by using the fraudulent service codes. Defendant Condie or Defendant BHB's billing identities and bogus diagnostic codes did not represent any relationship to the actual patient or the actual provider delivering services to the patient.

63. In addition to the foregoing, Defendant BHB and Defendant Condie billed for other providers where such other services billed were not supported by any evidence of any compensable services having been delivered.

64. Each such claim was false at the time it was submitted and was knowingly and intentionally false, or was submitted in reckless disregard of repeated and explicit requirements barring the receipt of Wyoming Medicaid money by a provider not control with Wyoming Medicaid.

65. Defendant Condie and Defendant Big Horn Basin, provided this "billing service," which principally involved the use of Defendant Condie and BHB's identity to submit claims otherwise not compensable under highly material Medicaid regulations.  In exchange for use of their identity, Defendants Condie and BHB retained not less than 10% of the funds received by BHB for services purportedly rendered by these unregistered, unenrolled and therefore non-compensable providers.

66. Relator is informed and believes that prior to 2013, Defendant Condie actually retained 15% of the fees received from Wyoming Medicaid.

67. Defendant BHB thus retains a "cut" of the compensation, unrelated to any actual service provided by BHB or Condie. That "cut" or compensation varied with the volume or value of the amounts billed to and collected from Wyoming Medicaid. The amount received and retained by these Defendants is not related to the actual cost of providing the aggregated billing service or clerical services performed in submitting these false claims to Wyoming Medicaid.

68. In addition to providing the service of using his own Medicaid identity as both the billing and treating provider, Defendant Condie provided referrals for services in exchange for this fee. The services consisted of "rainmaking," i.e., receiving referrals and gathering patients for mental health services and in turn referring these patients to other therapists within his fraudulent "group." Thus, the ministerial act of submitting claims to the State under his billing identity was coupled with compensation from generating patients and arranging for, recommending, or referring for services to be paid for by a Federal Health Care program in violation of the Anti-Kickback Statute.

69. In submitting such claims, Defendants BHB and Condie, in conspiracy with and for and on behalf of the other practitioners and providers, prepared and used false records, billed for services not rendered (and impossible to have been rendered), billed for services in amounts in excess of those supported by documentation, created false documentation, and otherwise created false records to support a claim. These schemes included:

a. **Falsified Records Including "Cloned Records" That Do Not Support a Billable Service.** Records created to document services materially necessary to support claims and payment, were falsified, fabricated, or signed after-the-fact for submitted Medicaid claims, in violation of Wyoming Medicaid Rules, Chapter 3, §7.(b) (1998);Wyoming Medicaid Program Community Mental Health & Substance Abuse Treatment Services Manual, Chapter 3, §5.4.(a); CMS-1500 Manual, 4.6; and Medicaid Provider Participation Agreement, Paragraphs 5.A and H and Paragraphs 6.A and B.

b. **False "Billing" Diagnoses.** In a majority of cases and for a majority of bills, the diagnoses of record do not coincide with the diagnosis on the submitted claims. Medical records and clinical notes do not support treatment of the submitted diagnoses. This is in violation of Wyoming Medicaid Rules, Chapter I, §§ 3(b)(i) and (0) (2011); Wyoming Medicaid Rules, Wyoming Medicaid Program Community Mental Health & Substance Abuse Treatment Services Manual, Chapter 2, § IO; Medicaid Provider Participation Agreement, Paragraphs 5.A and H and Paragraphs 6.A and B.

c. **Billed Services in Amounts in Excess of Those Supported by Documentation (Up-Coded).** Billed services are inconsistent with provided services (up-coded). Group therapy/group services claims were routinely up-coded to Community-based

individual/family therapy. Wyoming Medicaid Rules, Chapter 1, § 3(b)(i)(B) and (0) (2011); and Medicaid Provider Participation Agreement, Paragraphs 5.A and H and Paragraphs 6.AandB.

d. **No Patient Identifiers.** No names or identifying numbers appear on the medical record and/or notes. Wyoming Medicaid Rules, Chapter 13, § 4 (w)(xii); CMS-1500 Manual Chapter 3.8.l; and Wyoming Medicaid Program Community Mental Health & Substance Abuse Treatment Services Manual.

e. **Date Range on Medical Records Does Not Coincide With Claims.** Medical record dates of service do not support claims submitted to Medicaid. Wyoming Medicaid Rules, Chapter 1, § 3(b)(i) (2011); Wyoming Medicaid Rules, Chapter 3, § 7 (b) (1998); Medicaid Provider Participation Agreement, Paragraphs 5(H) and (J); Provider Enrollment Certification, 3, 8, 9; and Wyoming Medicaid Program Community Mental Health & Substance Abuse Treatment Services Manual, Chapter 2, § 10(l)(d) and Chapter 3, § 5(1) and (4) and (iv).

f. **Units of Service on the Submitted Claims are not Substantiated by the Units of Service Documented in the Medical Record.** Units represented in the submitted records do not align with units on claims submitted to Medicaid. Wyoming Medicaid Rules, Chapter 1, § 3(b)(i)(0) (2011); Wyoming Provider Participation Agreement, 5(H)(J); Provider Enrollment Certification, 3, 8, 9; Wyoming Medicaid Program Community Mental Health & Substance Abuse Treatment Services Manual, Chapter 2, Section 10(l)(d); Wyoming Medicaid Program Community Mental Health & Substance

Abuse Treatment Services Manual, Chapter 3, Section 5(1) and (4) and (iv); CMS 1500

Provider Manual, 3.8.1 and 10.15.18.4.

g. **Location of Services Cannot be Ascertained.** No location of service was recorded

in the clinical record. Medicaid cannot ascertain if services were rendered in the

community or the office setting. Wyoming Medicaid Rules, Chapter13, § 4,

(w)(xii)(B)(2002); Medicaid Provider Participation Agreement, Paragraphs 5(H) and

(J); Provider Enrollment Certification, 3, 8, 9; CMS 1500 Provider Manual, 3.6.1 and

10.15.18.4; Wyoming Medicaid Program Community Mental Health & Substance

Abuse Treatment Services Manual, Chapter 3, § 6 (g)(ii).

h. **Treating Provider Billed Multiple Concurrent Services.** Provider billed for

overlapping services. Wyoming Medicaid Rules, Chapter 1, §§ 3(i)(B) and (C) and (0)

(2011); Medicaid Provider Participation Agreement, Paragraphs 5(A), (H) and (J).

## B.  DEFENDANT NOWCAP ENTERED INTO A KICKBACK ARRANGEMENT WITH DEFENDANT BHB AND DEFENDANT CONDIE

70. Beginning prior to 2011, Defendant NOWCAP and Defendant Condie (purportedly

on behalf of Defendant BHB) entered into a service relationship under which Condie billed

Wyoming Medicaid for services rendered by NOWCAP. These services included but are not

limited to psychosocial rehab and other community based services. Starting in approximately

May, 2013, the volume of these clients increased from 50 to over 300.

71. Relator is informed and believes that Defendant Condie, in addition to providing

billing services to NOWCAP for certain Medicaid reimbursable mental health, psychosocial

rehabilitation, and community-based services, also referred developmentally disabled persons

to NOWCAP for NOWCAP services. Likewise, NOWCAP referred, on a reciprocal basis,

enrollees of NOWCAP programs to Defendants BHB and Condie for separately reimbursable

services.

72. Beginning in 2014, Defendant BHB, by and through Defendant Condie, entered into

a written "Service Agreement" with Defendant NOWCAP.  Under this agreement, in which

BHB was the "Company" and Defendant NOWCAP was the "Contractor," the "Contractor"

[NOWCAP] was engaged to "perform certain professional services" for the Company [BHB]:

> **Description of Services**. Beginning on December 1, 2014, the company and
> contractor will commence business under this agreement (collectively referred to
> as "Services"). The services provided by the contractor shall be bona fide
> Services as defined under the Wyoming Title 19 Medicaid program.
>
> The contractor [i.e. NOWCAP] will perform all services in strict accordance
> with all applicable rules, regulations, standards, best practices and expressed
> specific expectations of the Company. [i.e. BHB]
>
> Payment for Services. In exchange for the Services performed by the Contractor,
> the Company will pay the Contractor one-half (50%) of all services billed to the
> Wyoming Title 19 Medicaid program with no retain age or reduction of payment
> being withheld by the Company for Services not paid by Wyoming Title 19
> Medicaid.

*[emphasis and party identifiers added]*

73. Pursuant to this agreement, Defendant NOWCAP was rendering "bona fide

services" as defined under the Wyoming Title 19 Medicaid program "for and on behalf of"

Defendants BHB and Condie. Defendant BHB billed these services under the BHB billing and

rendering identity, thus deliberately hiding and fraudulently representing the true identity of

the providers actually serving vulnerable, developmentally disabled Wyoming Medicaid recipients.

74. For this "service," Defendants BHB and Condie received a 50% "cut" of the billing, an amount that bore no relationship to the actual cost of billing services or any other factor reasonably related to any service BHB or Condie did or could have rendered. Rather, the payment of the 50% "cut" to BHB was for the cross referral of patients and use of the billing identity that effectively and fraudulently misrepresented to the State of Wyoming who was providing services or what the services actually were. This scheme amounted to and continues to amount to a well-developed kickback scheme and conspiracy to submit fraudulent claims to the State of Wyoming for payment under a Federal Health Care Program.

75. During the calendar year 2015, Defendant BHB paid $177,640 to NOWCAP pursuant to this scheme. Under the contract, this represents no more that 50% of the amount billed by BHB and Condie for such services.

## C. DEFENDANT ACUMEN KNOWINGLY DISREGARDED MATERIAL FEDERAL AND WYOMING PROVIDER ENROLLMENT REQUIREMENTS

76. Wyoming Medicaid beneficiaries receiving waiver-covered home and community based support services as self-directed support also receive Fiscal Employer Agent Financial Management Services (FMS). The FMS portion of self-directed waiver services supports the beneficiary by handling some of their fiduciary responsibilities as an employer, including but not necessarily limited to managing funds for goods and services, and handling payroll and employer-related taxes and insurance. ACUMEN is a Wyoming Medicaid enrolled provider.

It acts as a fiduciary agent (intermediary) for Wyoming Medicaid and directly distributes Wyoming Medicaid funds (including FFP funds) to self-help providers.

77. Defendant ACUMEN directly paid the "self-directed care assistants ("providers") in reckless disregard of its Federal and state regulatory obligation to NOT pay a "provider," regardless of whether the provider was the employee of ACUMEN or not, unless that provider had been enrolled with Wyoming Medicaid and had a valid background check accomplished.

78. The enrollment of all providers and required screening are highly material requirements for receipt of Medicaid funds. Through these mechanisms, the State of Wyoming can exercise necessary authority over the self-help assistant, assure that vulnerable elderly adults for whom these services are provided are not abused or victimized, and assure that providers with criminal or undesirable backgrounds are not placed in close proximity to these vulnerable beneficiaries.

79. Defendant ACUMEN also serves as a similar Fiscal Agent in other states as well. In those other states, ACUMEN engages in the enrollment of Self-Directed HCBS providers and requires releases and consents for effective screening. ACUMEN has full knowledge of these universal Federal and State requirements.

80. In knowing and reckless disregard of these enrollment and screening requirements, Defendant ACUMEN accepted reimbursement claims from unenrolled and unscreened providers and paid those claims to such individuals. Since 2010, Defendant ACUMEN in turn claimed and received from the State of Wyoming not less than $30,083,621 for its "management" fee and fees paid in turn to these unregistered, unscreened providers. Of this

sum, ACUMEN retained not less than $3,743,145 as its fee and recklessly paid not less than $26,340,475 to such ineligible "providers."

## VIII. SPECIFIC EXAMPLES OF MEDICAID FRAUD AT BIG HORN BASIN MENTAL HEALTH GROUP

81. The following paragraphs are specific examples[2] of false claims and false records to support claims submitted by Defendants BHB and Condie under the schemes previously detailed herein. Only the defects in each claim are listed.

82. **Beneficiaries No's. 234 and 235:**

    a.  Actual treating providers, Jan Brinkerhoff LCSW and Mark Schledewitz PCSW, were not enrolled in Wyoming Medicaid during the course of treatment.

    b.  All claims submitted contained the diagnosis of Depressive Disorder but the Clinical assessments assign the diagnosis of Phonological Disorder. The record does not coincide with the submitted claims. Medical and clinical notes do not support treatment of depression.[3]

---

[2] The precise identity of these Medicaid Beneficiaries contains potentially protected individually identifiable health information and/or protected health information as defined in 45 CFR § 160.103 and as used in the Health Insurance Portability and Accountability Act (HIPAA) privacy rules. It has been disclosed to the Relator's counsel under the provisions of 45 CFR § 164.502 (j)(1). In order to protect the privacy of the patients, they will be referred to by alphabetical and numerical identifiers. The actual information will be provided to the U.S. Attorney on request and otherwise at such time as a qualified protective order or other judicial process is in place.

[3] The assessment and diagnosis of 315.39 Phonological Disorder is not a disorder that would be properly treated by a social worker. It represents "failure to use developmentally expected speech sounds that are appropriate for age and dialect (e.g., errors in sound production, use, representation, or organization such as, but not limited to, substitutions of one sound for

c. Treatment records indicate Group therapy was rendered for $10.88/15 minutes but the claims were submitted for Clinical assessment ($21.75/15 minutes) and Individual therapy ($28.00/15 minutes). Medical records indicate group therapy was rendered for $10.88/ 15 minutes but the claims submitted were for individual therapy ($28.00/ 15 minutes). The group therapy was up-coded for double the correct level of payment.

83. **Beneficiary No. 348**

a. Actual treating provider Megan Garza LCSW was not enrolled with Wyoming Medicaid during the course of treatment.

b. All claims submitted contained a diagnosis of Depressive Disorder NOS. The clinical records provide only a diagnostic impression of situational anxiety: "Diagnosis: [beneficiary] struggles with a bit of anxiety when he interacts with his peers his own age without his older sibling around." The diagnosis record does not coincide with the claims submitted. Medical and clinical notes do not support treatment of depression.

c. A location of services cannot be ascertained; it cannot be determined whether services were rendered in the community or the office setting.

d. The "treatment plan" does not contain any descriptions of the methods or activities employed by specific persons to implement treatment, nor do they specify any changes in the recipient's symptoms during the course of this

---

another [use of /t/ for target /k/ sound] or omissions of sounds such as final consonants" It would only properly be treated by a Speech and Language Therapist.

plan. The treatment plan consists only of the statement: *"I certify that services in the 'treatment plan' are therapeutically necessary and that the client's treatment goals are appropriate"*.

    e. Medical records indicate group therapy was rendered ($10.88/ 15 minutes) but the claims submitted were for individual therapy ($28.00/ 15 minutes). The group therapy was up-coded.

## 84. Beneficiary No. 525

    a. Actual treating provider Megan Garza was not enrolled with Wyoming Medicaid during the course of treatment.

    b. All claims submitted for the beneficiary contained a diagnosis of Depressive Disorder NOS. Medical record does not provide a diagnosis rather a diagnostic impression. "Diagnosis: [beneficiary] struggles with anxiety which causes her to shut down and withdraw in social situations." Medical and clinical notes do not support treatment of depression.

    c. The "treatment plan" does not contain a description of the methods that will be employed by a specific person to implement the treatment and specific changes in recipient's symptoms that are expected during the "treatment plan."

    d. The reference to medical necessity and treatment plan states: "I certify that services in the 'treatment plan' are therapeutically necessary and that the client's treatment goals are appropriate." This same statement, on a freestanding separate sheet in the record, is contained in multiple records.

e. Medical records indicate group therapy was rendered ($10.88/ 15 minutes) but the claims submitted were for individual therapy ($28.00/ 15 minutes). The group therapy was up-coded for double the correct level of payment.

f. The location of services cannot be ascertained, and it cannot be ascertained if services were rendered in the community or the office setting.  No reviews of the recipient's 3 month stay were updated into the medical record.

85. **Beneficiary No. 095**

a. The actual treating provider Megan Garza LCSW was not enrolled in Wyoming Medicaid during the course of treatment.

b. All claims submitted contained diagnosis or Depressive disorder. Medical record does not provide a diagnosis but rather a diagnostic impression "Diagnosis: [beneficiary] struggles with ADHD and impulse control issues". The record does not support a diagnosis of depression.

c. The treatment plan does not contain a description of the methods and activities that will be employed by specific persons to implement the treatment, specify the changes in the recipient's symptoms and behavior that are expected during the course of a "treatment plan" and contains the statement:" I certify that services in the treatment plan" are therapeutically necessary and the client treatment goals are appropriate." This same statement, on a freestanding separate sheet in the record, is contained in multiple records.

d. Medical records indicate Clinical assessment ($21.75/15 minutes), Individual therapy ($28.00/15 minutes) and Group Therapy ($10.88/15 minutes) were rendered. Claims were only submitted for Individual therapy ($28.00/15 minutes) and Clinical assessment ($21.75/15 minutes). Group therapy was up-coded for double the sum.

e. The location of services cannot be ascertained, and it cannot be ascertained if services were rendered in the community or the office setting.

86. **Beneficiary No. 599**

a. The actual treating provider Jan Brinkerhoff LCSW was not enrolled in Wyoming Medicaid during the course of treatment.

b. All claims submitted for the beneficiary contained a diagnosis of 311-Depressive Disorder. The record does not coincide with the submitted claims of the following diagnoses: 299.8 ("Other developmental disorders"), 309.81 (Posttraumatic stress disorder) and V62.89 (Other psychological or physical stress, not elsewhere classified). Medical and clinical notes do not support the diagnosis or treatment of depression.

c. Also, medical records indicate Group therapy was rendered ($10.88/15 minutes) but the claims were submitted for Community-based individual/family therapy ($28.00/15 minutes). The group therapy record was up-coded for over twice the correct sum.

87. **Beneficiary No. 093**

    a.   The actual treating providers, Tracy Holmes, Erica Eastlund and Kari M. Allred M.S.Ed., were not enrolled with Wyoming Medicaid during the course of treatment.

    b.   All claims submitted for the beneficiary contained a diagnosis of 311-Depressive Disorder. Medical record does not provide a DSM diagnosis.

    c.   Psychological assessments rendered by Kari M. Allred, M.A.Ed. and Dr. Gibson Condie, PhD., provide no diagnosis.

    d.   No other documentation was presented in the medical record resembling a diagnosis.

88. **Beneficiary No. 813**

    a.   The actual treating providers, Lila Jolley and Kristen Akin, were not enrolled with Wyoming Medicaid during the course of treatment.

    b.   All claims submitted for the beneficiary contained a diagnosis of 311-Depressive Disorder. No records support this diagnosis or treatment of this diagnosis.

    c.   The treatment plan does not contain a description of the methods and activities and their frequency that would be employed by specific persons to implement the treatment.

    d.   The beneficiary was in treatment for two years, August 2013 thru August 2015. One treatment plan exists in the medical record. It was dated and signed March 6, 2015, nearly two years into the course of treatment.

  e. The location of services was not recorded in the clinical record, and it cannot be ascertained if the services were rendered in the community or the office setting.

  f. Submitted claims indicate community based services were provided (H2021, Community-based individual/family therapy, $28.00/15 minutes), Documentation does not support this claim.

89. **Beneficiary No. 867**

  a. The actual treating providers, Paula Cross, Christian Anchard, Alicia Lopez, Jerry Barnes, CG Mental Health, Lindsay Muecke, Christopher Hancock, Tasha Hancock, Kristen Akin, Marvie Long, Judy Brittain, William Smith, Chris Gauger, and Devin Dutson (between 5/31/13 and 11/04/14,) were not enrolled with Wyoming Medicaid during the course of treatment.

  b. All claims submitted for the beneficiary contained a diagnosis of 311-Depressive Disorder.  No records support this diagnosis or treatment of this diagnosis.

  c. The treatment plan does not contain a description of the methods and activities and their frequency that would be employed by specific persons to implement the treatment. The beneficiary was in treatment for nearly three years. No treatment plan reviews or updates were performed.

d.  The provider billed Clinical Assessments ($21.75/15 minutes), Individual Rehabilitative Services, ($7.50/15 minutes), Agency-based Individual/family therapy ($21.75/15 minutes), Community-based Individual/family therapy ($28.00/15 minutes), Targeted Case Management ($21.75/15 minutes). The medical record indicates that a significant number of group therapy sessions were rendered (e.g. Devin Dutson provided approximately 92 group therapy sessions – 6 units each between 12/6/12 and 11/20/14). These group therapy sessions were billed as either community-based individual or family therapy or Agency-based individual therapy. These group therapy sessions were up-coded for four times the correct payment rate.

e.  The location of services was not recorded in the clinical record, and it cannot be ascertained if the services were rendered in the community or the office setting.

90. **Beneficiary No. 226**

a.  The actual treating providers, Gerry Burton (Gerry Ryan Burton, MS, LPC and Connections Counseling), were not enrolled with Wyoming Medicaid during the course of treatment.

b.  All claims submitted for the beneficiary contained a diagnosis of 311- Depressive Disorder. No records support this diagnosis or treatment of this diagnosis.

c.   The treatment plan does not contain a description of the methods and activities and their frequency that would be employed by specific persons to implement the treatment. The beneficiary was in treatment for nearly three years. No treatment plan reviews or updates were performed in accordance with policy and procedure.

d.   The treatment plan was not signed or dated by the treating provider, and the plan contains non-specific/non-individualized/cookie-cutter goals. These goals appear universally on all beneficiary records submitted by this provider. Visit notes simply state which "goals" were worked on and are not specific to the date of the visit. The beneficiary was in treatment for nearly three years. No treatment plan reviews or updates were in the medical record.

e.   Many of the progress notes appear to be duplicated throughout the medical record. No variation in notes occurs over significant periods of time. For example progress from 1/7/14 and 8/21/14 consist of 48 progress notes/clinical contacts that are duplicates.

f.   The location of services was not recorded in the clinical record, and it cannot be ascertained if services were rendered in the community or the office setting. Submitted claims indicate community-based services were provided (H2021, Community-based individual/family therapy, $28.00/15 minutes).  Documentation does not support this claim.

91. **Beneficiary No. 764**

a.  The actual treating providers, Gerry Burton (Gerry Ryan Burton, MS, LPC), Gerry Burton (Connections Counseling) and Mark Schledewitz (Encompass Counseling), were not enrolled with Wyoming Medicaid during the course of treatment.

b.  All claims submitted for the beneficiary contained a diagnosis of 311-Depressive Disorder. No records support this diagnosis or treatment of this diagnosis.

c.  The treatment plan does not contain a description of the methods and activities and their frequency that would be employed by specific persons to implement the treatment. The beneficiary was in treatment for nearly three years. No treatment plan reviews or updates were performed in accordance with policy and procedure.

d.  The treatment plan was not signed or dated by the treating providers and the plan contains non-specific/non-individualized/cookie-cutter goals. These goals appear universally on all beneficiary records submitted by Gerry Burton, MS, LPC. The beneficiary was in treatment for nearly three years. No treatment plan reviews or updates were in the medical record.

e.  Many of the progress notes appear to be duplicated throughout the medical record. No variation in notes occurs over significant periods of time. For example progress from 11/12/12 and 8/4/13 consist of 79 progress notes/clinical contacts that are duplicates.

    f.  The location of services was not recorded in the clinical record, and it cannot be ascertained if services were rendered in the community or the office setting.

    g.  Submitted claims indicate community based services were provided (H2021, Community-based individual/family therapy, $28.00/15 minutes). Documentation does not support this claim.

92. **Beneficiary No. 295**

    a.  The actual treating providers, Julie M. Laib (Integrated Counseling Services, L.L.C.) and Gregory J. Bennett, Mental Health and Addiction Services, were not enrolled with Wyoming Medicaid during the time of treatment.

    b.  All claims submitted for the beneficiary contained a diagnosis of 311-Depressive Disorder. No diagnoses coincide with the submitted claims. Rendered services do not reflect submitted diagnosis.

    c.  Medical records indicate office based individual and group therapy were rendered during the course of treatment. Claims were submitted using community-based individual therapy ($28.00/15 minutes), Agency-based individual/family therapy ($21.75/15 minutes), Mental Health Assessment ($21.75/15 minutes). A significant portion of rendered clinical services consisted of group therapy (~35,120 minute sessions). Group therapy ($10.88/15 minutes) should have been

billed. All group therapy contacts were up-coded for twice the correct sum.

93. <u>Beneficiary No. 546</u>

    a.   The actual treating provider, Megan Garza LCSW, was not enrolled with Wyoming Medicaid during the course of treatment.

    b.   The treatment plan does not contain a description of the methods and activities that will be employed by specific persons to implement the treatment.

    c.   The record contains the statement "I certify that services in this 'treatment plan' are therapeutically necessary and that the client's treatment goals are appropriate . . ." This same statement, on a freestanding separate sheet in the record, is contained in multiple records.

    d.   There is no evidence that the provider made any type of a referral to a proper higher level clinician when the patient reported "hearing voices" and "having thoughts." No follow-up on the "voices" was reported, nor was referral to an experienced Ph.D. level psychologist or a psychiatrist. No follow-up on the content of the "voices" was reported.

    e.   The therapist is working outside the scope of her license and is likely practicing medicine (altering a prescription dosage). The provider

reported: "We talked about possibly needing to up her dose of medication so that she could deal with the stress better."

f.   Two months later the provider reported: "I followed up with [grandma] to get an update on [beneficiary] behavior at home after increasing her medication to deal with the stress at school. Her grandmother reported that [beneficiary] was still emotional but she wasn't hearing the voices/thoughts and was able to sleep . . . sometimes too much."

g.   The provider did not document a referral to a prescribing practitioner to discuss medication issues; the provider appears to be rendering medical advice. No referral or other action appears in the medical record. The follow-up indicates the probability of over medication, i.e., too much sleep.

94. **Beneficiary No. 448**

a.   The actual treating providers, Gerry Burton (Gerry Ryan Burton, MS, LPC), Gerry Burton (Connections Counseling), Raena Kary (prior to 10/13/14), Jess Campbell, and Melinda Campbell, were not enrolled with Wyoming Medicaid during the course of treatment.

b.   The medical records contained typed notes for what appear to be psychosocial skills or rehabilitative services. These notes do not

contain treating provider's names, signatures, or credentials on any of the notes in the submitted medical records.

c.  The treatment plan does not contain a description of the methods and activities that will be employed by specific persons to implement the treatment or specify the changes in the recipient's symptoms and behavior that are expected during course of the "treatment plan." The treatment plan was not signed by the treating provider and it contains non-specific/ non-individualized goals. These goals appear universally on all beneficiaries' records submitted by this provider.

d.  Also the treatment plan does not contain a description of the methods and activities that will be employed by specific persons to implement the treatment and contains the statement "I certify that services in this 'treatment plan' are therapeutically necessary and that the client's treatment goals are appropriate." The medical record contained no clinical/progress notes for claims submitted under Individual therapy ($28.00/15 minutes unit). No treatment plan reviews or updates were in the medical records for patient's three year stay.

e.  Many of the progress notes appear to be duplicated throughout the medical record. Progress notes between 7/10/14 and 11/25/14 consists of 34 progress notes/clinical contacts that are duplicates. It is impossible to ascertain what clinical services were provided and if

these services correspond with submitted claims. The location of

services cannot be ascertained.

95. **Beneficiaries No. 627 and 628**

    a.   The actual treating providers, Julie M. Laib (Integrated counseling

        Services, LLC.), (Julie M. Laib and Gregory J. Bennet, Mental Health

        and Addiction Services), were not enrolled with Wyoming Medicaid

        during the course of treatment.

    b.   The billed services are inconsistent with provided services (up-

        coded). Medical records indicate office based individual and group

        therapy were rendered during the course of treatment. Claims were

        submitted using Individual Therapy ranging from $21.75/15 minute

        units to $28.00/15 minute units. No group therapy claims were

        submitted.

    c.   All claims submitted for the beneficiary contained a diagnosis on

        Depressive Disorder but the clinical assessment in the medical record

        contains five diagnoses. Medical record and clinical notes do not

        support treatment of depression.

96. By way of further example, throughout the course of treatment **for a single patient (Patient "A"),** Defendants BHB and Condie submitted multiple claims to Wyoming Medicaid for what were inherently inconsistent "impossible" services. For example, multiple providers

billed through BHB and Condie for the same patient for overlapping time periods in

inconsistent settings:

| Provider | Date | Hours | Location | task |
|---|---|---|---|---|
| Chris Gauger | 7/8/13 | 12:00-1:00 pm | Community | Individual |
| Chris Gauger | 7/8/13 | 12:00-1:00 pm | Community | Individual |
| Chris Gauger | 5/6/14 | 3:00- 4:00 pm | Community | Individual |
| Chris Gauger | 5/6/14 | 3:15- 4:30 pm | Community | Group |
| Blake Vardell | 10/27/14 | 6:00- 8:00 pm | Community | Family |
| Chris Gauger | 10/27/14 | 5:30-6:30 pm | Community | |
| Blake Vardell | 11/10/14 | 6:00-8:00 pm | Community | Family |
| Chris Gauger | 11/10/14 | 5:30-6:00 pm | | |
| Chris Gauger | 2/2/15 | 2:30-3:30 pm | Community | |
| Chris Gauger | 2/2/15 | 3:15-4:30 pm | Office | |
| Blake Vardell | 3/16/15 | 6:00-8:00 pm | Community | Family |
| Michael Moore | 3/16/15 | 5:30-6:15 pm | | Skills Training |
| Blake Vardell | 3/30/15 | 6:00-8:00pm | Community | Family |
| Michael Moore | 3/30/15 | 5:30-6:45 pm | | Skills Training |
| Blake Vardell | 4/13/15 | 6:00-8:00 pm | Community | Family |
| Michael Moore | 4/13/15 | 5:30-7:00 pm | | Skills Training |
| Lila Jolley | 4/16/15 | 3:45-4:15 pm | | TCM |
| Michael Moore | 4/16/15 | 3:30-6:00 pm | | Skills Training |
| Michael Moore | 5/4/15 | 4:45-6:00 pm | | Skills Training |
| Chris Gauger | 5/4/15 | 4:30-5:30 pm | Community | Psychotherapy |
| Michael Moore | 5/18/15 | 5:00-6:00 pm | | Skills Training |
| Chris Gauger | 5/18/15 | 4:30-5:30 pm | Community | Psychotherapy |
| Blake Vardell | 6/22/15 | 6:00-8:00 pm | Community | Family |
| Melinda Campbell | 6/22/15 | 10:00-11:00 am | | TCM |
| Lila Jolley | 6/22/15 | 10:30-10:00 am | | Skills and |
| Michael Moore | 6/22/15 | 4:45-8:15 pm | | Psychosocial |
| Melinda Campbell | 6/29/15 | 9:45-10:45 am | | |
| Chris Gauger | 6/29/15 | 10:00-11:00 am | Community | Individual |
| Blake Vardell | 6/29/15 | 6:00-8:00 pm | Community | Family |
| Michael Moore | 6/29/15 | 4:30-6:15 pm | | Psychosocial |
| Melinda Campbell | 7/22/15 | 6:00-9:00 pm | | |
| Michael Moore | 7/22/15 | 3:00-6:45 pm | | Skills Training |
| Jess Campbell | 8/10/15 | 10:00-11:00 am | | |
| Chris Gauger | 8/10/15 | 10:00-11:00 am | | Individual |
| Michael Moore | 8/24/15 | 4:30-6:30 pm | | Skills Training |
| Michael Moore | 8/24/15 | 1:00-1:45 pm | | CM |
| Chris Gauger | 8/24/15 | 1:00-2:00 pm | Community | Individual |
| Chris Gauger | 8/24/15 | 3:00-4:00 pm | Community | Group |
| Michael Moore | 8/31/15 | 4:30-6:45 pm | | Skills Training |
| Chris Gauger | 8/31/15 | 4:30-5:30 pm | Community | Individual |
| Lila Jolley | 9/1/15 | 5:00-5:30 pm | Community | TCM |
| Jess Campbell | 9/1/15 | 4:15-5:15 pm | Gym | Therapy Motion |

| Melinda Campbell | 9/1/15 | 5:15-6:15 pm | Gym | Therapy Motion |
|---|---|---|---|---|

| Melinda Campbell | 9/2/15 | 4:15pm – 5:00pm | Community | Therapy in Motion |
|---|---|---|---|---|
| Melinda Campbell | 9/3/15 | 5:15pm – 6:15pm | Community | Therapy in Motion |
| Melinda Campbell | 9/3/15 | 5:15pm – 6:15pm | Community | Therapy in Motion |
| Jess Campbell | 9/9/15 | 3:15pm – 4:15pm | Gym | Therapy in Motion |
| Michael Moore | 9/9/15 | 1:30pm – 3:30pm | ? | Skills and Psychosocial |
| Chris Gauger | 9/28/15 | 3:30pm – 4:30pm | Community | Individual |
| Chris Gauger | 9/28/15 | 3:15pm – 4:15pm | Community | Group |
| Jess Campbell | 10/5/2015 | 6:00pm – 7:15pm | Community | Therapy in Motion |
| Michael Moore | 10/5/2015 | 5:30 – 6:45pm | Community | Skills Training |
| Lila Jolley | 10/12/15 | 4:00pm- 4:30pm | Community | TCM |
| Melinda Campbell | 10/12/15 | 12:30pm – 6:00pm | Community | Therapy in Motion |
| Jess Campbell | 10/13/15 | 6:00pm- 7:00pm | Community | Therapy in Motion |
| Jess Campbell | 10/13/15 | 6:00pm- 7:00pm | Community | Therapy in Motion |

## 97. Beneficiaries No. 876, 867 and 652

a. This provider was not listed as the treating provider on the claims submitted by

Defendants BHB and Condie.  Nonetheless, Devon Dutson billed multiple concurrent services

that are impossible to have been conducted together:

| Provider | License #1/ Status | License #2/ Status | NPI | Enrollment # | Active Begin End | Group Affiliation |
|---|---|---|---|---|---|---|
| Devon Dutson | LCSW-629/A | PCSW-301/C | 1710159595 | 1322109 01 | 110414-999999 | **Individual practice** |

| | Individual therapy | | Group therapy |
|---|---|---|---|
| **Date** | Beneficiary: xxxx652 | Beneficiary: xxxxx867 | Beneficiary: xxxx876 |
| 1/3/2013 | | 10:30 am-11:30 am | 9:00 am-11:00 am |
| 3/28/2013 | 11:00 am-12:00 pm | 10:30 am-11:30 am | |
| 4/4/2013 | 11:00 am- 12:00 pm | 10:30 am-11:30 am | |

| 4/11/2013 | 11:00 am- 12:00 pm | 10:30 am-11:30 am | |
| 5/9/2013 | 11:00 am- 1:00 pm | 10:30 am-11:30 am | |

## IX. DEFENDANTS' RETALIATION AGAINST RELATOR

98. During the course of Relator's employment with the state of Wyoming, he investigated and prepared reports for his employer concerning the matters detailed in this complaint. He disclosed the information in conclusions that were part of his duties to his superiors. Relator is informed and believes, and thereon alleges, that other officials in the government of the state of Wyoming were also informed of these matters.

99. In addition, Relator took these matters, and others, to the office of the United States Attorney for the district of Wyoming. The other matters included information regarding possible co-conspirators in the BHB and Defendant Condie schemes. These potential co-conspirators were in the employment of the State of Wyoming.

100. Following that meeting, the United States Attorney's office (in an effort to further investigate the matters herein) arranged a meeting between Relator and agents of the United States Department of Health and Human Services, Office of Inspector General. The first of those meetings took place with an agent from Denver, Colorado, who traveled to Relator's office in Cheyenne, Wyoming.

101. The meeting with that special agent took place on May 6, 2016, at the office of Relator at the Wyoming State Department of Health in Cheyenne, Wyoming. Immediately upon exiting the meeting, Relator was called to the office of Defendant Teri Green.

102. At the meeting, and in the presence of a Human Resources representative for the Wyoming Department of Health, Relator was summarily terminated from his position. Relator had received no written warning, reprimand, or other criticism about his work during his employment. He had received numerous indications that his work was of an excellent caliber.

103. The termination was undertaken by Defendant Teri Green, either on her own volition or alternatively at the direction of her superiors in the government in the State of Wyoming.

104. Said termination is in direct violation of 31 U.S.C. § 3730 (h), which prohibits retaliation against any person for taking lawful steps to prevent or remedy the schemes, facts, or circumstances constituting a violation enumerated in 31 U.S.C. § 3729.

105. Such unlawful and wrongful termination, in violation of federal law, constitutes retaliatory action for which Relator is fully entitled to the remedies set forth elsewhere in this complaint.

## X. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF – 31 U.S.C. § 3729(A)(1)(A)

### (Against Defendants Condie, BHB, and NOWCAP)

106. Relators incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

107. Defendants knowingly, in reckless disregard and/or in deliberate ignorance of the truth or falsity of the claims, presented or caused to be presented false and fraudulent claims

for payment for services provided to patients insured by federally-funded health insurance programs.

108. When Defendant BHB and Defendant Condie submitted claims for reimbursement and Medicaid funds to Wyoming Medicaid, each defendant had directly and indirectly expressly and impliedly certified to Wyoming Medicaid CMS that the claims were submitted in compliance with Medicare and Medicaid laws, rules and regulations, despite Defendants' violations of the Medicare Anti-kickback Statute.

109. Said claims and certifications were false at the time they were made. Each Defendant had offered and provided remuneration, directly or indirectly, overtly or covertly, in cash or in kind to other Defendants induce such person to provide or arrange for referrals for services under a Federal Health Care Program. Defendants and their co-conspirators (other "providers") accepted and received such remuneration directly or indirectly, overtly or covertly, in cash or in kind to provide or arrange for referrals for services under a Federal Health Care Program.

110. Wyoming Medicaid and other federal health care program administrators, in reliance on the accuracy of these claims and statements, paid for these services.

111. All of the representations and certifications both express and implied, contained with respect to each bill to Wyoming Medicaid, CMS and other Federal Health Care Program administrators, had a natural tendency to influence their decision whether to pay the claim and were material to the payment of the claim.

112. As a result of these false and fraudulent records and statements, Defendants caused Wyoming Medicaid to incur significant damage and those damages are continuing to accrue.

## SECOND CLAIM FOR RELIEF – 31 U.S.C. § 3729(a)(1)(B)

### (Against Defendants Condie, BHB, and NOWCAP)

113. Relators incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

114. Defendants knowingly, in reckless disregard and/or in deliberate ignorance of the truth, made, used and/or caused to be made or used, false records and statements material to a false and fraudulent claim to obtain approval and payment from the Government when they submitted claims for funds to Wyoming Medicaid.

115. By submitting claims for payment using payment codes that corresponded to specific services, BHB and Condie represented to Wyoming Medicaid that BHB and Condie had provided those treatments. BHB and Condie made further representations in submitting Medicaid reimbursement claims by using the BHB National Provider Identification numbers corresponding to specific provider types, and that each person ("provider") rendering services to a Medicaid Beneficiary was doing so in compliance with material Wyoming and Federal regulations and requirements. These requirements are designed to assure qualifications of such persons and protection of vulnerable patients through appropriate screening (as part of enrollment

116. Wyoming Medicaid, in reliance on the accuracy of these claims and statements, paid for these services.

117. All of the representations and certifications both express and implied, contained with respect to each bill to Wyoming Medicaid had a natural tendency to influence their decision whether to pay the claim and were material to the payment of the claim.

118. As a result of these false and fraudulent records and statements, Defendants caused Wyoming Medicaid and the other government payors to incur significant damage and those damages are continuing to accrue.

## THIRD CLAIM FOR RELIEF – 31 U.S.C. 3729(a)(1)(C)

### (Against Defendants Condie, BHB, and NOWCAP)

119. Relators incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

120. Defendants knowingly, in reckless disregard and/or in deliberate ignorance of the truth, conspired between themselves to present and/or cause to be presented false and fraudulent claims for payment and approval for services delivered or purported to be delivered to patients insured by federally-funded health insurance programs. These included factually false and fraudulent claims as detailed herein , claims for services derived from violations of the Anti-kickback laws, and claims for reimbursement or funds based upon payments and records that were knowingly and deliberately false or were made in reckless disregard or deliberate ignorance of whether they were true or false. There included but were not limited to express and implied certifications that the services were medically necessary, cost effective, delivered by properly enrolled and screened providers, correctly represented on the submitted claims, supported by clinical documentation, rendered as represented, otherwise covered under the Medicaid program and delivered in compliance with applicable regulations.

121. Wyoming Medicaid, in reliance on the accuracy of these claims and statements, continued payments to Defendants.

122. All of the representations and certifications both express and implied, and other similar documents made or provided with respect to each funding request to Wyoming Medicaid had a natural tendency to influence the decision whether to pay the claim and were material to the payment of the claim.

123. As a result of the conspiracy, Defendants caused Wyoming Medicaid to incur significant damage and those damages are continuing to accrue.

## FOURTH CLAIM FOR RELIEF – 31 U.S.C. 3729(a)(1)(A)
### (Against Defendant ACUMEN)

124. Relator incorporates by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

125. Defendant ACUMEN knowingly, in reckless disregard and/or in deliberate ignorance of the truth, made, used and/or caused to be made or used, false records and statements material to a false and fraudulent claim to obtain approval and payment from the Government when they submitted claims for funds to Wyoming Medicaid.

126. By submitting claims for payment using payment codes that corresponded to specific services, ACUMEN represented to Wyoming Medicaid that the HCBS Self-Directed services (for which ACUMEN was the fiscal fiduciary for the Medicaid Beneficiary) were provided in compliance with material Wyoming and Federal regulations and requirements. These requirements, including enrollment and screening of ALL providers are designed to assure the qualifications of such persons and protection of vulnerable patients through appropriate screening (as part of enrollment).

127. Wyoming Medicaid, in reliance on the accuracy of these claims and statements, paid for these services.

128. All of the representations and certifications both express and implied, contained with respect to each bill to Wyoming Medicaid had a natural tendency to influence their decision whether to pay the claim and were material to the payment of the claim.

128. As a result of these false and fraudulent records and statements, Defendants caused Wyoming Medicaid and the other government payors to incur significant damage and those damages are continuing to accrue.

## FIFTH CLAIM FOR RELIEF – 31 U.S.C. 3729(a)(1)(A)

### (Against All Defendants)

129. Relators incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length

130. Defendants, and each of them, submitted claims to the State of Wyoming for non-covered services and services barred from payment under applicable state and Federal regulations. The submission of these claims to Wyoming Medicaid caused the State of Wyoming to submit forms CMS-37 and CMS-64, which contained express false certifications to the federal government, falsely certifying that Defendants were in compliance with their obligations as described herein.

131. All of the representations and certifications, both express and implied, contained with respect to each of Defendants' claims were known by Defendants to be relied upon by the State of Wyoming and would lead CMS and other federal health care program administrators to transmit FFP funds to the State of Wyoming for prohibited services. Each such

representation had a natural tendency to influence the decision whether to pay the claim and were material to the payment of the claim.

132. As a result of these acts, Defendants caused Wyoming Medicaid and CMS, to incur significant damage and those damages are continuing to accrue.

## SIXTH CLAIM FOR RELIEF – 31 U.S.C. 3730(h)
### (Against Defendant Green, individually and/or in her official capacity and/or at the direction of Does 1-100)

133. Relator incorporates by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

134. Defendant Green, acting on her own volition and/or at the direction of her superiors in the State of Wyoming government, terminated Relator as a direct result and in direct retaliation  for his actions to prevent or address violations of 31 U.S.C. § 3729.

135. Said termination is in direct violation of 31 U.S.C. § 3730 (h), which prohibits retaliation against any person for taking lawful steps to prevent or remedy the schemes, facts, or circumstances constituting a violation enumerated in 31 U.S.C. § 3729.

136. Such unlawful and wrongful termination, in violation of 31 U.S.C. § 3730 (h), constitutes retaliatory action for which Relator is fully entitled to the remedies set forth elsewhere in this complaint. Relator has suffered substantial damages and such damages continue to accrue.

## XI. PRAYER FOR RELIEF

137. WHEREFORE, Plaintiff/Relator, acting on behalf of and in the name of the United States, demands and prays that judgment be entered in favor of the United States against each Defendant, jointly and severally, as follows:

A. The amount of the United States' damages in an amount to be proven at trial, including but not limited to the full amount paid to any defendant under each contract obtained by fraud;

B. Treble the amount of the United States' damages to be proven at trial;

C. Civil penalties in the maximum amount allowed by the False Claims Act,  for each false claim submitted, especially in view of the fact that the Defendants' fraud is so egregious as to justify debarment from  Federal Health Care Programs;

D. Reasonable costs and attorney's fees;

E.  The maximum allowed to Relators under 31 U.S.C. § 3730(d);

F. Pursuant to 31 U.S.C. § 3730(h), reinstatement with the same seniority status that Relator would have had but for the retaliatory discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

G.  Trial by jury as to the allegations against each Defendant; and

H. Such other and further relief as this Court deems to be just and proper.

## XII. DEMAND FOR TRIAL BY JURY

138. Pursuant to Rule 38, Federal Rules of Civil Procedure, a jury trial is demanded.

Dated: ~~June~~ July 8 , 2016

Respectfully submitted,

By: _____

Robert D. Sherlock (Utah Bar No. 02942)
(*pro hac vice forthcoming*)
**EISENBERG, GILCHRIST & CUTT**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
rsherlock@egclegal.com

By: _____
R. Michael Shickich
**Law Offices of R. Michael Shickich, LLC**
111 W. 2nd Street, Ste. 500
Casper WY 82601
Phone: 307-266-5297
Fax: 307-266-1261
E-mail: wyoatty@tribcsp.com