FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 MAY 29  AM 11: 02

STEPHAN HARRIS, CLERK
CHEYENNE

R. Michael Shickich
Law Offices of R. Michael Shickich, LLC
111 W. 2nd Street, Ste. 500
Casper WY 82601
Phone: 307-266-5297
Fax: 307-266-1261
E-mail: rms@injuryfirm.net

Robert D. Sherlock (admitted pro hac vice )
EISENBERG, GILCHRIST & CUTT
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone 801-366-9100
Fax 801-350-0065
rsherlock@egclegal.com
Attorney for Qui Tam Plaintiffs/Relators

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>EX REL. MARK GASKILL<br>　　　　　　PLAINTIFFS,<br>VS.<br><br>DR. GIBSON CONDIE; BIG HORN<br>BASIN MENTAL HEALTH GROUP;<br>NORTHWEST COMMUNITY ACTION<br>PROGRAM OF WYOMING, INC. AKA<br>(NOWCAP);  ACUMEN FISCAL<br>AGENT ,<br>　　　　　　　　Defendants. | § § § § § § § § § § § § § § § | Civil Action No.<br><br>**16-cv-201J**<br><br>**AMENDED COMPLAINT**<br><br>**FALSE CLAIMS ACT,**<br>31 USC 3729 et. seq.<br><br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................4

II. JURISDICTION & VENUE ................................................5

III. PARTIES ........................................................................5
    A. RELATORS ..................................................................5
    B. DEFENDANTS ..............................................................6
    C. CURRENT CASE STATUS RE: DEFENDANT GIBSON CONDIE

IV. FEDERAL STATUTES AND REGULATIONS APPLICABLE
    TO DEFENDANTS' FALSE CLAIMS ACT VIOLATIONS ....................9
    A. THE FEDERAL FALSE CLAIMS ACT ................................9
    B. THE ANTI-KICKBACK STATUTE ..................................10

V. FEDERAL GOVERNMENT HEALTH CARE PROGRAMS: WYOMING
    MEDICAID.....................................................................11
    A. FEDERAL MEDICAL ASSISTANCE:................................12
    B. WAIVERS AND DEMONSTRATION PROJECTS: ....................13
    C. SELF-DIRECTED SERVICES ........................................14

VI. MANDATORY AND MATERIAL REQUIREMENTS FOR WYOMING
    MEDICAID PROVIDERS ..................................................14
    A. ENROLLMENT AND SCREENING OF PROVIDERS ..............14
    B. RISK-BASED PROVIDER SCREENING ..............................16
    C. CLAIMS ARISING FROM A VIOLATION OF THE ANTI-KICKBACK
        STATUTE ARE NOT COVERED SERVICES ........................17

**VII. DEFENDANTS' SCHEMES TO KNOWINGLY AND INTENTIONALLY DEFRAUD WYOMING MEDICAID**.............18

    A. DEFENDANTS BIG HORN BASIN MENTAL HEALTH GROUP, INC., AND DR. GIBSON CONDIE, PH.D. .........................…...18

    B. DEFENDANT NOWCAP ENTERED INTO A KICKBACK ARRANGEMENT WITH DEFENDANT BHB AND DEFENDANT CONDIE .........................10

    C. DEFENDANT ACUMEN KNOWINGLY DISREGARDED MATERIAL FEDERAL AND WYOMING PROVIDER ENROLLMENT REQUIREMENTS........22

**VIII.  CLAIMS FOR RELIEF** ......................................................24

**IX. PRAYER FOR RELIEF** ………….....................................…......…......30

**X. DEMAND FOR TRIAL BY JURY**...........….....................…..................31

# I. INTRODUCTION

1. On behalf of the United States of America pursuant to the qui tam provisions of the Federal False Claims Act, 31 U.S.C. § 3729 et seq., Plaintiff/Relator Mark Gaskill files this qui tam Complaint against Defendants for false and fraudulent claims, material failures to perform Medicaid and Medicare regulatory requirements, and receiving government contracts and funds on the basis of false certifications of compliance with these same requirements and regulations. Relators seek treble damages, and civil penalties arising from Defendants' conduct described herein, as well as all relief statutorily available due to the retaliation against Relator as set forth in 31 U.S. Code 3730(h).

2. This action concerns improper and unlawful submission of legally and factually false claims, claims based upon false records and statements, conspiracy to submit false claims causing the State of Wyoming to submit false certification to the Federal Government to obtain Federal Financial Participation funds, and express and implied certifications, all made by Defendants, in order to, *inter alia*, conceal and misrepresent to Medicaid authorities and the Federal government the Defendants' fraudulent and knowingly false claims to Wyoming Medicaid in violation of 31 U.S.C. § 3729(a).

3. Relator discovered these violations in the course of his work as the Manager of Program Integrity for Wyoming Medicaid. He conducted his own investigation in furtherance of a False Claims Act qui tam action. He brings this action on behalf of the United States to recover damages for the false claims that have been and continue to be submitted.

## II. JURISDICTION AND VENUE

4. This action is brought on behalf of the United States Government under 31 U.S.C. § 3729, *et seq.*, commonly known as the False Claims Act ("FCA"). Relators bring this action under 31 U.S.C. § 3730(b) to recover for false claims which Defendants knowingly submitted , conspired to submit or caused to be submitted, and false records in connection with false claims that were made, used, or caused to be made or used in violation of 31 U.S.C. § 3729.

5. This Court has jurisdiction over such FCA claims pursuant to 31 U.S.C. § 3730(b), 31 U.S.C. § 3732(a), and 28 U.S.C.  § 1331.

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found in this district and the conduct described herein occurred in this district.

## III. PARTIES

### A. RELATORS

7. Plaintiff/ Relator Mark Gaskill is a resident of Wyoming.  From 1981 to 1987 he served as a Hospital Corpsman with the United States Navy. He holds a Bachelor's Degree in Psychology from Old Dominion University (1987) and a Master's Degree in Family Therapy from Drexel University (1994). He was previously employed at the Utah Medicaid Office of the Inspector General (OIG), in Salt Lake City, Utah, as the Manager of Data Analytics.  From July 1, 2015 through May 6, 2016, Relator was employed by the State of Wyoming as the Manager of Quality Assurance and Program Integrity for the Wyoming

Department of Health, Division of Healthcare Financing, Program Integrity (Medicaid), i.e.,

Wyoming Medicaid.

8. Relator has direct and independent knowledge regarding the matters set forth

herein. In particular, Relator has direct and independent knowledge regarding Defendants'

conduct and practices as described in this Complaint and all related matters as alleged herein.

**B. DEFENDANTS**

9. Defendant Gibson B. Condie, Ph.D., is a resident of Powell, Wyoming. He is the

principal and sole provider, officer, and director of Defendant Big Horn Basin. He

developed, conceived, and operated the schemes detailed herein and directly received funds

generated by the schemes. Defendant Condie purportedly holds a Ph.D. in School

Psychology, and is a psychologist in the State of Wyoming.

10. On October 27, 2017, Defendant Condie entered a guilty plea to healthcare fraud

(18 U.S.Code §1347) in a criminal prosecution arising out of the same conduct as originally

alleged in this complaint. Defendant was sentenced to imprisonment for 36 months and

payment of restitution to the United States and the State of Wyoming in the amount of

$2,283,702.49.

11. Pursuant to 31 U.S.Code § 3731(e),

> Notwithstanding any other provision of law, the Federal Rules of
> Criminal Procedure, or the Federal Rules of Evidence, a final judgment
> rendered in favor of the United States in any criminal proceeding
> charging fraud or false statements, whether upon a verdict after trial or
> upon a plea of guilty or nolo contendere, shall estop the defendant from
> denying the essential elements of the offense in any action which
> involves the same transaction as in the criminal proceeding and which is
> brought under subsection (a) or (b) of section 3730.

12. Defendant Northwest Community Action Program of Wyoming, Inc. (hereinafter "NOWCAP"), also known as Northwest Wyoming Community Action Program Inc., is a Wyoming corporation. It is a community action corporation (non-governmental "agency"). NOWCAP operates NOWCAP Services, a program for persons with developmental disabilities. NOWCAP Services provides services to people with developmental disabilities and brain injuries throughout Wyoming and currently has offices in Casper, Cody, Worland and Rock Springs.

13. Defendant Acumen Fiscal Agent LLC is a Utah Limited Liability Company with a principal place of business in Mesa, Arizona. It provides Fiscal Agent services to Medicaid programs and other public benefit programs in not less than 18 states. During all times relevant to this Complaint, defendant Acumen was registered as a foreign limited liability company in the State of Wyoming. It performed services as a "Fiscal Employer Agent" under for Wyoming Medicaid, handling home and community based self-directed care funds.

14. However, at all times Acumen was functioning as a "provider" under a Provider Agreement with Wyoming Medicaid.  The LLC Managing Member, Laurel, Jensen and Von LLC (an Arizona LLC) also operates  Hire My Care (www.hiremycare.org),  which functioned and continues to function as a placement service for caregivers seeking placement in a home-care situation under these programs, and vice-versa.  It also functions as a commercial portal for other entities to actively market products and services to homebound seniors or others using Acumen.  In addition, the entities share or shared the same executive management, Gerald Nebeker, Ph.D., as CEO at all times relevant to this matter.

15. Defendant Acumen, through its affiliated entity Hire My Care, acts as a common-law and de facto employer of the home care providers for whom it collects payments from Wyoming Medicaid and in turn pays via a payroll system. It matches home-care providers with beneficiaries, receives their time sheets, performs withholding, pays the provider in the provider's own name through Electronic Funds Transfer, monitors time-off and hours worked, and engages in all activities normally associated with employers. It provided services in Wyoming and enrolled in Wyoming as a Medicaid Provider under a Provider agreement from 2001 through all times relevant to this complaint.

16. Defendants John/Jane Does #1-100, fictitious names, are co-conspirators (which may include Wyoming State government employees in their individual capacities) or co-defendants who together with the Named Defendants also participated in and/or conspired to perpetuate the scheme described herein. To the extent that any of the conduct or activity described in this Complaint was not performed by Defendants, but by the individuals described herein as Does #1-100, fictitious names, the term "Defendants" shall also refer to Does #1-100.

## IV. FEDERAL STATUTES AND REGULATIONS APPLICABLE TO DEFENDANTS' FALSE CLAIMS ACT VIOLATIONS

### A. THE FEDERAL FALSE CLAIMS ACT

17. Pursuant to the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(A) *et seq.*, a cause of action arises when any person knowingly presents, or causes to be presented, a false

or fraudulent claim for payment or approval or creates a false record or statement to decrease

an obligation to transmit money owed to the United States Government.

18. As defined under 31 U.S.C. §3729(b)(1), "knowing" and "knowingly" means: (i)

has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or

falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the

information.  No proof of specific intent to defraud is necessary.

19. The False Claims Act further provides that the relator shall receive an amount

which the court decides is reasonable for collecting the civil penalty and damages. The

amount is not less than 15% and not more than 25% of the proceeds of the action if the

Government intervenes in the case, or not less than 25% nor more than 30% if the

Government does not intervene. The relator shall also receive an amount for reasonable

expenses, attorney's fees and costs. All such expenses, fees and costs shall be awarded

against the Defendants.

## B. THE ANTI-KICKBACK STATUTE

20. The Medicare and Medicaid Patient Protection Act, also known as the Anti-

Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b), was enacted in 1972  and amended in

1977 to prohibit receiving or paying "any remuneration" to induce referrals. In addition to

criminal penalties, a violation of the AKS can subject the perpetrator to exclusion from

participation in Federal Health Care Programs, 42 U.S.C. § 1320a-7(b)(7), as well as civil

monetary penalties of $50,000 per violation, 42 U.S.C. § 1320a-7a(a)(7), and three times the

amount of remuneration paid, regardless of whether any part of the remuneration is for a legitimate purpose, 42 U.S.C. § 1320a-7a(a).

21. The AKS prohibits any person or entity from knowingly and willfully offering to pay or paying any remuneration to another person to induce that person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal Health Care Program. This includes any State health program or health program funded in part by the federal government. 42 U.S.C. §§ 1320a-7b(b), 1320a-7b(f).

22. The statute provides, in pertinent part:

> [W]hoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
>
> 42 U.S.C. § 1320a-7b(b).

23. In the Patient Protection and Affordable Care Act (PPACA) the AKS was amended to explicitly state that "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act ("PPACA"), Pub.L. No. 111-148, 124 Stat. 119 § 6402(f) (2010) (codified as amended at 42 U.S.C. § 1320a-7b(g)).

24. "Kickbacks" are broadly defined to include payments, gratuities, and other benefits provided to physicians. For purposes of the AKS the term "remuneration" includes the transfer of *anything of value*, directly or indirectly, overtly or covertly, in cash or in kind.

25. Compliance with the AKS is a precondition to participation as a health care provider under federally-funded healthcare programs including but not limited to state Medicaid programs. In addition, compliance with the AKS is a condition of payment for claims for which Medicare or Medicaid reimbursement is sought by medical providers.

## V. FEDERAL GOVERNMENT HEALTH CARE PROGRAMS: WYOMING MEDICAID

26. Medicaid was established by Title XIX of the Social Security Act of 1965, 42 U.S.C. §1396-1396v. Medicaid is a jointly funded federal-state program and enables states to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary medical services. Funding for Medicaid is shared between the Federal Government and those state governments that choose to participate in the program, in accordance with Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*

27. Medicaid providers must comply with both state and federal rules and regulations that are applicable to such organizations under federal law, the state's Medicaid plan (as approved by the Department of Health and Human Services), and any federal waivers granted to the state, 42 CFR §438.602.

## A. Federal Medical Assistance

28. The Federal Government pays a portion of Medicaid costs through the Federal Medical Assistance Percentage (FMAP). In Wyoming, the Federal government, from FY 2011 to present, paid for approximately 50 % of all Medicaid health care services in Wyoming. The State of Wyoming funds the remaining percentage.

29. The Federal government pays each state for this portion of the Medicaid program through quarterly grants. To receive Federal Medicaid managed care grants each state submits a quarterly estimate to the United States for estimated costs, including an estimate for services. The quarterly estimate is submitted on a Form CMS 37, which includes a certification that:

> . . . budget estimates only include expenditures . . . that are allowable in accordance with the applicable federal, state, and local statutes, regulations, policies, and the state plan approved by the Secretary and in effect during the fiscal year under  Title XIX of the Act for the Medicaid Program.

30. The United States uses the estimate in the CMS 37 to make grant awards for that quarter. The award authorizes the state to draw federal funds as needed through a line of credit.

31. At the end of each quarter, the state submits its quarterly expenditure report, Form CMS 64, which details each state's actual expenditures. The form must be executed and certified by the executive officer of the state agency or his/her designee. The reconciled payments to providers for covered services to eligible beneficiaries are included in Form CMS 64, which includes the same certification as in the CMS 37:

> This report only includes expenditures under the Medicaid program ... that are allowable in accordance with applicable implementing federal, state, and local statutes, regulations, policies, and the state plan approved by the Secretary and in effect during the Quarter . . . .

32. Medicaid programs, constitute "Federal Health Care Programs" as defined in 42 U.S.C. § 1320a-7b(b).

33. Expenditures or payments under the Medicaid program that are made pursuant to a kickback induced scheme are not allowable and not reimbursable under applicable implementing federal and state statutes and regulations. Expenditures or payments under the Medicaid program that are made in violation of material Medicare conditions of payment, participation, or other requirements are excluded from coverage and are not reimbursable under applicable implementing federal and state statutes and regulations.

## B. WAIVERS AND DEMONSTRATION PROJECTS

34. Pursuant to Section 1915 (c) of the Social Security Act, 42 U.S.C. 1396n , a state may with the approval of HHS, obtain waivers of certain required elements and to experiment with other delivery methods. The 1915(c) waivers are one of many options available to states to allow the provision of long term care services in home and community based settings under the Medicaid Program.

35. Wyoming currently has approval from HHS for a Section 1915(c) waiver for Home and Community based (HCBS) services. HCBS services are those services provided under waiver that would not be otherwise available under the Wyoming Medicaid state plan.

Such services enable the elderly, disabled, and chronically mentally ill persons who would otherwise be placed in an institution to live in the community.

36. In addition to these "homebound" services, the state of Wyoming has a §1915 (c) waiver to provide a range of services to children and adults with developmental disabilities and intellectual disabilities. Some comprehensive waiver beneficiaries may include some behavioral support services as well. Providers billing state Medicaid for this range of services bill services as "wavier" services.

37. However some beneficiaries receiving services may also qualify for non-waiver services (such as medical and mental health) under Wyoming Medicaid. These services would be billed as non-waiver services. Waiver services are subject to limitations on frequency, intensity, etc., pursuant to their plan of care and regulatory limitations.

## C. SELF-DIRECTED SERVICES

38. The §1915(c) (HCBS) Waiver in Wyoming also includes home-based "self-directed services." Self-direction is only a *service delivery mechanism* within the HCBS waiver program under which  covered individuals select, direct, and manage their needed services and support, after and only to the extent it is identified in an individualized service plan and budget plan. Additionally, in Wyoming a Fiscal Agent serves as an intermediary, performing the services usually performed by the employer with respect to the employee and in turn receiving an administrative fee for assuring all payroll and regulatory requirements incumbent on a Medicaid provider are fulfilled.

## VI. MANDATORY AND MATERIAL REQUIREMENTS
## FOR WYOMING MEDICAID PROVIDERS

### A. ENROLLMENT AND RISK-BASED SCREENING OF PROVIDERS

39. Federal and Wyoming Medicaid regulations require each individual provider rendering services to Wyoming Medicaid recipients (other than in an emergency, or other limited circumstances) to have formally enrolled with Wyoming Medicaid.

> 42 CFR 455.410 - Enrollment and screening of providers.
> (a) The State Medicaid agency must require all enrolled providers to be screened under this subpart.
> (b) The State Medicaid agency must require all ordering or referring physicians or other professionals providing services under the State plan or under a waiver of the plan to be enrolled as participating providers. . .[1]

40. Any person rendering Medicaid-compensated services to a beneficiary is a "provider":

> "Provider means any individual or entity furnishing Medicaid services under a provider agreement with the Medicaid agency";
>
> 42 CFR 1000.30

> (a) Payments only to providers. No person or entity that provides services to a recipient shall receive Medicaid funds unless the person or entity is a party to a fully executed provider agreement and is enrolled.

---

[1] See also 42 CFR 1000.30. Wyoming Medicaid Rules, Chapter 13, § 5(a) (2002); Wyoming Medicaid Rules, Chapter 13, § 4(a) (2015); Wyoming Medicaid Rules, Chapter 26, Sections 7 (a) and (b) (2006); Medicaid Provider Participation Agreement, paragraphs 5.A and H; Provider Enrollment Certification 6; CMS-1500 Manual, 3.1; and Medicaid Bulletin, effective 12/1/12, Supervising Physicians and Psychologists Billing Wyoming Medicaid.

(b)  Enrollment as provider.  An individual or entity which wishes to participate in the Medicaid program shall apply to be a provider on the forms specified by the Division.

Wyoming Medicaid Rules, Chapter 3, §§ 4 (a) and (b) (1998)

41. All treating providers must be enrolled with Wyoming Medicaid both at the time of an initial treatment and during the course of treatment. Medicaid payment is made only to providers who are actively enrolled in the Medicaid Program. 42 CFR 455.410(b). The State Medicaid agency requires all ordering or referring physicians or other persons providing services under the State plan or under a waiver of the plan, to be enrolled as participating providers.

**B. RISK-BASED PROVIDER SCREENING**

42. Since 2011, CMS has required state Medicaid agencies to perform risk-based screening on all Medicare and Medicaid providers. As outlined in the preamble to the final rule, 76 Fed. Reg. at 5895-5896 (February 2, 2011), physicians and non-physician practitioners, medical groups, and clinics that are state-licensed would generally be categorized as "limited" risk. Provider types that are highly dependent on Medicare, Medicaid and CHIP to pay salaries and other operating expenses and are not subject to additional governmental or professional oversight would be considered "moderate" risk. Those identified as being especially vulnerable to improper payments would be considered "high" risk. 42 CFR 455.410(a) provides that a state Medicaid agency must require all enrolled providers to be screened according to the provisions of Part 455 subpart E.

43. Under 42 CFR 455.450, a state Medicaid agency is required to screen all applications, including initial applications, applications for a new practice location, and applications for re-enrollment or revalidation, based on a categorical risk level of "limited," "moderate," or "high."   When the State Medicaid agency designates a provider as a moderate categorical risk, the State Medicaid agency must do all of the following:

(a) Verify that a provider meets any applicable Federal regulations, or State requirements for the provider type prior to making an enrollment determination.

(b) Conduct license verifications, including State licensure verifications in States other than where the provider is enrolling, in accordance with § 455.412.

(c) Conduct database checks on a pre- and post-enrollment basis to ensure that providers continue to meet the enrollment criteria for their provider type, in accordance with § 455.436.

(d) Conduct on-site visits in accordance with § 455.432.

44. Acumen and the home-care providers either employed by it,  placed by it, or for whom it is performing Fiscal Agent services (on behalf of a beneficiary)  are highly dependent on Medicaid to pay salaries and other operating expenses and are not subject to additional governmental or professional oversight. They are "moderate" risk providers and entities, although some may be "high" risk.

## C. CLAIMS ARISING FROM A VIOLATION OF THE ANTI-KICKBACK STATUE ARE NOT COVERED SERVICES:

45. Services that arise from a kickback scheme are not covered services and are false claims for purposes of the False Claims Act. . 42 U.S.C. § 1320a-7b(g)).  Including any such

services and reporting the same on claim forms (upon which Wyoming Medicaid relies in its CMS 37 and 64 filings) constitutes false claims, and false records underlying a claim, as well as and express false certifications.

## VII. DEFENDANTS' SCHEMES TO KNOWINGLY AND INTENTIONALLY DEFRAUD WYOMING MEDICAID

### A. DEFENDANTS BIG HORN BASIN MENTAL HEALTH GROUP, INC., AND DR. GIBSON CONDIE, PH.D.

46. Beginning in approximately 2001 or earlier, Defendant Gibson Condie created, facilitated, and structured a scheme to knowingly and intentionally submit false claims to the Wyoming Department of Health for services purportedly rendered to Wyoming Medicaid beneficiaries. These claims were, and are, submitted to Wyoming Medicaid and include funds received pursuant to a Federal Health Care program and include federal funding.

47. For nearly all of such claims, Defendant Condie submitted a claim to Wyoming Medicaid using a false diagnosis code. Defendant Condie submitted the claims listing the diagnoses for each patient as ICD (International Classification of Diseases) code 311, Depressive disorder, not elsewhere classified.

48. As a result of this scheme, the State of Wyoming and Wyoming Medicaid had no knowledge or record of the identity of the provider rendering service, no access to clinical records of the treatment, and no actual knowledge of the correct or proper diagnosis for the patient for whom services were being rendered.

49. Each such claim was false at the time it was submitted and was knowingly and intentionally false, or was submitted in reckless disregard of repeated and explicit requirements barring the receipt of Wyoming Medicaid money by a provider not control with Wyoming Medicaid.

50. On October 27, 2017, Defendant Condie entered a guilty plea to healthcare fraud (18 U.S.Code §1347) in a criminal prosecution arising out of the same conduct as alleged in the Complaint and this Amended Complaint. Defendant was sentenced to imprisonment for 36 months and payment of restitution to the United States and the State of Wyoming in the amount of $2,283,702.49.

51. Pursuant to 31 U.S.Code § 3731(e),

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

52. The transactions underlying the criminal proceeding involve the same transactions and actions of Defendant Condie as set forth in the Relator's Complaint in this civil matter (filed July 15, 2016), under 31 U. S. Code § 3730 (a) and (b). As a result, Defendant Condie is estopped from denying the essential elements of the civil matter alleged in the Complaint and this Amended Complaint.

## B. DEFENDANT NOWCAP ENTERED INTO A KICKBACK ARRANGEMENT WITH DEFENDANT BHB AND DEFENDANT CONDIE

53. Beginning prior to 2011, Defendant NOWCAP and Defendant Condie (purportedly on behalf of Defendant BHB) entered into a service relationship under which Condie billed Wyoming Medicaid for services rendered by NOWCAP. These services included but were not limited to psychosocial rehab and other community based services. Starting in approximately May, 2013, the volume of these clients increased from 50 to over 300.

54. Beginning in 2014, Defendant BHB, by and through Defendant Condie, entered into a written "Service Agreement" with Defendant NOWCAP.  Under this agreement, in which BHB was the "Company" and Defendant NOWCAP was the "Contractor," the "Contractor" [NOWCAP] was engaged to "perform certain professional services" for the Company [BHB]:

> **Description of Services**. Beginning on December 1, 2014, the company and contractor will commence business under this agreement (collectively referred to as "Services"). The services provided by the contractor shall be bona fide Services as defined under the Wyoming Title 19 Medicaid program.
>
> The contractor will perform all services in strict accordance with all applicable rules, regulations, standards, best practices and expressed specific expectations of the Company
>
> **Payment for Services**. In exchange for the Services performed by the Contractor, the Company will pay the Contractor one-half (50%) of all services billed to the Wyoming Title 19 Medicaid program with no retainage or reduction of payment being withheld by the Company for Services not paid by Wyoming Title 19 Medicaid.

55. Pursuant to this agreement, Defendant NOWCAP was rendering services as defined under the Wyoming Title 19 Medicaid program "for and on behalf of" Defendants BHB and Condie. Defendant BHB billed these services under the BHB billing and rendering identity, thus deliberately hiding and fraudulently representing the true identity of the providers actually serving vulnerable, developmentally disabled Wyoming Medicaid recipients.

56. For this "service," Defendants BHB and Condie received a 50% "cut" of the billing, an amount that bore no relationship to the actual cost of billing services or any other factor reasonably related to any service BHB or Condie did or could have rendered. Rather, the payment of the 50% "cut" to BHB was for the cross referral of patients and use of the billing identity that effectively and fraudulently misrepresented to the State of Wyoming who was providing services or what the services actually were. This scheme amounted to and continues to amount to a well-developed kickback scheme and conspiracy to submit fraudulent claims to the State of Wyoming for payment under a Federal Health Care Program.

57. Relator is informed and believes that Defendant Condie, in addition to providing billing services to NOWCAP for certain Medicaid reimbursable mental health, psychosocial rehabilitation, and community-based services, also referred developmentally disabled persons to NOWCAP for NOWCAP services. Likewise, NOWCAP referred, on a reciprocal

basis, enrollees of NOWCAP programs to Defendants BHB and Condie for separately reimbursable services.

58. During the calendar year 2015 alone, Defendant BHB paid $177,640 to NOWCAP pursuant to this scheme. Under the contract, this represents at least 50% of the amount billed by BHB and Condie for such services.

## C. DEFENDANT ACUMEN KNOWINGLY DISREGARDED MATERIAL FEDERAL AND WYOMING PROVIDER ENROLLMENT REQUIREMENTS

59. Wyoming Medicaid beneficiaries receiving waiver-covered home and community based support services as self-directed support also receive "Fiscal Employer Agent Financial Management Services (FMS)". The FMS portion of self-directed waiver services supports the beneficiary by handling some of their responsibilities as an employer, including but not necessarily limited to managing funds for goods and services, and handling payroll and employer-related taxes and insurance. Acumen is a Wyoming Medicaid enrolled provider. It acts as a fiduciary agent (intermediary) for Wyoming Medicaid and directly distributes Wyoming Medicaid funds (including FFP funds) to self-help providers.

60. Defendant Acumen directly paid the "self-directed care assistants" (i.e. providers) in reckless disregard of its Federal and state regulatory obligation to NOT pay a "provider," regardless of whether the provider was the employee of Acumen or not, unless that provider had been enrolled with Wyoming Medicaid and had been subjected to the required risk-based screening .

61. The enrollment of all providers and their required screening are highly material requirements for receipt of Medicaid funds. Through these mechanisms, the State of Wyoming can exercise necessary authority over the self-help assistant, assure that vulnerable elderly adults for whom these services are provided are not abused or victimized, and assure that providers with criminal or undesirable backgrounds are not placed in close proximity to these vulnerable beneficiaries.

62. Defendant Acumen also serves as a similar Fiscal Agent in other states as well. In those other states, Acumen engages in the enrollment of Self-Directed HCBS providers and requires releases and consents for effective screening. Acumen has full knowledge of these universal Federal and State requirements.

63. As a result, the State of Wyoming and Wyoming Medicaid had no knowledge or record of the identity of the provider actually rendering services to the vulnerable homebound and other beneficiaries, no opportunity to assess the level of background screening required to be applied to each such individual.

64. Each such claim by Acumen to Wyoming Medicaid was false at the time it was submitted and was knowingly and intentionally false, or was submitted in reckless disregard of repeated and explicit highly material requirements barring the receipt of Wyoming Medicaid funds by a provider not enrolled with Wyoming Medicaid.

65. In knowing and reckless disregard of these enrollment and screening requirements, Defendant Acumen accepted reimbursement claims from unenrolled and unscreened/unassessed providers and paid those claims to such individuals. In turn,

Acumen billed and received payment from Wyoming Medicaid, including its Administrative

Fees despite the fact that Acumen did not perform the services or comply with the highly

material regulatory requirements and material conditions for payment to the providers and

for receipt of its administrative fee.

66. Since 2010, Defendant Acumen in turn claimed and received from the State of

Wyoming not less than $30,083,621 for its "management" fee and fees paid in turn to these

unregistered, unscreened providers. Of this sum, ACUMEN retained not less than

$3,743,145 as its fee and knowingly, intentionally, and recklessly paid not less than

$26,340,475 to such ineligible "providers."

## VIII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF – 31 U.S.C. § 3729(A)(1)(A)

### (Against Defendants Condie, BHB, and NOWCAP)

67. Relators incorporate by reference all preceding paragraphs of this Complaint as

though the same were set forth herein at length.

68. Defendants knowingly, in reckless disregard and/or in deliberate ignorance of the

truth or falsity of the claims, presented or caused to be presented false and fraudulent claims

for payment for services provided to patients insured by federally-funded health insurance

programs.

69. When Defendant BHB and Defendant Condie submitted claims for reimbursement

and Medicaid funds to Wyoming Medicaid, each defendant had directly and indirectly

expressly and impliedly certified to Wyoming Medicaid CMS that the claims were submitted in compliance with Medicare and Medicaid laws, rules and regulations, despite Defendants' violations of the Medicare Anti-kickback Statute.

70. Said claims and certifications were false at the time they were made. Each Defendant had offered and provided remuneration, directly or indirectly, overtly or covertly, in cash or in kind to other Defendants induce such person to provide or arrange for referrals for services under a Federal Health Care Program. Defendants and their co-conspirators (other "providers") accepted and received such remuneration directly or indirectly, overtly or covertly, in cash or in kind to provide or arrange for referrals for services under a Federal Health Care Program.

71. Wyoming Medicaid and other federal health care program administrators, in reliance on the accuracy of these claims and statements, paid for these services.

72. All of the representations and certifications both express and implied, contained with respect to each bill to Wyoming Medicaid, CMS and other Federal Health Care Program administrators, had a natural tendency to influence their decision whether to pay the claim and were material to the payment of the claim.

73. As a result of these false and fraudulent records and statements, Defendants caused Wyoming Medicaid to incur significant damage and those damages are continuing to accrue.

## SECOND CLAIM FOR RELIEF – 31 U.S.C. § 3729(a)(1)(B)

### (Against Defendants Condie, BHB, and NOWCAP)

74. Relators incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

75. Defendants knowingly, in reckless disregard and/or in deliberate ignorance of the truth, made, used and/or caused to be made or used, false records and statements material to a false and fraudulent claim to obtain approval and payment from the Government when they submitted claims for funds to Wyoming Medicaid.

76. By submitting claims for payment using payment codes that corresponded to specific services, BHB and Condie represented to Wyoming Medicaid that BHB and Condie had provided those treatments when the services were actually provided by personnel at NOWCAP. BHB and Condie made further representations in submitting Medicaid reimbursement claims by using the BHB National Provider Identification numbers corresponding to specific provider types, and that each person ("provider") rendering services to a Medicaid Beneficiary was doing so in compliance with material Wyoming and Federal regulations and requirements.

77. Wyoming Medicaid, in reliance on the accuracy of these claims and statements, paid for these services.

78. All of the representations and certifications both express and implied, contained with respect to each bill to Wyoming Medicaid had a natural tendency to influence their decision whether to pay the claim and were material to the payment of the claim.

79. As a result of these false and fraudulent records and statements, Defendants

caused Wyoming Medicaid and the other government payors to incur significant damage and

those damages are continuing to accrue.

## THIRD CLAIM FOR RELIEF – 31 U.S.C. 3729(a)(1)(C)

### (Against Defendants Condie, BHB, and NOWCAP)

80. Relators incorporate by reference all preceding paragraphs of this Complaint as

though the same were set forth herein at length.

81. Defendants knowingly, in reckless disregard and/or in deliberate ignorance of the

truth, conspired between themselves to present and/or cause to be presented false and

fraudulent claims for payment and approval for services delivered or purported to be

delivered to patients insured by federally-funded health insurance programs. These included

factually false and fraudulent claims as detailed herein, claims for services derived from

violations of the Anti-kickback laws, and claims for reimbursement or funds based upon

payments and records that were knowingly and deliberately false or were made in reckless

disregard or deliberate ignorance of whether they were true or false. There included but were

not limited to express and implied certifications that the services were medically necessary,

cost effective, delivered by properly enrolled and screened providers, correctly represented

on the submitted claims, supported by clinical documentation, rendered as represented,

otherwise covered under the Medicaid program and delivered in compliance with applicable

regulations.

82. Wyoming Medicaid, in reliance on the accuracy of these claims and statements, continued payments to Defendants.

83. All of the representations and certifications both express and implied, and other similar documents made or provided with respect to each funding request to Wyoming Medicaid had a natural tendency to influence the decision whether to pay the claim and were material to the payment of the claim.

84. As a result of the conspiracy, Defendants caused Wyoming Medicaid to incur significant damage and those damages are continuing to accrue.

## FOURTH CLAIM FOR RELIEF – 31 U.S.C. 3729(a)(1)(A)
### (Against Defendant ACUMEN)

85. Relator incorporates by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

86. Defendant ACUMEN  knowingly, in reckless disregard and/or in deliberate ignorance of the truth, made, used and/or caused to be made or used, false records and statements material to a false and fraudulent claim to obtain approval and payment from the Government when they submitted claims for funds to Wyoming Medicaid.

87. By submitting claims for payment ACUMEN represented to Wyoming Medicaid that the HCBS Self-Directed services (for which ACUMEN was the fiscal fiduciary for the Medicaid Beneficiary) were provided in compliance with material Wyoming and Federal regulations and requirements. These requirements, including but not limited to enrollment of

ALL providers, are designed to assure the qualifications of such persons and protection of vulnerable patients through appropriate risk-based assessment or screening (as part of enrollment).

88. Wyoming Medicaid, in reliance on the accuracy of these claims and statements, paid for these services and the administrative fee to ACUMEN.

89. All of the representations and certifications both express and implied, contained with respect to each bill to Wyoming Medicaid had a natural tendency to influence their decision whether to pay the claim and were material to the payment of the claim.

90. As a result of these false and fraudulent records and statements, Defendants caused Wyoming Medicaid and the other government payors to incur significant damage and those damages are continuing to accrue.

### FIFTH CLAIM FOR RELIEF – 31 U.S.C. 3729(a)(1)(A)

### (Against All Defendants)

91. Relators incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length

92. Defendants, and each of them, submitted claims to the State of Wyoming for non-covered services and services barred from payment under applicable state and Federal regulations. The submission of these claims to Wyoming Medicaid caused the State of Wyoming to submit forms CMS-37 and CMS-64, which contained express false certifications to the federal government, falsely certifying that Defendants were in compliance with their obligations as described herein.

93. All of the representations and certifications, both express and implied, contained with respect to each of Defendants' claims were known by Defendants to be relied upon by the State of Wyoming and would lead CMS and other federal health care program administrators to transmit FFP funds to the State of Wyoming for prohibited services. Each such representation was highly material to payment, had a natural tendency to influence the decision whether to pay the claim and had the State of Wyoming and CMS know of the representations and material omissions they would not have paid the claims.

94. As a result of these acts, Defendants caused Wyoming Medicaid and CMS, to incur significant damage and those damages are continuing to accrue.

## IX. PRAYER FOR RELIEF

95. WHEREFORE, Plaintiff/Relator, acting on behalf of and in the name of the United States, demands and prays that judgment be entered in favor of the United States against each Defendant, jointly and severally, as follows:

> A. The amount of the United States' damages in an amount to be proven at trial, including but not limited to the full amount paid to any defendant under each contract obtained by fraud;
>
> B. Treble the amount of the United States' damages to be proven at trial;
>
> C. Civil penalties in the maximum amount allowed by the False Claims Act, for each false claim submitted,
>
> D. Reasonable costs and attorney's fees;

E.  The maximum allowed to Relators under 31 U.S.C. § 3730(d);

G.  Trial by jury as to the allegations against each Defendant; and

H.  Such other and further relief as this Court deems to be just and proper.

## X. DEMAND FOR TRIAL BY JURY

96.  Pursuant to Rule 38, Federal Rules of Civil Procedure, a jury trial is demanded.

Dated:  May 24, 2018

Respectfully submitted,

By: _____
Robert D. Sherlock (Utah Bar No. 02942)
(*admitted pro hac vice* )
**EISENBERG, GILCHRIST & CUTT**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
rsherlock@egclegal.com

By: _____
R. Michael Shickich
**Law Offices of  R. Michael Shickich, LLC**
111 W. 2nd Street, Ste. 500
Casper WY 82601
Phone: 307-266-5297
Fax: 307-266-1261
E-mail: rms@injuryfirm.net

EISENBERG GILCHRIST & CUTT
**MEMORANDUM**

To:  USDC Wyoming Clerk's Office

From: Robert D. Sherlock

Matter:      US ex rel Gaskill v. Condie, et.al.  USDC WY Case No. 16-cv-201 J

Date: 25 May 2018

Re:    AMENDED COMPLAINT

Enclosed please find the Amended Complaint in this matter, prepared for filing. If anything further is required please contact me at the phone number or email in the caption.

Thank you for your assistance. The NEF is adequate for my proof of filing.

Robert D. Sherlock

