Timothy M. Stubson (Bar #6-3144)
Mistee L. Elliott (Bar #6-3540)
Crowley Fleck, PLLP
111 W. 2nd, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com
melliott@crowleyfleck.com
Attorneys for Defendant NOWCAP

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| EX REL. MARK GASKILL | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:16-cv-00201-ABJ |
| | ) | |
| DR. GIBSON CONDIE; BIG HORN | ) | |
| BASIN MENTAL HEALTH GROUP; | ) | |
| NORTHWEST COMMUNITY ACTION | ) | |
| PROGRAM OF WYOMING, INC. AKA | ) | |
| (NOWCAP); ACUMEN FISCAL AGENT | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Northwest Community Action Program of Wyoming, Inc. ("NOWCAP"),

through its counsel Crowley Fleck, PLLP, pursuant to Fed. R. Civ. P. 12(b)(6), moves for dismissal

of Plaintiffs' Amended Complaint against it due to a lack of subject matter jurisdiction, and

alternatively for failure to satisfy the pleading requirements of Fed. R. Civ. P. 9(b).  In support of

its motion to dismiss, NOWCAP advises the Court as follows:

### RELEVANT FACTS

On July 15, 2016, Relator Mark Gaskill ("Relator" or "Gaskill") filed the original

complaint in this matter (under seal), alleging violations of the False Claims Act ("FCA") against

the above-named defendants and others.  On March 8, 2018, the Court entered its Order on

Government's Notice of Election to Decline Intervention, which provided, *inter alia*, that the United States had declined to intervene in this action pursuant to the FCA, 31 U.S.C. § 3730(b)(4)(B) and that the complaint was to be unsealed and served upon the defendants.  On May 29, 2018, Gaskill filed his Amended Complaint in this matter, removing certain defendants and claims and revising allegations pertaining to Defendant Condie and Big Horn Basin Mental Health Group in light of Defendant Condie's criminal conviction for healthcare fraud in October 2017. *See generally* Am. Compl.  Gaskill contends that Defendant Condie's criminal prosecution arose out of the same conduct as originally alleged in the complaint.  Am. Compl. ¶ 10.

Prior to filing the complaint in this matter, specifically from July 1, 2015 through May 6, 2016, Gaskill was employed by the State of Wyoming as the Manager of Quality Assurance and Program Integrity for the Wyoming Department of Health, Division of Healthcare Financing, Program Integrity (i.e., Wyoming Medicaid).  Am. Compl. ¶ 7.  According to Gaskill, "[t]he Medicaid Program Integrity Unit reviews claims paid to providers to ensure documentation supports the billing and payment for services.  The Program Integrity Unit is also charged with recovering funds that are identified as having been improperly paid and/or not sufficiently documented." *Id*.

During the course of Gaskill's employment with the State of Wyoming, "he investigated and prepared reports for his employer concerning the matters detailed in this complaint" and "disclosed the information and conclusions that were part of his duties to his superiors."  Compl. ¶ 98.  Gaskill also purports to have "conducted his own investigation in furtherance of a False Claims Act qui tam action"  (Am. Compl. ¶ 3), and claims to have "direct and independent knowledge regarding Defendants' conduct and practices as described in this Complaint and all related matters as alleged herein" (Am. Compl. ¶ 8).  Gaskill "took these matters, and others, to

the office of the United States Attorney for the district of Wyoming," which led to a meeting on

May 6, 2016 between Gaskill and agents of the United States Department of Health and Human

Services, Office of Inspector General.  Compl. ¶¶ 99, 100, 101.  "At that meeting the facts

underlying this Complaint were provided to the Agents and [Gaskill] disclosed to the relevant

Federal Agents substantially all material evidence and information [he] possesses."  *Id.* ¶ 10.

Following this disclosure, Gaskill's employment with the State of Wyoming was terminated.  *Id.*

¶¶ 10, 102.

Specific to Defendant NOWCAP, Gaskill alleges the existence of a kickback scheme

between NOWCAP and Defendant Condie purportedly beginning "prior to 2011" based on a

"service relationship" between the parties under which Defendant Condie billed Wyoming

Medicaid for services rendered by NOWCAP.  Am. Compl. ¶¶ 53.  "These services included but

were not limited to psychosocial rehab and other community based services."  *Id.*  Gaskill further

alleges that "[b]eginning in 2014, Defendant BHB, by and through Defendant Condie, entered into

a written 'Service Agreement' with Defendant NOWCAP."  *Id.* ¶ 54.  Pursuant to the Service

Agreement, NOWCAP was to perform "bona fide Services as defined under the Wyoming Title

19 Medicaid program," and in exchange would receive from Defendant Big Horn Basin Mental

Health Group "one-half (50%) of all services billed to the Wyoming Title 19 Medicaid program."

*Id.*  Gaskill further alleges, upon information and belief, "that Defendant Condie, in addition to

providing billing services to NOWCAP for certain Medicaid reimbursable mental health,

psychosocial rehabilitation, and community-based services, also referred developmentally

disabled persons to NOWCAP for NOWCAP services.  Likewise, NOWCAP referred, on a

reciprocal basis, enrollees of NOWCAP programs to Defendants BHB and Condie for separately

reimbursable services."  *Id.* ¶ 57.  Finally, Gaskill asserts that "[d]uring the calendar year 2015

alone, Defendant BHB paid $177,640 to NOWCAP pursuant to this scheme," which amount purportedly "represents at least 50% of the amount billed by BHB and Condie for such services." *Id.* ¶ 58.

Regarding the intentional nature of NOWCAP's conduct, Gaskill makes only general assertions applicable to all defendants that they "knowingly, in reckless disregard and/or in deliberate ignorance of the truth" presented or caused to be presented false and fraudulent claims, made or caused to be made or used false records and statements material to obtain payment from the Government, and conspired between themselves to present or cause to be presented false and fraudulent claims for payment. *Id.* ¶¶ 68, 75, 81.

## STANDARD OF REVIEW

### I.     Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(6)  when "resolution of the jurisdictional question is intertwined with the merits of the case." *Haworth v. United States*, 2010 WL 11597876, *2 (D.Wyo. July 12, 2010).  "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*, *quoting Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  The FCA, 31 U.S.C.§ 3730, which provides the substantive basis for false claims, is an example of this type of statute.  Thus, whether or not a false claim is barred pursuant to 31 U.S.C.§ 3730(e)(4)(A), "is a question of subject matter jurisdiction." *U.S. ex rel. Holmes v. Consumer Ins. Group*, 318 F.3d 1199, 1202 (10th Cir. 2003).  "Because federal courts are courts of limited jurisdiction, 'we presume no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction.'" *Id.*, *quoting United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992).  Thus, the party invoking federal

jurisdiction "bears 'the burden of alleging facts essential to show jurisdiction under the False Claims Act as well as supporting those allegations by competent proof.'" *Id.*, *citing United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1004 (10th Cir. 1996).

## II.    Failure to Plead Fraud with Particularity

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "tests whether the plaintiff has properly stated a claim upon which relief may be granted." *U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Services, Inc.*, 778 F.Supp.2d 37, 43 (D.D.C. 2011). Typically, for a claim to survive a Rule 12(b)(6) motion, "it need only provide a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* However, similar to the heightened scrutiny associated with jurisdictional questions (i.e., placing the burden on plaintiff to allege facts supported by competent proof), claims based on fraud are subject to more stringent pleading requirements.

To illustrate, the well-accepted standard for pleading fraud with particularity, especially as applied to a claim under the FCA, has recently been summarized as follows:

> To withstand a motion to dismiss for failure to state a fraud claim, including a claim under the FCA, the plaintiff must meet the pleading standard set out in Federal Rule of Civil Procedure 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also Universal Health Services., Inc. v. United States ex rel. Escobar ("Escobar")*, ____ U.S. ____, 136 S. Ct. 1989, 2004 n. 6, 195 L.Ed.2d 348 (2016) ("False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)."); *United States ex rel. Totten v. Bombardier Corp. ("Totten I")*, 286 F.3d 542, 551-52 (D.C. Cir. 2002) ("[B]ecause the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b)."). This heightened pleading standard is designed to "discourage[ ] the initiation of suits brought solely for their nuisance value, and safeguard[ ] potential defendants from frivolous accusations of moral turpitude," as well as "guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Heath v. AT&T, Inc. ("Heath")*, 791 F.3d 112, 123 (D.C. Cir. 2015) (first alteration in original) (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd. ("Williams")*, 389 F.3d 1251, 1256 (D.C. Cir. 2004)).

> The plaintiff must plead with sufficient particularity "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Williams*, 389 F.3d at 1256 (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)); *see also United States ex rel. Shea v. Cellco P'ship ("Shea")*, 863 F.3d 923, 936 (D.C. Cir. 2017).   In other words, the plaintiff must provide the "who," "what," "when," and "where" with respect to the circumstances of the fraud, so that the defendant is put on "fair notice of the fraud of which it is accused."  *See Heath*, 791 F.3d at 124.

*United States v. Comstor Corporation*, --- F.Supp.3d ----, 2018 WL 1567620, *6 (D.D.C. Mar. 31, 2018).  Further, "it is not enough for a relator to provide details regarding an underlying fraudulent scheme leading to FCA violations.  In order to satisfy Rule 9(b), such allegations of wrongful activities must be 'linked to allegations, stated with particularity, of the *actual false claims* submitted to the government.'"  *U.S. ex rel. Sharp v. Eastern Oklahoma Orthopedic Center*, 2009 WL 499375, *3 (N.D.Okl. Feb. 27, 2009) (emphasis in original).  The type of information needed to satisfy this burden includes: "(1) the dates of the false claims, (2) the content and identification numbers of the forms or the bills submitted, (3) the fees charged to the government, (4) the goods and services for which the government was billed, (5) the persons involved in the billing, and (6) the length of time between the alleged fraudulent practices and the submission of the claims based on those practices."  *Id.*, *citing U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006); *see also U.S. ex rel. Digital Healthcare, Inc.*, 778 F.Supp.2d at 44 (In addition to stating time, place and content of false misrepresentations, relator must also identify individuals allegedly involved in the fraud.).

## LEGAL ANALYSIS

Relator's Amended Complaint fails on a number of grounds.  First, Relator fails to meet the minimum jurisdictional allegations necessary to proceed under the FCA.  More significantly, Relator's own allegations show that the claims he brings against NOWCAP cannot meet the public disclosure bar of the FCA.  In addition, the FCA requires specific allegations regarding any

transactions that are alleged to be fraudulent under the act.   Rather than meeting those requirements, Relator brings this Court generalized insinuations.   As a result of these defects, Relator's claims against NOWCAP must be dismissed.

I.      **Relator's claims are barred pursuant to 31 U.S.C. § 3730(e)(4)(A) because the allegations in the Amended Complaint are based on substantially similar allegations that were publically disclosed and Relator was not an original source of the information.**

This Court lacks jurisdiction over Gaskill's FCA claims against NOWCAP pursuant to the FCA's "public disclosure bar," found at 31 U.S.C. § 3730(e)(4)(A).   This provision requires dismissal of an action or claim "if substantially the same allegations or transactions as alleged in the action or claim were publically disclosed in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party." *Id.*   "This jurisdictional scheme represents Congressional attempts to find 'the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." *U.S. ex rel. Digital Healthcare, Inc.*, 778 F.Supp.3d at 45, *quoting United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C.Cir. 1994).

The test for determining whether the public disclosure bar applies has been stated as follows: "(1) whether the allegations in the complaint are 'substantially similar' to allegations contained in prior 'public disclosures,' and, if so, (2) whether the suit may nonetheless go forward because the relator is an 'original source' of the information underlying his allegations of fraud." *U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp*., 43 F.Supp. 3d 332, 346 (S.D.N.Y. 2014), *citing Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F.Supp.2d 282, 296-97 (S.D.N.Y 2013). In determining whether the allegations in the complaint are "substantially similar" to those contained in prior public disclosures, it is appropriate to consider "whether the information

conveyed [in the public disclosures] could have formed the basis for a governmental decision on prosecution, or could at least have alerted law-enforcement authorities to the likelihood of wrongdoing." *Id.*, quoting *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1377 (D.C. Cir. 1981).

In this case, Gaskill's allegations in his initial pleadings show that a public disclosure was made prior to Gaskill filing his Amended Complaint, and the claims in his Amended Complaint are based on this prior disclosure. Specifically, Gaskill alleges that in 2016 he provided information concerning the matters detailed in his Complaint to the federal Government by sharing the information with the United States Attorney and an agent of the Office of Inspector General. Compl. ¶¶ 98, 99, 100, 101. Subsequent to this disclosure, Defendant Condie "entered a guilty plea to healthcare fraud (18 U.S.Code § 1347) in a criminal prosecution arising out of the same conduct as originally alleged in [Gaskill's] complaint." Am. Compl. ¶ 10. Thus, by Gaskill's own admission, the information he publically disclosed was, or could have formed the basis for the conviction of Defendant Condie. Under these facts, Gaskill's claims cannot go forward unless Gaskill "qualifies as an 'original source' of the information underlying his allegations." *U.S. ex rel. Kester*, 43 F.Supp.3d at 354.

For purposes of the FCA, "original source" is defined at 31 U.S.C. § 3730(e)(4)(B) as follows:

> [A]n individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

Foundational to this definition is a disclosure that has been voluntarily made to the Government. If the disclosure is anything other than voluntary then the relator is not an "original source".

8

Relevant to this case, courts have held that such a disclosure is not voluntary when the relator is employed specifically to disclose fraud.  *See U.S. ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 744 (9th Cir. 1995) (disclosure not voluntary where relator "was a salaried government employee, compelled to disclose fraud by the very terms of his employment"); *see also U.S. ex rel. Griffith v. Conn*, 2015 WL 779047, *6-7 (E.D.Ky. Feb. 24, 2015) (relators' job duties included disclosing fraud so they needed no additional incentive of a qui tam suit); *Wercinski v. IBM Corp.,* 982 F.Supp. 449, 461-62 (S.D. Tex. 1997); and *United States ex. rel. Foust v. Grp. Hospitalization &Med. Servs., Inc.,* 26 F.Supp.2d 60, 73 (D.D.C 1998).

Gaskill was clearly employed to investigate and disclose fraud, as evidenced by his admission that he disclosed "the information and conclusions **that were part of his duties** to his superiors."  Compl. ¶ 98 (emphasis added).   Thus, because his disclosure to government officials was not voluntary, Gaskill is not an original source, and his claims must be dismissed.[1]  A contrary result would allow Gaskill to receive a windfall for doing his job, and does not serve the purpose of the public disclosure bar, which is to dissuade opportunistic plaintiffs from initiating a lawsuit that the Government could have brought on its own.  *See e.g. Comstor Corporation*, 2018 WL 1567620 *8, *quoting United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 39 (D.C.Cir. 2014) ("The FCA encourages insiders to expose fraudulent conduct, but does not reward relators who seek to profit by bringing suits to complain of fraud that has already been publicly disclosed.").

---

[1] Gaskill has also failed to show that he has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions.  He merely makes bald assertions that he has "direct and independent knowledge regarding Defendants' conduct and practices as described in this Complaint and all related matters as alleged herein."  Am. Compl. ¶ 8.  This is not sufficient to meet his burden of establishing jurisdiction.  *See United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 Fed.Appx. 693, 704-705 (11th Cir. 2014) (not enough for relator to state baldly that he has knowledge or to offer only conjecture about the source of his knowledge).

II.   **Alternatively, Relator's claims should be dismissed because he has failed to plead violations of the FCA by NOWCAP with sufficient particularity under Fed. R. Civ. P. 9(b).**

Gaskill's claims against NOWCAP are premised on an alleged kickback scheme between NOWCAP and Defendants Condie and Big Horn Basin Mental Health Group.  The federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), "prohibits a person from paying or receiving kickbacks to induce the referral of an individual for services paid under a federal health care program."  The statute further provides that "a claim that includes items of services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the False Claims Act]."  42 U.S.C. § 1320a-7b(g).  To prove a violation of the Anti-Kickback Statute, the relator must show that the defendant "(1) knowingly and wilfully, (2) offers or pays any remuneration, directly or indirectly, (3) to induce a person to refer individuals to the defendants for the furnishing of medical services, (4) paid for by Medicare."  *United States v. Choudry*, 262 F.Supp.3d 1299, 1306-1307 (M.D.Fla. 2017) (internal quotations and citations omitted).

A kickback scheme must be alleged "with particularity under Rule 9(b), including the 'time, place, and substance of the defendant's alleged fraud.'"  *Id.* at 1307.  A relator satisfies Rule 9(b) "by alleging 'the names of the doctors who received the incentives, the names of the defendants' employees who negotiated the incentives with the doctors, precisely what the incentives were, when they were provided, why they were provided, and why they were illegal."  *Id.*, *quoting United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 Fed.Appx. 693, 705 (11th Cir. 2014).  Allegations that are conclusory or rest on information and belief are not sufficient. *Id.*  "Relator is not permitted to conclusorily assert that the defendants are receiving kickbacks and then pursue discovery to support its allegations."  *Id.* at 1308.

10

Gaskill's allegations regarding a kickback scheme between NOWCAP and Defendants Condie and Big Horn Basin Mental Health Group fall far short of satisfying the strict pleading requirements of Rule 9(b) as set forth herein.  Gaskill has failed to provide any of the information that is required, such as the specific individuals allegedly involved in the scheme or any detail regarding the incentives.  Rather, Gaskill's allegations regarding the nature of the incentives are bare, conclusory statements based only on information and belief.  Am. Compl. ¶¶ 56, 57, 58. Because of the deficiencies in Gaskill's pleading, his claims against NOWCAP should be dismissed.

Even if Gaskill had successfully pleaded an underlying violation of the Anti-Kickback Statute, he still would have to prove a violation of the False Claims Act, which he cannot do. Gaskill alleges that NOWCAP violated 31 U.S.C. § 3729(a)(1), which imposes liability against a party that "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)."  Central to these claims is whether NOWCAP presented or caused to be presented a false claim.  *Choudry*, 262 F.Supp. 3d at 1308.

To satisfy the presentment requirement, Gaskill "must allege the actual presentment of a claim . . . with particularity, meaning particular facts about the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government."  *Id., quoting Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015).  This requires "[p]roviding exact billing data - name, date, amount, and services rendered - or attaching a representative sample claim is one way a complaint can establish the necessary indicia of reliability that a false claim was actually submitted."  *Id., quoting Mastej*, 591Fed.Appx. at 704.  In this case, Gaskill has provided NO

specific claims or billing data, no names of individuals allegedly involved in any fraudulent conduct, and no specific times or other information identifying when or how fraud allegedly occurred.  His failure in this regard warrants dismissal of all claims asserted against NOWCAP.

## CONCLUSION

The FCA is a powerful tool.  Recognizing that fact, those who drafted the law have placed numerous limitations on its use.  Those include the requirement that defendants be informed of the specifics of their wrongful conduct, rather than fighting formless and nameless allegations of the type presented in Relator's Amended Complaint.  Similarly, the law was designed not as a potential hidden treasure for knowledgeable government employees, but instead as a way to root out corruption.  Relator's Amended Complaint fails on both these counts and must be dismissed.

Dated this 6th day of July, 2018.

CROWLEY FLECK PLLP


/s/ Timothy M. Stubson
TIMOTHY M. STUBSON (Bar #6-3144)
MISTEE L. ELLIOTT (Bar #6-3540)
Crowley Fleck PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
307-265-2279
tstubson@crowleyfleck.com
melliott@crowleyfleck.com

Attorneys for Defendant NOWCAP

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 6th day of July, 2018, a true and correct copy of the foregoing document was served on the following via CM/ECF, the Court's electronic transmission system:

R. Michael Shickich
LAW OFFICES OF R. MICHAEL SHICKICH, LLC
1204 East 2nd Street
Casper, WY 82601
rms@injuryfirm.net

Robert D. Sherlock
EISENBERG, GILCHRIST & CUTT
215 South State Street, Suite 900
Salt Lake City, Utah 84111
rsherlock@egclegal.com

and to the following via United States Mail:

Mark A. Klaasen
United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668

CROWLEY FLECK PLLP,

/s/ Timothy M. Stubson
Timothy M. Stubson, (Bar #6-3144)
Mistee Elliott (Bar #6-3540)
Crowley Fleck PLLP
111 West 2nd Street, Suite 220
(307) 232-6901
tstubson@crowleyfleck.com
melliott@crowleyfleck.com
Attorneys for Defendant NOWCAP