R. Michael Shickich
Law Offices of  R. Michael Shickich, LLC
111 W. 2nd Street, Ste. 500
Casper WY 82601
Phone: 307-266-5297
Fax: 307-266-1261
E-mail: rms@injuryfirm.net

Robert D. Sherlock (*admitted pro hac vice*)
rsherlock@egclegal.com
EISENBERG, GILCHRIST & CUTT
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone 801-366-9100
Fax 801-350-0065
Attorney for Qui Tam Plaintiffs/Relators

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* MARK GASKILL<br>                              Plaintiffs,<br>vs.<br><br>DR. GIBSON CONDIE, PH.D.; BIG HORN<br>BASIN MENTAL HEALTH GROUP;<br>NORTHWEST COMMUNITY ACTION PROGRAM<br>OF WYOMING INC. ;  ACUMEN FISCAL<br>SERVICES;<br>                              DEFENDANTS.<br>                      Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.<br><br>16-cv-201J<br><br><br>PLAINTIFF-RELATOR'S<br>MEMORANDUM IN<br>OPPOSITION TO MOTION TO<br>DISMISS (NOWCAP)<br><br><br>ORAL ARGUMENT<br>REQUESTED |

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. THE "PUBLIC DISCLOSURE" PROVISIONS OF
    31 U.S. CODE §3730(e)(4)(A) ARE NOT JURISDICTIONAL BARS . . . . . . . 4

III. NO PUBLIC DISCLOSURE HAS OCCURRED IN THIS
    CASE PRIOR  TO THE FILING OF THE COMPLAINT. . . . . . . . . . . . . . . . .  . . . . 5

        A. THE 'PUBLIC DISCLOSURE' BAR WAS SIGNIFICANTLY
            LIMITED IN APPLICATION BY THE 2010 ACA AMENDMENTS . . . .. . . . . . 7

        B THE ARGUMENT THAT THE DEFINITION OF "PUBLIC" INCLUDES
            "OFFICIALS ACTING FOR THE COMMUNITY" HAS BEEN  SOUNDLY
            REJECTED BY NEARLY EVERY CIRCUIT . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C. TENTH CIRCUIT PRECEDENT IS IN ACCORD WITH THOSE CIRCUITS
            REJECTING THE DEFINITION . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . .  10

IV. A STATE EMPLOYEE IS A PROPER FEDERAL RELATOR . . . . . . . . . .  15

        A. A STATE EMPLOYEE WHOSE POSITION INCLUDES DISCOVERING AND
            REPORTING FRAUD IS A PROPER FEDERAL RELATOR . . . . . . . . . . . . . . . 15

        B. THE CONTRARY POSITION IS AN ATTEMPT TO CREATE A NEW
            'CARVE OUT' RESTRICTION ON RELATORS THAT IS NOT SUPPORTED
            BY THE STATUTORY LANGUAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V. RELATOR MARK GASKILL NOT ONLY HAD NO DUTY TO
    REPORT TO THE FEDERAL GOVERNMENT. . . . . . . . . . . . . . . . . . . . . . . . 18

VI. RELATOR'S AMENDED COMPLAINT FULLY MEETS RULE 9(b)
    REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII. LEAVE TO AMEND THE COMPLAINT MUST BE ALLOWED IF THE
    COURT IS INCLINED TO GRANT DEFENDANTS' MOTION . . . . . . . . 21

VIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . 22

# I.

# INTRODUCTION

This action concerns the knowing and intentional submission of factually false claims and claims based upon false records and statements to Wyoming Medicaid (a Federal Health care Program), and thereby also causing Wyoming to obtain Federal Financial Participation funds for those false claims.  Defendants also made express and implied certifications in order to, inter alia, conceal and misrepresent to Medicaid authorities and the Federal government Defendants' fraudulent and knowingly false claims to Wyoming Medicaid in violation of 31 U.S.C. § 3729(a).

With respect to Defendant Northwest Community Action Program Of Wyoming, Inc. (aka NOWCAP), the operative Amended Complaint  alleges that, as part of its relationship with defendant Condie, defendant NOWCAP entered into a fee-splitting and cross-referral written agreement that on its face violates the Anti-Kickback Statute.  Those claims are, statutorily, false claims. 42 U.S.C. § 1320a-7b(g)) specifically states that  "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]."

Pursuant to this contract, Condie and NOWCAP referred patients to each other for services compensated under a Federal Health Care program. The Amended Complaint fully and adequately alleges all necessary facts and elements under Fed. R. Civ. P. 9(b).

Although Defendant NOWCAP has raised an entirely misplaced argument concerning the court's jurisdiction to hear the case (as addressed below), the Motion to Dismiss is brought under Fed. R. Civ. P. 12(b)(6) not Fed. R. Civ. P. 12(b)(1). Accordingly, and despite the

misplaced and erroneous jurisdictional argument, Defendant NOWCAP's additional arguments

and bases for this motion will be discussed.

## II.
## THIS CASE IS NOT JURISDICTIONALLY BARRED:
## THE "PUBLIC DISCLOSURE" PROVISIONS OF 31 U.S.C. §3730(e)(4)(A)
## ARE NOT JURISDICTIONAL

As a threshold matter, Defendant NOWCAP apparently argues that the commonly called

"public disclosure  bar" under 31 U.S.Code §3730(e)(4)(A)  is jurisdictional in nature.[1] While

the pre-2010 version of § 3730(e)(4)(A) stated the "court shall not have jurisdiction over" an

action based on public disclosure as defined at that time,  the language of the 'public disclosure

bar' was changed by the Patient Protection and Affordable Care Act ("ACA") in 2010. The

jurisdictional nature of the provision was soundly eliminated by Congress.  The phrase "[n]o

court shall have jurisdiction over an action under this section" was replaced with "[t]he court

shall dismiss an action or claim under this section."    In so doing, Congress clearly and

soundly removed any jurisdictional nature of the 'public disclosure' issue.  See, e.g, *Brewster

v. Gage, 280 U.S. 327, 337* (1930) ("The deliberate selection of language so differing from that

used in the earlier acts indicates that a change of law was intended.").

While the Tenth Circuit has not directly ruled on whether the ACA-changed language

alters the jurisdictional nature of the public disclosure bar, the issues has been addressed by the

U.S District Court for Colorado in *U.S. ex rel Reed v. Keypoint Gov't Solutions,*  2017 WL

---

[1] NOWCAP appears to conflate a number of premises and arguments in its memorandum.
These include (a) a jurisdictional bar with a basis for dismissal for failure to state a claim rather
than for lack of jurisdiction; (b) "public disclosure"  arguments that ignore the language of the
statute post-ACA amendment; (c) "original source"  language with "standing" or "person"
requirements for pleading a case under the FCA that meet Rule 9(b) standards, and others. In
this Memorandum, the analysis will be structured around well-developed analytical
frameworks for each of these discrete issues.

6033682,  USDC, D.Colo. September 28, 2017) concluding that the post-ACA language in

§3730(e)(4)(A) is no longer jurisdictional.

> "The Court agrees that, following the 2010 amendments, § 3730(e)(4) is no
> longer a jurisdictional bar. . . . The Tenth Circuit has not weighed in on this
> issue. Nonetheless, this Court, persuaded by the analyses and conclusions of the
> courts that have done so, concludes that the amended § 3730(e)(4) creates
> grounds for dismissal for failure to state a claim under Rule 12(b)(6) rather than
> for lack of jurisdiction under Rule 12(b)(1)."
>
> Id.  (slip opinion)

A number of circuits have clearly determined that the new language inserted by the

ACA no longer presents a jurisdictional bar. *See United States ex rel. Moore & Co., P.A. v.*

*Majestic Blue Fisheries, LLC*, 812 F.3d 294, 300 (3d Cir. 2016) ("[W]e conclude that the

amended bar is not jurisdictional."); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d

805, 810 (11th Cir. 2015) ("We conclude that the amended § 3730(e)(4) creates grounds for

dismissal for failure to state a claim rather than for lack of jurisdiction."); *United States ex rel.*

*May v. Purdue Pharm. L.P.*, 737 F.3d 908, 916 (4th Cir. 2013) ("It is apparent, however, that

the public-disclosure bar is no longer jurisdictional.");  *Abbott v. BP Exploration &*

*Production, Inc.,* 851 F.3d 384 (5th Cir. 2017) (" We agree with our sister circuits that the

public disclosure bar is no longer jurisdictional". ) Thus, Defendant NOWCAP's argument is

simply wrong and misplaced. This court certainly has jurisdiction in the matter, and

Defendant's argument should be soundly rejected.

### III.
### NO PUBLIC DISCLOSURE OCCURRED
### IN THIS CASE PRIOR TO THE FILING OF THE COMPLAINT.

Beyond threshold the jurisdictional issue of 31 U.S. Code §3730(e)(4)(A),  Defendant

NOWCAP has  alleged that a 'public disclosure" within the definition contained in 31 U.S.C.

3730(e)(4). If there has not been a public disclosure, then the analysis ceases and all issues

pertaining to "original source," including the "voluntariness" of providing information to the

government, become moot.

A public disclosure must have occurred in one of the statutorily enumerated ways:  (1)

in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a

party; (2) in a congressional, Government Accountability Office, or other Federal report,

hearing, audit, or investigation; or (3) from the news media.

Defendant NOWCAP  makes no assertion that a public disclosure occurred in any

Federal criminal, civil, or administrative hearing in which the Government or its agent is a

party. They further make no assertion that a public disclosure occurred in (from) the news

media, nor in a congressional, Government Accountability Office, or other Federal report,

hearing, or audit.[2] Defendant NOWCAP's sole assertion concerning public disclosure is,

apparently, that because the Relator provided information to the United States, the United

States (on the basis of that information) opened an investigation. NOWCAP then conflates that

fact with a public disclosure. In so doing they attempt to resurrect a congressionally discarded

(in 1986) "government knowledge" defense and conflate that issue with the current, limited,

public disclosure defense.

As will be thoroughly demonstrated herein, there has been no "public disclosure" in this

---

[2]  NOWCAP appears to make a timing-sequence argument that somehow the Relator based his *qui tam* complaint on the outcome and evidence in the Condie criminal prosecution – which itself arose out of Relator's complaint. The Complaint in this matter was filed on July 15, 2016. Pursuant to the False Claims Act, the case remained sealed while the Government pursued a criminal prosecution of one defendant. The Amended Complaint was filed May 29,2018 and served, along with the original complaint and other documents, on the Defendant. Pursuant to Fed.R.Civ.P. 15(c)(1)(B), the amended complaint and its allegations relate back to the date of the original complaint.

case. Nearly every United States Circuit Court of Appeals,[3] including the  Tenth Circuit , to address the issue has determined that a public disclosure does not occur under the facts of this case. Without any public disclosure having occurred, the other issues become moot.

### A. THE 'PUBLIC DISCLOSURE' BAR WAS SIGNIFICANTLY LIMITED IN APPLICATION BY THE 2010 AFFORDABLE CARE ACT AMENDMENTS.

As previously noted, the public disclosure bar is no longer jurisdictional. But because the former version of subsection (e)(4) was jurisdictional, courts were compelled to construe it strictly, and all doubts were resolved against federal jurisdiction. Removing the jurisdictional label from the public disclosure defense has limited the application of these restrictive readings.

The transformation of the older "government knowledge" bar to a "public disclosure" bar has consequences, i.e., if disclosure to the government itself constituted a "public disclosure," the legislative transformation would have been a nullity. Instead, the focus is not on what the government knows or learns from the relator, but whether that information has been *injected into the public domain.* By focusing on whether the essential information underlying the *qui tam* complaint has been injected into the truly public domain, Congress' focus was to restrict "parasitic" false claims cases while encouraging those brought by insiders of all types. The forums in which a 'public' disclosure under the FCA must have occurred were defined and restricted under the Affordable Care Act in 2010. 31 U.S.Code §3730(e)(4)(A).

This issue has been amply addressed by the Tenth Circuit, District of Columbia Circuit and the First Circuit:

---

[3] A pre-ACA case from the outlier Seventh Circuit will be discussed *infra.*

[I]n order to be publicly disclosed, the allegations or transactions upon which a qui tam suit is based must have been made known to the public through some affirmative act of disclosure." …  This requirement clearly contemplates that the information be in the public domain in some capacity and <u>the Government is not the equivalent of the public domain.</u>   *Kennard V. Comstock Resources, Inc.* 363 F.3d 1039 (10th Cir. 2004) (emphasis added)

"As a result of that change, the inquiry shifted from whether the relevant information was known to the government to whether that information was publicly disclosed in one of the channels specified by the statute… *United States ex rel. Oliver v. Philip Morris USA Inc.,* 763 F.3d 36, 42 (D.C.Cir.2014). . . .

Thus, to credit the Government's internal knowledge alone as sufficient to withdraw jurisdiction, as our case law permits, is to "essentially reinstate a jurisdictional bar [i.e. the 'government knowledge' bar] Congress expressly eliminated." Id.; *accord, United States ex rel. Rost v. Pfizer, Inc.,* 507 F.3d 720, 729 (1st Cir.2007). (clarification added)

## B. The Argument that the Definition of "Public" Includes  the Government  itself has Been Soundly Rejected by Nearly Every Circuit

Every circuit, (except the Seventh Circuit, in a pre-ACA case) to address the relevant question -- whether disclosure to Government officials is a de facto 'public disclosure' -- has rejected such an interpretation. This has been the case whether or not the relator was a government employee, or even a Federal government employee whose job included finding and reporting fraud.  *See United States ex rel. Oliver v. Philip Morris USA, Inc.,* 763 F.3d 36, 42 (D.C. Cir. 2014); *United States ex rel. Meyer v. Horizon Health Corp.,* 565 F.3d 1195, 1200 & n.3 (9th Cir. 2009); *United States ex rel. Rost v. Pfizer, Inc*., 507 F.3d 720, 730 (1st Cir. 2007), overruled on other grounds by *Allison Engine Co. v. United States ex rel. Sanders,* 553 U.S. 662 (2008); *Kennard v. Comstock Res., Inc.,* 363 F.3d 1039, 1043 (10th Cir. 2004); *United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1499-1500 (11th Cir. 1991); see

also *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.,* 933 F. Supp. 2d 825, 844

(E.D. Va. 2013); *United States v. Smith & Nephew, Inc.*, 749 F. Supp. 2d 773, 782-84 (W.D.

Tenn. 2010). "[A] 'public disclosure' requires that there be some act of disclosure to the public

outside of the government." *United States ex rel. Rost v. Pfizer, Inc.,* 507 F.3d 720, 728 (1st

Cir.2007)

    These courts rely primarily on the text of § 3730(e)(4)(A): a disclosure requires both

"an affirmative act" and a "recipient  to whom the information is revealed." *United States ex

rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.,* 777 F.3d 691, 696 (4th Cir.2015).

That recipient, by the plain language of the statute, is the public. Because "the Government is

not the equivalent of the public," the phrase must be read to mean that "only disclosures made

to the public at large or to the public domain ha[ve] …. significance." Id. at 696–97 (internal

quotation marks omitted; emphasis added). Otherwise, "[i]f providing information to the

government were enough to trigger the bar, the phrase 'public disclosure' would be

superfluous." *Rost,* 507 F.3d at 729

    The Seventh Circuit's outlier approach, *decided before the limiting amendments under the

ACA,* is based on a circuitous logic  to reach the conclusion that reports to the Government are

publicly disclosed.  In the Seventh Circuit's primary case, *United States v. Bank of

Farmington,* 166 F.3d 853 (7th Cir. 1999), *overruled on other grounds by Glaser v. Wound

Care Consultants, Inc.,* 570 F.3d 907 (7th Cir. 2009), the court stated that information on

which the relator based her *qui tam* action had been "publicly disclosed" because it had been

disclosed "to a competent public official." Id. at 861. This simply states the now-legislatively

overruled "government knowledge" defense. Reasoning that "'public' . . . can also be defined

as 'authorized by, acting for, or representing the community,'" the Bank of Farmington court

held that a disclosure, "not actually made to the public at large," but rather to a "public official," sufficed to trigger the  jurisdictional bar in § 3730(e)(4)(A) (which at the time was jurisdictional).  In so doing it reinstated the congressionally eliminated "government knowledge" bar.

 As with other circuits, the Fourth Circuit rejected this tortured reading:

> But it seems clear that by "public disclosure," Congress did not somehow mean "disclosure to the government." . . . That the reports were disclosed to state and local government agencies as well as federal agencies does not alter our conclusion.

<em>Wilson, supra,</em> at 697.

## C. TENTH CIRCUIT PRECEDENT IS IN ACCORD WITH THOSE CIRCUITS REJECTING THE DEFINITION

 Precedent in the 10th Circuit Court of Appeals, including cases in which the relator was a government employee, has consistently held that disclosure of information to government officials and investigators does not constitute a "public disclosure" within the meaning of 31 U.S.C. 3730(e)(4).

 This analysis begins with the case which was, at the time, it one of first impression in the 10th Circuit. In  *U.S. ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 151 (10th Cir. 1996), the Plaintiff-Relator was employed for six months  as a consultant to, and then as the clinical director of, a mental health facility operated by the defendants. It was her responsibility to monitor compliance with applicable Medicaid requirements. During her employment she became aware of widespread noncompliance with minimum program components, and regularly communicated the noncompliance to her superiors. Nonetheless, they ignored her advice and continued to submit noncomplying claims to the government that were paid by Medicaid.

Completely independently  of plaintiff's efforts, a routine audit and inspection was conducted by the Oklahoma Department of Human Services ("DHS"), which also revealed deficiencies in the defendants' day treatment program similar to those discovered by plaintiff. As a result a state report was prepared detailing essentially the same compliance problems that plaintiff had raised. It (the report) was only circulated within the state agency. No copies of the report were released to the general public.

Defendants terminated plaintiff's employment in May 1992. Six months later, plaintiff filed the present lawsuit alleging that the defendants' Medicaid billing practices gave rise to false claims under the FCA. Plaintiff also alleged that her discharge had been in retaliation for her repeated protests over defendants' noncompliance with the applicable Medicaid requirements. In addressing whether the state report constituted a "public disclosure", the Tenth Circuit noted:

>  In order to bar a *qui tam* action under section 3730(e)(4)(A), the allegations or transactions upon which the suit is based must have been affirmatively disclosed to the public. *MK–Ferguson Co.,* 861 F.Supp. at 1551; *cf. Springfield Terminal Ry.,* 14 F.3d at 652. . . .

> The "affirmative disclosure" interpretation of the public disclosure bar also coheres with the twin purposes of the FCA: "(1) to encourage private citizens with first-hand knowledge to expose fraud; and (2) to avoid civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud." *United States ex rel. Precision Co. v. Koch Industries,* 971 F.2d 548, 552 (10th Cir.1992), *cert. denied,* 507 U.S. 951, 113 S. Ct. 1364, 122 L.Ed.2d 742 (1993).

> Admittedly, the government entity possessing the information in this case was not the federal government, but a state agency…  However, we do not believe this fact undercuts our conclusion that, … the touchstone is actual public disclosure rather than mere knowledge of fraud. Nor do we draw any contrary conclusion from the fact that [the State agency] … could have beaten plaintiff to the courthouse and filed its own *qui tam* action on behalf of the United States.

> See, e.g., <u>United States ex rel. Wisconsin v. Dean,</u> 729 F.2d 1100 (7th Cir.1984) (involving *qui tam* action brought by the State of Wisconsin after its Department of Health and Social Services uncovered instances of Medicaid fraud).
>
> *U.S. ex rel. Ramseyer v. Century Healthcare Corp*., 90 F.3d 151 (10th Cir. 1996),

*Ramsayer* was followed by *U.S. ex rel Holmes v. Consumer Ins. Group,* 318 F.3d 1199 (10th Cir. 2003). In *Holmes,* the relator was the postmaster in Poncha Springs, Colorado. In her duties, she discovered that a bulk mailing company (the Defendant) had been knowingly underpaying its required postage by trucking their mailings to another rural post office after Relator informed the company of the correct rates she would charge at Poncha Springs.  At the same time, they certified the weight of each piece in order to qualify for a bulk-mailing rate to which they were not entitled.

After internally reporting to the Postal Inspection Service, who allegedly took no action, Holmes filed her *qui tam* action under seal. The government intervened and moved to dismiss Holmes as a party for lack of subject matter jurisdiction pursuant to 31 U.S.C. § 3730(e)(4) (at the time it was jurisdictional). The government asserted that the *Government itself had publicly disclosed information*[4] concerning the fraud allegations against the defendant in the course of its administrative investigation. It alleged that Holmes' *qui tam* action was based upon those "publicly disclosed" allegations. They argued that Holmes did not qualify as an "original source" of the information contained in her complaint because she was

---

[4] This argument itself raises a very troubling issue: in an investigation derived from a relator's information but prior to filing suit, can the government, through its own action, *sua sponte* 'create' a public disclosure, thus blindsiding  the relator and depriving the relator of entitlement to a share of the proceeds of the case.  Such a position would be contrary to the very intent of the False Claims Act since its 1863 inception and certainly since its 1984 amendments. The purpose is to encourage relators to come forward. Such a position as was asserted by the Government in *Holmes* undercuts that entire purpose and serves no public purpose.

obligated, as part of her job duties, to report fraud and procedural irregularities.  The Tenth

Circuit rejected all of these government arguments.

> The term "public disclosure" is not defined in the FCA. In *Ramseyer*, we held
> that the term "signifies more than the mere theoretical or potential availability of
> information." "[I]n order to be publicly disclosed, the allegations or transactions
> upon which a qui tam suit is based must have been made known to the public
> through some affirmative act of disclosure." Id 90 F.3d at 1519. Thus, we
> stated: The mere possession by a person or an entity of information pertaining to
> fraud, obtained through an independent investigation and not disclosed to
> others, does not amount to "public disclosure." Rather, public disclosure occurs
> only when the allegations or fraudulent transactions are affirmatively provided
> to others not previously informed thereof.  Id. at 1521 (emphasis added).

> [T]he government argues that a federal employee who discovers fraud in the
> course of his or her employment and who is required to report it, is not a
> "person" entitled to bring a civil action under § 3730(b)(1) because the
> acquisition of such information within the scope of a federal employee's job
> eliminates the critical distinction between the government and the individual qui
> tam plaintiff. This argument finds no support in the ordinary meaning of the
> word "person."
>
> ...
>
> In our view, the most persuasive discussion of the issue comes from the
> Eleventh Circuit in *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493
> (11th Cir.1991). There, the relator was an attorney for the United States Air
> Force who, "[d]uring the course of his employment with the government, . . .
> became aware of bid-rigging on the part of a corporation seeking
> telecommunications contracts with the United States." Id. at 1494. The district
> court dismissed the suit on the grounds that the FCA contained a jurisdictional
> bar against suits brought by government employees based upon information
> acquired in the course of their employment. On appeal, the Eleventh Circuit
> initially determined that no public disclosure had occurred prior to the relator
> filing suit, and thus concluded that it was unnecessary for the relator to establish
> that he was an "original source" of the information on which his suit was based.

> *Holmes*, supra, at 1205 - 1214

*Holmes* was followed the next year by *Kennard V. Comstock Resources, Inc,* **.**363 F.3d

1039 (10th Cir. 2004), in which the court stated:

[I]n order to be publicly disclosed, the allegations or transactions upon which a qui tam suit is based must have been made known to the public through some affirmative act of disclosure." …   This requirement clearly contemplates that the information be in the public domain in some capacity and <u>the Government is not the equivalent of the public Domain.</u>   *Kennard V. Comstock Resources, Inc.* 363 F.3d 1039 (10th Cir. 2004)

Following *Kennard* in the Tenth Circuit was *United States ex rel. Maxwell v. Kerr– McGee Oil & Gas Corp.,* 540 F.3d 1180, 1186 (10th Cir.2008).  In *Maxwell*, the relator was a senior federal government auditor for the Minerals Management Service ("MMS"), a division within the United States Department of the Interior. In 2002, the MMS began an investigation of royalty reporting by Kerr–McGee arising from crude oil produced from federal offshore leases and sold to Texon L.P.  Mr. Maxwell was the senior auditor on the team assigned to the investigation, and in the course of that investigation "reached the conclusion that Kerr–McGee had substantially underpaid its federal oil royalties." Mr. Maxwell sent an audit issue letter to Kerr–McGee containing a preliminary determination that Kerr–McGee had underpaid royalties owed to the federal government on its leases. Kerr–McGee submitted a written response to MMS disputing the findings contained in the letter. Mr. Maxwell then drafted an order for payment of additional royalties, which he submitted to his senior manager. But MMS took no action on his findings, and did not issue the order of payment.

Significantly, in *Maxwell* the 10th Circuit clearly explained its holding in *Holmes* to state that even a federal government auditor discovering fraud against the government in the course of official duties may nonetheless be a proper relator:

We held in our *en banc* decision in *Holmes* that "a government employee who obtains information about fraud in the scope of his or her employment, and who is required to report that fraud" is a "person" under § 3730(b)(1) and is not otherwise prevented from acting as a relator. 318 F.3d at 1204. . . . [O]ur analysis in *Holmes*, however, did not turn on whether or not the fraud was

discovered in the employee's official capacity. The lack of limiting language on the broad term "person" as used in § 3730(b)(1) provides no basis for concluding that government employees, whether acting in their official capacity or not, are excluded from the scope of the statute.

In light of this 10th Circuit precedent, it is clear that the term "person" a includes even a federal government auditor who discovers wrongdoing in the course of employment, and the disclosure of information within the government is NOT a 'public disclosure'.

In this case, Relator Gaskill was not even a federal employee; he was an employee of the State of Wyoming. In this position, he is even more attenuated from the issues which could have been the underlying concerns in Hughes and Maxwell. He had no duty to report information to the Federal Government. His reports did not constitute Federal investigations or audits as required in the post-ACA false claims act amendments.

Disclosures within the government, whether state or Federal, and disclosures to witnesses or targets of an investigation in the course of government investigations are NOT public disclosures. The Government is not the equivalent of the public. Only disclosures made to the public at large or to the public domain have significance, as is explicitly clear in the denomination (post-ACA) of specific types of disclosures that constitute a "public disclosure".

## IV.
## A STATE EMPLOYEE WHOSE POSITION INCLUDES DISCOVERING AND REPORTING FRAUD IS A PROPER FEDERAL RELATOR

### A. A State Employee whose Position Includes Discovering and Reporting Fraud is an Original 'Voluntary' Source of information to the Federal Government.

Because there was no public disclosure in this case, the Court need not reach the issue of "original source" analysis. However, in the interest of complete briefing on this issue, Relator provides the following analysis.

After the ACA amendments there are now two ways a relator may qualify as an "original source." Even if there is a 'public disclosure,' a relator will survive a public disclosure challenge under §3730(e)(4)(A) if he or she voluntarily disclosed the information on which the allegations or transactions in the qui tam complaint are based before a public disclosure, or  has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions and who has voluntarily provided the information to the Government before filing an action under this section.

The argument appears once again with respect to the "voluntariness" of disclosures to the government. NOWCAP argues that if the relator is a government employee (State or Federal) whose duties include investigating, uncovering,  prosecuting,  or otherwise detecting and taking administrative actions to prevent fraud, such a disclosure to the government is not 'voluntary'. This issue was addressed in the 10th Circuit in *Maxwell*:

> Prior to the 1986 amendments, federal employees were effectively barred from bringing qui tam suits because of the jurisdictional exemption for suits based on information already known to the United States. 31 U.S.C. § 232(C) (1946). But the 1986 amendments allow suits based on such information as long as it is not publicly disclosed, and therefore do not prevent federal employees from acting as relators.

> In *Holmes*, we explicitly adopted the Supreme Court's reasoning in *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 546-48, 63 S.Ct. 379, 87 L.Ed. 443 (1943), which interpreted a predecessor to the current FCA: "even a district attorney, who would presumably gain all knowledge of a fraud from his official position, might sue as the informer." *Marcus*, 317 U.S. at 546, 63 S.Ct. 379. We conclude, therefore, that Mr. Maxwell was not prevented from serving as a relator on the basis that he is a federal auditor who discovered the information underlying his suit in his official governmental role.

> *United States ex rel. Maxwell v. Kerr–McGee Oil & Gas Corp., 540 F.3d 1180, 1186 (10th Cir.2008).*

Further, the 6th Circuit addressed a similar situation, intertwined with the 'public

disclosure issue as well, in 2015 in *U.S. et al., ex rel  Robert Whipple, V. Chattanooga-*

*Hamilton County Hospital Authority,   (6th Cir 2015)*

> Having concluded that some disclosure outside the government is required,
> there is no basis to conclude that these disclosures to AdvanceMed were
> "public." See Maxwell, 540 F.3d at 1184-86 (holding communication between
> federal and state officials in an active investigation under a duty of
> confidentiality with respect to that information is not a public disclosure insofar
> as the information is not released into the public domain); United States ex rel.
> Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1521 n.4 (10th Cir. 1996)
> (holding disclosure among government employees does not constitute public
> disclosure).
>
> Indeed, the Ninth Circuit has held in an analogous situation that the
> government's dissemination of an audit report to a private company hired by the
> government to audit the contract was not a public disclosure for purposes
> of § 3730(e)(4). *See Berg v. Honeywell Int'l, Inc.*, 502 F. App'x 674, 676 (9th
> Cir. 2012).

### B. THE CONTRARY POSITION IS AN ATTEMPT TO CREATE A NEW 'CARVE OUT' RESTRICTION ON RELATORS THAT IS NOT SUPPORTED BY THE STATUTORY LANGUAGE OR 10TH CIRCUIT PRECEDENT.

Defendant argues that no Executive Branch employee, or even State employees in

auditing positions, can make a "voluntary disclosure," and thus qualify as an 'original source.'

The theory derives from generic Government employee duties, because all such employees

have a legal duty to disclose fraud.

One of the troubling assumptions underlying the broad brush approach to "disclosure to

the government" is the assumption that all levels of government operate in unison with a single

purpose and single motive. Governments are composed of people, and those people have

allegiances each other, to political viewpoints, and even to the very entities who they are

supposed to be regulating. These allegiances may be personal and/or may be a result of

"agency capture" or "regulatory capture" in which the regulated industry essentially co-opts the regulators.  In whatever manner it occurs, the assumption that some type of disclosure to one branch or one level of government (local, State, or Federal) extinguishes the relator's ability to "blow the whistle" to the government flies in the face of reality as well as the statutory language and the relevant case law.

With respect to what Congress intended by the word 'voluntary', the legislative history for this provision dates to August 11, 1986, when one of two key architects of the 1986 Amendments, Sen. Charles Grassley, took to the floor and presented S. 1562, the Senate's version of the bill to amend the FCA.  With regard to the amendments' *voluntary disclosure* requirement, Sen. Grassley said:

> In the definition of "original source," the requirement that the individual "voluntarily" informed the Government or news media is meant to preclude the ability of an individual to sue under the qui tam section of the False Claims Act when his suit is based solely on public information and the individual was the source of the allegations *only because the individual was subpoenaed to come forward.* However, those persons who have been contacted by the news media and cooperated by providing information which later led to a public disclosure would be considered to have "voluntarily" informed the Government or media and therefore be considered eligible qui tam relators. 132 Cong. Rec. S11238 (Aug. 11, 1986) (emphasis added).

Thus, with respect to 'voluntariness', the amendment's sponsor testified that it is the issue of legal compulsion (i.e. subpoena) that renders a disclosure involuntary.

## V.
## IN THIS CASE, RELATOR HAD NO DUTY TO
## REPORT TO THE FEDERAL GOVERNMENT

The use of the term "Government" in the definition of 'original source' is meant to include any Government source of disclosures cited in subsection 5(A); that is, Government only

includes Congress, the General Accounting Office, any Federal executive or independent

agency as well as all other Federal governmental bodies that may have publicly disclosed the

allegations. A disclosure to the Federal Government) does not occur by fiat when wrongdoing

is disclosed to a State government.

Plaintiff-Relator Mark Gaskill is a resident of Wyoming.  He was previously employed

by the State of Wyoming as the Manager of Quality Assurance and Program Integrity for the

Wyoming Department of Health, Division of Healthcare Financing, Program Integrity

(Medicaid), i.e., Wyoming Medicaid. Relator was terminated from that position on May 6,

2016, by his direct supervisor, the the Wyoming State Medicaid Agent, directly or shortly after

meeting with Federal officials, including  agents of the U.S. Department of Health and Human

Services Office of the Inspector General. At that meeting the facts underlying this case were

provided to the Agents and Relator disclosed to the relevant Federal Agents substantially all

material evidence and information the Relator possessed. This meeting was held after

disclosure of the same information to agents of the State of Wyoming. It could not be clearer

that not only did Mr. Gaskill have no duty to report to the Federal Government, but that it was

a specific, *de facto* job prohibition.

## VI.
## RELATOR'S AMENDED COMPLAINT MORE THAN ADEQUATELY MEETS THE PLEADING REQUIREMENTS OF RULE(9)(B), AND PLEADS A CLEARLY EVIDENT  SCHEME TO SUBMIT FALSE CLAIMS

Fed.R. Civ. P. Rule 9(b) states: "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The

purpose of Rule 9(b) is "to afford defendant[s] fair notice of plaintiff's claims and the factual

ground upon which [they] are based." *United States ex rel. Lemmon v. Envirocare of Utah,*

*Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.,* 681 F.3d 788, 803 (6th Cir. 2012). See also *United States ex rel. Polukoff v. St. Marks Hospital, et.al.* 2018 WL 3340513 (10th Circuit (Utah) July 9, 2018).

With respect to its actual pleading requirements in False Claims Cases, "claims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Lemmon,* supra. FCA claims comply with Rule 9(b) when they "provid[e] factual allegations regarding the who, what, when, where and how of the alleged claims." Id. But, "in determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016).

As demonstrated below, Relator's Amended Complaint fully complies with the requirements of Rule 12(b)(6) and Rule (9)(b). First, none of the elements pled in this case are based on pure speculation. All are supported by factual allegations and the reasonable inferences from those factual allegations. The Amended Complaint fully meets the "who, what, when, where, and how" pleading rubric of Rule 9(b) and states claims for relief under Rule 12(b)(6). These include but are not limited to the following:

**1. Who?**   Defendant NOWCAP, in conjunction with Defendant Condie.

**2. What?**   Defendant NOWCAP, in conjunction with Defendant Condie, entered into a contract pursuant to which patients were cross-referred to each other. The contract specifically delineated a fee-splitting relationship unrelated to actual services

performed by each. Rather, it is (on the face of the contract) a pay-for referral (i.e. kickback)
scheme. All claims for services arising from such a scheme are, statutorily, false claims. Actual
claims were submitted to Medicaid arising out of this relationshif and for which payments were
made between the parties.

       **3. When?**  From not later than the date of the contract (December 1, 2014)
through at least 2015.

       **4. Where?**  The premises and business locations of NOWCAP in Wyoming.

       **5. How?**  As described above, the scheme consisted of a contractually based
kickback system.

       It is evident from the Amended Complaint itself that Defendant NOWCAP has received
"fair notice of plaintiff's claims and the factual ground upon which [they] are based." *United
States ex rel. Lemmon v. Envirocare of Utah, Inc.,* 614 F.3d 1163, 1172 (10th Cir. 2010).
Further , it is clear that sufficient specificity has been alleged " to put defendants on notice as
to the nature of the claim." Williams v. Duke Energy Int'l, Inc., 681 F.3d 788, 803 (6th Cir.
2012).  See also United States ex rel. Polukoff  v. St. Marks Hospital, et.al.  2018 WL 3340513
(10th Circuit (Utah) July 9, 2018).  NOWCAP's motion should be denied in its entirety.

## VII.
## LEAVE TO AMEND THE COMPLAINT MUST BE ALLOWED IF THE COURT IS INCLINED TO GRANT DEFENDANTS' MOTION

       Leave to amend should be granted unless the district court "determines that the
pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith* , 203 F.3d
1122, 1127 (9th Cir. 2000) This approach is consistent with Fed. R. Civ. P. 15(a). See *Foman
v. Davis,* 371 U.S. 178, 182 (1962) (Rule 15(a)'s mandate "is to be heeded."). See also *U.S. ex
rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048 (9th Cir. 2001). Under Fed. R. Civ. P. 15,

"[t]he court should freely give leave" to amend pleadings "when justice so requires." *Id.* "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin  v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009); *Moore, et.al. v. Kayport Package Express, Inc., et.al.* 885 F.2d 531 (9th Cir. 1989).  In this case, there has been no undue delay (or delay of any type), no bad faith, dilatory motive, no failures to cure deficiencies by previous amendments, certainly no prejudice to any party, and no evidence of futility of amendment. If, and to the extent, that this Court determines that the Amended Complaint may be deficient in any respect, Relators should be given the opportunity to address any issues through further amendment.

# VIII.
# CONCLUSION

The Defendants' arguments, in their entirety, constitute flawed and unsupportable theories and allegations.  The "public disclosure" bar is not jurisdictional. There has been NO public disclosure. Mr. Gaskill meets every qualification of a proper relator under the False Claims Act, and his actions in the case are precisely those that are encouraged and rewarded under the *qui tam* provision of the Act, 31 U.S.C §3730(d).

The scheme with relationship to NOWCAP is more than adequately pled and the claims arising from the kickback scheme are, statutorily, False Claims. At no time in their motion does Defendant NOWCAP claim that it didn't know what wrongs it is alleged to have committed. The facts as pled, taken as true at this pleading stage,  lead not only to logical and fair inferences supporting the Complaint but also lead to *inevitable, and irrefutable* conclusions in support of the Relators' case.

For all of the foregoing reasons, Moving Defendants' Motion should be denied in its entirety. [5]

Respectfully submitted,

By*:   /s/ Robert D. Sherlock*

Robert D. Sherlock (Utah Bar No. 02942)
*(admitted pro hac vice* )
**EISENBERG, GILCHRIST & CUTT**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
rsherlock@egclegal.com

---

[5] Relators also request leave to amend in the event that the Court is inclined to dismiss any of the counts. See, *Lee,* 245 F 3d 25 1048 at 1052-53.

**CERTIFICATE OF SERVICE**

I hereby certify that I am an attorney at Eisenberg, Gilchrist & Cutt.  My business address is

215 S. State Street, Suite 900, Salt Lake City, Utah  84111.  I am over the age of eighteen years

and not a party to the above-titled action.

 I certify that on June 25 , 2018, a true and correct copy of the following  document was served

on the following recipients via CM/ECF, the Court's electronic transmission system:

**Plaintiff-Relator's Memorandum In Opposition To Dismiss (NOWCAP)**

Timothy M. Stubson, (Bar #6-3144)
Mistee Elliott (Bar #6-3540)
**Crowley Fleck PLLP**
111 West 2nd Street, Suite 220
(307) 232-6901
tstubson@crowleyfleck.com
melliott@crowleyfleck.com
Attorneys for Defendant NOWCAP

R. Michael Shickich
**Law Offices Of  R. Michael Shickich, LLC**
1204 East 2nd Street
Casper, WY 82601
rms@injuryfirm.net

**and to the following via United States Mail:**

Mark A. Klaasen
**United States Attorney**
P.O. Box 668
Cheyenne, WY 82003-0668

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Dated: July 17, 2018

*/s/ Robert D. Sherlock*
Robert D. Sherlock