

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. MARK GASKILL, <br><br> Plaintiffs, <br><br> VS. <br><br> NORTHWEST COMMUNITY ACTION PROGRAM OF WYOMING, INC., and ACUMEN FISCAL AGENT, LLC, <br><br> Defendants. | Case No: 1:16-CV-00201-ABJ |

**ORDER GRANTING DEFENDANT ACUMEN'S MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendant Acumen Fiscal Agent, LLC's ("Acumen") *Mo. to Dismiss*, ECF No. 33. Acumen filed a *Br. in Supp. of Mo. to Dismiss*, ECF No. 34, where it argued that Plaintiff-Relator Mark Gaskill's ("Relator") *Am. Compl.*, ECF No. 16, failed to plead a violation of the False Claims Act ("FCA") with particularity. Relator disputed Acumen's arguments in his *Mem. in Opp'n to Mo. to Dismiss*, ECF No. 38. On November 20, 2018, the Court held a hearing and heard the Parties' oral arguments. Having considered all the filings, the applicable law, and being otherwise fully advised, the Court FINDS and ORDERS as follows:

I. BACKGROUND

Relator originally filed this action on July 15, 2016. *Am. Compl.* ¶ 52. The Court then sealed the case to give the United States time to investigate the matter. The United States brought charges against Dr. Condie (who Relator later voluntarily dismissed from this current action), and Dr. Condie subsequently pled guilty to criminal healthcare fraud. *Id.* ¶ 50. The United States prosecuted Dr. Condie for the same conduct alleged in Relator's original complaint. *Id.* After Dr. Condie entered his guilty plea, the Court unsealed the case, which allowed Relator to bring the current action.

Relator discovered the information underlying the current action while investigating the propriety of Medicaid claims for the State of Wyoming. *Id.* ¶¶ 3, 52. Specifically, from July 1, 2015, through May 6, 2016, Relator was employed by the Wyoming Department of Health. *Id.* ¶ 7. Relator's official title was the Manager of Quality Assurance and Program Integrity for the Wyoming Department of Health, Division of Healthcare Financing, Program Integrity (Medicaid). *Id.* Relator's job required him to review claims and help Wyoming Medicaid recover funds that it had improperly paid. *See id.* ¶ 3. Relator contends that Acumen was the recipient of such improper payments.

Acumen is a Medicaid fiscal intermediary, meaning that Acumen directly distributes funds from Wyoming Medicaid to providers involved with patient home care. *Id.* ¶ 13. Since those providing "self-help" care are not necessarily employed, Acumen acts as their "de facto

2

employer" and manages the payroll for those involved with such "self-help care."[1] *See id.* ¶¶ 15, 38, and 59. Acumen itself is a "Wyoming Medicaid enrolled provider." *Id.* ¶ 59.

Relator's claims against Acumen rely on Acumen's payment of Wyoming Medicaid funds to providers who were allegedly not enrolled in Wyoming Medicaid. *Id.* ¶ 60. Relator avers that Acumen paid unenrolled providers "in reckless disregard of its Federal and state regulatory obligation to NOT pay a 'provider,' regardless of whether the provider was the employee of Acumen or not, unless that provider had been enrolled with Wyoming Medicaid and had been subjected to the required risk-based screening." *Id.* As a consequence, Relator states that Acumen received $3,743,145 in reimbursement since 2010 "despite the fact that Acumen did not perform the services or comply with the highly material regulatory requirements and material conditions for payment" to providers. *Id.* ¶¶ 65–66. Nowhere does Relator identify a single ineligible provider that Acumen paid.

## II. STANDARD OF REVIEW

A typical FED. R. CIV. P. 12(b)(6) motion requires the Court to first analyze a complaint to determine whether it states a "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements," which are thereby not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). After setting aside any

---

[1] Relator explains that elderly, disabled, and chronically mentally ill persons who would usually be required to live in an institution can obtain a waiver to allow them to direct their "self-help care," which is a "service delivery mechanism . . . under which covered individuals select, direct, and manage their needed services and support . . . ." *Am. Compl.* ¶ 38 (emphasis removed).

conclusory statements, the Court must then determine whether the remaining "well-pleaded factual allegations" state a claim containing facial plausibility. *Id.*

But this is not a typical FED. R. CIV. P. 12(b)(6) motion; Relator's *Am. Compl.* asserts that Acumen violated the FCA. Claims based on the FCA must comply with the requirements of FED. R. CIV. P. 9(b). *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016). FED. R. CIV. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Claims falling within the ambit of FED. R. CIV. P. 9(b) must provide defendants with "fair notice" of those claims "and the factual ground upon which [they] are based." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). To meet the FED. R. CIV. P. 9(b) standard, the Tenth Circuit established that:

> [A] relator must provide details that identify particular false claims for payment that were submitted to the government. In a case such as this, details concerning [1] the dates of the claims, [2] the content of the forms or the bills submitted, [3] their identification numbers, [4] the amount of money charged to the government, [5] the particular goods and services for which the government was billed, [6] the individuals involved in the billing, [7] and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied for each allegation included in a complaint. However, like the Eleventh Circuit, we believe that some of this information, for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

4

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727–28 (10th Cir. 2006) (quoting *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232–33 (1st Cir. 2004)). Courts ought to remember that they should not blame relators for their "inability to obtain information within the defendant's exclusive control" when drafting pleadings that are to be scrutinized under these factors. *United States ex rel. Polukoff v. St. Mark's Hospital*, 895 F.3d 730, 745 (10th Cir. 2018) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016)). Still, relators must "show the specifics of a fraudulent scheme and provide an adequate basis for the reasonable inference that false claims were submitted as part of that scheme." *Lemmon*, 614 F.3d at 1172 (citations omitted). Furnishing a representative sample of the false claims a defendant submitted through such a scheme is one mechanism to provide the requisite specificity. *See United States ex rel. Lacy v. New Horizons, Inc.*, 348 F. App'x 421, 425 (10th Cir. 2009) (not reported) (discussing how the relator's failure to provide a "single instance of a particular false claim . . . that would be representative of the class described" indicated a lack of specificity) (citing *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)).

III. <u>DISCUSSION</u>

At issue is whether Relator's claims against Acumen satisfy the heightened pleading standard of FED. R. CIV. P. 9(b).

Relator contends that Acumen paid unenrolled providers with reckless disregard for a requirement that it not pay unenrolled providers.[2] Since Acumen was a fiscal intermediary and received fees for making these wrongful distributions, Acumen wrongfully received $3,743,145 from Wyoming Medicaid when it asked for funds on behalf of unenrolled providers.

These allegations satisfy the first ("the dates of the claims") and fourth ("the amount of money charged to the government") *Sikkenga* factors. However, these allegations say nothing about "the content of the forms or the bills submitted," "their identification numbers," "the individuals involved in the billing," or the "length of time between the alleged fraudulent practices and the submission of claims based on those practices," *i.e.*, the second, third, sixth, and seventh *Sikkenga* factors. Though Relator has noted that Acumen billed for self-directed services, Relator has not described exactly what type of self-directed services the unenrolled providers provided. Consequently, the Court finds that only two of the seven *Sikkenga* factors are present.

---

[2] Relator cites authorities explaining that Medicaid agencies have a duty to screen providers before they can pay providers Medicaid funds. *E.g.*, 42 CFR 455.410, 455.450; HEALTH MEDICAID Ch. 13 WYO. CODE R. §§ 4(a), 5(a). It does not appear that Relator cites either rules imposing screening duties upon Medicaid fiscal intermediaries or examples where the state Medicaid agencies delegated that that duty to a Medicaid fiscal intermediary.

Moreover, Relator has not identified a single unenrolled provider that Acumen paid, a single beneficiary of the unenrolled providers' services, or a representative sample of a false claim. Relator's response to that point is that he satisfied the "who, what, when, where, and how" test described in *Polukoff*, 895 F.3d at 745 (citing *Lemmon*, 614 F.3d at 1172). Under that test, a complaint that provides those elements is deemed to satisfy the FED. R. CIV. P. 9(b) standard. *Id.* Relator offers the ensuing "who, what, when, where, and how" analysis:

1. **Who?** Defendant Acumen, through its officers and agents in Wyoming, with head offices in Mesa, Arizona. (¶¶ 13-15)

2. **What?** Defendant Acumen directly paid the "self-directed care assistants" (i.e. providers) in reckless disregard of its Federal and state regulatory obligation to NOT pay a "provider," regardless of whether the provider was the employee of Acumen or not, unless that provider had been enrolled with Wyoming Medicaid and had been subjected to the required risk-based screening. The enrollment of all providers and their required screening are material requirements for receipt of Medicaid funds. Acumen submitted claims to Medicaid for such payments including its fee (profit) for performing such services. In doing so it expressly and impliedly falsely certified compliance with material requirements necessary to be entitled to such payment. (¶¶ 55-66, 85-90)

3. **When?** From not later than the date of initial agreement with Medicaid (2001) through the end of Acumen's agreement with Wyoming Medicaid as the fiscal agent for self-directed services. (¶¶ 13-15, 55-66)

4. **Where?** The premises and business locations of Defendant Acumen, in Wyoming, with head offices in Mesa, Arizona. (¶¶ 13-15)

5. **How?** As described in the Amended Complaint, Defendant Acumen directly paid the "self-directed care assistants" (i.e. providers) regardless of whether the provider was the employee of Acumen or not , ) in reckless disregard of its

> Federal and state regulatory obligation to NOT pay a "provider," unless that provider had been enrolled with Wyoming Medicaid and had been subjected to the required risk-based screening. Acumen submitted claims to Medicaid for such payments including its fee (profit) for performing such services, and retained millions of dollars in its profit or fees for performing services it never performed (¶¶ 55-66, 85-90) and for disbursements it was prohibited, by statute, regulation, and contract, from making.

*Mem. in Opp'n to Mo. to Dismiss* 6–8, ECF No. 38.

Relator's conclusory response demonstrates the necessity to read the "who, what, where, when, and how" test in conjunction with *Sikkenga's* demand for detail. *See, e.g., Lemmon*, 614 F.3d at 1171 (explaining that, in addition to the "who, what, when, where, and how," the Relator must provide "the time, place, content, and consequences of the fraudulent conduct.") (citing *Koch*, 203 F.3d at 1236)). Under Relator's theory, "Relator X" could charge "Defendant Y" under a similar scheme, and the following complaint would withstand a FED. R. CIV. P. 12(b)(6) motion:

1) **Who?** Defendant Y and its agents;
2) **What?** Defendant Y violated the FCA when it improperly retained administrative fees after it paid some unidentified person who it should not have paid;
3) **When?** At least as early as Defendant Y obtained the ability to pay these unidentified people through Medicaid;
4) **Where?** Where Defendant Y was located;
5) **How?** By performing the "what."

Relator's *Am. Compl.*, though masked with legal jargon, provides little more detail than this hypothetical. It does not name which employees or agents wrongly paid unenrolled

8

providers.[3] The *Am. Compl.* does not identify who were these unenrolled providers or name a single beneficiary of unenrolled providers' services. Further, the *Am. Compl.* does not explain how a fiscal intermediary has a duty to screen providers, it does not identify a specific date when Acumen paid an unenrolled provider, and it does not describe where the unenrolled providers provided their services. Finally, the *Am. Compl.* does not sufficiently explain how Acumen wrongfully received funds from Wyoming Medicaid because it does not identify a single false claim, provide a representative sample of claims submitted under the scheme, or describe the scheme with particularity. The *Am. Compl.* is wholly inadequate.

---

[3] While Relator correctly identifies that the Court cannot blame him for failing to include information in the *Am. Compl.* that was exclusively within Acumen's control, Relator does not describe what information he searched for and was unable to find because it was only within the control of Acumen.

IV. CONCLUSION

Complaints that are based on a violation of the FCA require particularity under FED. R. CIV. P. 9(b). A complaint that, among other things, proclaims that a fiscal intermediary paid unenrolled providers without identifying one such provider is anything but particularized. However, this deficiency, along with the others identified in the foregoing discussion, can possibly be cured through an amended pleading. For that reason, the Court finds that "granting leave to amend would [not] be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)). It is therefore

**ORDERED** that Acumen's *Mo. to Dismiss*, ECF No. 33, should be and is hereby **GRANTED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that Relator shall have until January 15, 2019, to file and serve a second amended complaint.

Dated this 7th day of December, 2018.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE