FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

IN THE UNITED STATES DISTRICT COURT 2018 DEC -7 PM 3: 53

FOR THE DISTRICT OF WYOMING

STEPHAN HARRIS, CLERK
CHEYENNE

UNITED STATES OF AMERICA,
EX REL. MARK GASKILL,

                Plaintiffs,

                VS.

NORTHWEST COMMUNITY ACTION
PROGRAM OF WYOMING, INC., and
ACUMEN FISCAL AGENT, LLC,

                Defendants.

Case No: 1:16-CV-00201-ABJ

---

## ORDER GRANTING DEFENDANT NOWCAP'S MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant Northwest Community Action Program of Wyoming, Inc.'s ("NOWCAP") *Mo. to Dismiss*, ECF No. 20. NOWCAP filed a *Mem. in Supp. of Mo. to Dismiss*, ECF No. 21, where it argued that Plaintiff-Relator, Mark Gaskill's ("Relator") *Am. Compl.*, ECF No. 16, should be dismissed because of the public disclosure bar and for its lack of particularization. Relator disputed NOWCAP'S arguments in his *Mem. in Opp'n to Mo. to Dismiss*, ECF No. 25, to which NOWCAP filed its *Reply to Mem. in Opp'n to Mo. to Dismiss*, ECF No. 26. On November 20, 2018, the Court held a hearing and heard the Parties' oral arguments. Having considered all the filings, the applicable law, and being otherwise fully advised, the Court FINDS and ORDERS as follows:

## I.   BACKGROUND[1]

Relator originally filed this action on July 15, 2016. *Am. Compl.* ¶ 52. The Court then sealed the case to give the United States time to investigate to determine whether it would bring charges against Dr. Condie. The United States then brought charges against Dr. Condie (who Relator later voluntarily dismissed from this current action), and Dr. Condie subsequently pled guilty to criminal healthcare fraud. *Id.* ¶ 50. The United States prosecuted Dr. Condie for the same conduct alleged in Relator's original complaint. *Id.* After Dr. Condie entered his guilty plea, the Court unsealed the case, which allowed Relator to bring the current action.

Relator argues that Dr. Condie and NOWCAP were involved in a kickback scheme. According to Relator, "prior to 2011, [NOWCAP and Condie] . . . entered into a service relationship under which Condie billed Wyoming Medicaid for services rendered by NOWCAP." *Id.* ¶ 53. Dr. Condie, through his business Big Horn Basin Mental Group, Inc. ("BHB"), later memorialized a so-called "Service Agreement." *Id.* ¶ 54. Under that written agreement, NOWCAP again performed services for BHB and Dr. Condie. *Id.* ¶ 55. BHB then billed Wyoming Medicaid for those services, thus representing that BHB and Dr. Condie were the true providers instead of NOWCAP. *Id.* For concealing NOWCAP's identity and referring patients to it, BHB and Condie received 50% of the profits arising

---

[1] The following facts are derived from the *Am. Compl.*, ECF No. 16. Where these facts are more than "mere conclusory statements," the Court will accept them as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

under this agreement. *Id.* ¶ 56. Also, Relator claims that NOWCAP referred certain individuals enrolled in its programs to BHB and Dr. Condie. *Id.* ¶¶ 56–57. Relator contends that this cross-referral agreement was profitable for NOWCAP, and that, in 2015, NOWCAP received $177,640 under the scheme. *Id.* ¶ 58. Further, NOWCAP's clientele increased from fifty "to over 300." *Id.* ¶ 53.

Relator discovered this kick-back scheme while investigating the propriety of Medicaid claims for the State of Wyoming. *Id.* ¶¶ 3, 52. Specifically, from July 1, 2015, through May 6, 2016, Relator was employed by the Wyoming Department of Health. *Id.* ¶ 7. Relator's official title was the Manager of Quality Assurance and Program Integrity for the Wyoming Department of Health, Division of Healthcare Financing, Program Integrity (Medicaid). *Id.* Relator's job required him to review claims and help Wyoming Medicaid recover funds that it had improperly paid. *See id.* ¶ 3. Relator contends that NOWCAP was the recipient of such improper payments, and now he seeks recovery on behalf of the United States.

## II.   STANDARD OF REVIEW

A typical FED. R. CIV. P. 12(b)(6) motion requires the Court to first analyze a complaint to determine whether it states a "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements," which are thereby not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. After setting aside any conclusory statements, the Court must then determine whether the remaining "well-pleaded factual allegations" state a claim containing facial plausibility. *Id.*

But this is not a typical FED. R. CIV. P. 12(b)(6) motion; Relator's *Am. Compl.* asserts that NOWCAP violated the False Claims Act ("FCA") through violation of the Anti-Kickback Statute ("AKS"). Claims based on the FCA must comply with the requirements of FED. R. CIV. P. 9(b). *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016). FED. R. CIV. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Claims falling under the ambit of FED. R. CIV. P. 9(b) must provide defendants with "fair notice" of those claims "and the factual ground upon which [they] are based." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (quoting *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000)). Relators must "show the specifics of a fraudulent scheme and provide an adequate basis for the reasonable inference that false claims were submitted as part of that scheme." *Id.* at 1172 (citations omitted).

### III.   DISCUSSION

**1) The Public Disclosure Bar**

The first question the Court must resolve is whether the public disclosure bar is an affirmative defense or if it still intertwines the merits of a case with a court's subject matter jurisdiction. *United States ex rel. Ramseyer v. Century Healthcare Corporation*, 90 F.3d 1514, 1518 (10th Cir. 1996). The statutory language of the public disclosure bar states:

> The court **shall dismiss** an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--

4

> (i) in a Federal criminal, civil, or administrative hearing
> in which the Government or its agent is a party;
> (ii) in a congressional, Government Accountability
> Office, or other Federal report, hearing, audit, or
> investigation; or
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the
> person bringing the action is an original source of the
> information.

31 U.S.C. § 3730(e)(4)(A)(i)–(iii) (emphasis added). The Patient Protection and Affordable

Care Act, Public L. No. 111–148, 124 Stat. 119, amended the public disclosure bar in 2010.

*United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1285 n.3 (10th Cir. 2010).

That amendment replaced the language "[n]o court shall have jurisdiction" with the current

language stating courts "shall dismiss" claims falling within the parameters of the public

disclosure bar. Susan Schneider Thomas & Jonathan Z. DeSantis, *Misguided Meanders: The*

*"Trail of Fraud" Under the Public Disclosure Bar of the False Claims Act*, 43 U. DAYTON L.

REV. 161, 199 n.9 (2018). Now, the public disclosure bar "is no longer jurisdictional, but it

remains a basis for dismissal . . . ." *Id.* at 199.

It appears that the Tenth Circuit has not yet had the opportunity to definitively

proclaim that the public disclosure bar is no longer jurisdictional in nature. *See United States*

*ex rel. Wickliffe v. EMC Corp.*, 473 F. App'x 849, 852 n.5 (10th Cir. 2012) (unpublished)

(declining to address whether the public disclosure bar was jurisdictional); *Bahrani*, 624 F.3d

at 1285 n.3 (stating that the amended public disclosure section did not apply in that case). A

district court in the Tenth Circuit, though, concluded "that, following the 2010 amendments,

§ 3730(e)(4) is no longer a jurisdictional bar." *United States ex rel. Reed v. Keypoint Gov't*

*Sols.*, No. 14-CV-00004-CMA, 2017 WL 6033682, at *2 (D. Colo. Sept. 28, 2017) (slip copy). It is apparent that many courts now treat the public disclosure bar as "an affirmative defense—rather than a jurisdictional bar." *United States ex rel. Harman v. Trinity Indus.*, No. 2:12–CV–00089–JRG, 2014 WL 47258, at *3 (E.D. Tex. Jan. 6, 2014). *Accord United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 810–11 (11th Cir. 2015); *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916–17 (4th Cir. 2013). Thus, the Court is persuaded that the public disclosure bar is an affirmative defense.

A defendant can present an affirmative defense in a Fed. R. Civ. P. 12(b)(6) motion. *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965). That said, "only when the 'plaintiff pleads itself out of court by admitting all of the ingredients of an impenetrable defense' may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Hubbard v. J Message Grp. Corp.*, 325 F. Supp. 3d 1198, 1210 (D.N.M. 2018) (quoting *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018)). It is therefore evident that the Court must first determine whether Relator otherwise stated a claim for relief before turning to the validity of NOWCAP's public disclosure bar argument.

### 2) The Anti-Kickback Statute

The *Am. Compl.* alleges that NOWCAP violated the AKS and the FCA. The AKS is tied to the FCA because "[a] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. §

1320a-7b(g).[2] Hence, if NOWCAP violated the AKS and a claim resulted from NOWCAP's violation, then NOWCAP is deemed to have also violated the FCA. The Court must therefore initially determine whether Relator has stated a claim for relief that NOWCAP contravened the AKS.

The *Am. Compl.* alleges that NOWCAP violated the following provision of the AKS:

> Whoever knowingly and willfully *offers or pays* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person--
>> (A) to refer an individual to a person *for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program*, or
>> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

42 U.S.C. § 1320a-7b(b)(2) (emphasis added). Relator does not claim that NOWCAP provided remuneration to Dr. Condie or BHB in return for their "purchase, lease, order, or arrang[ing] for or recommend[ing] [the] purchasing, leasing, or ordering [of] any good,

---

[2] It appears that the Tenth Circuit has not yet expressly adopted this proposition. *United States ex rel. Hanlon v. Columbine Mgmt. Servs., Inc.*, 676 F. App'x 787, 790 (10th Cir. 2017) (unpublished) (criticizing the relators for not pointing "to any specific provision" or "any case law that supports" an argument that the AKS and the FCA are intertwined). This Court is persuaded that 42 U.S.C. § 1320a-7b(g) is one such "specific provision" connecting AKS violations to the FCA. *See e.g.*, *United States v. Omnicare, Inc.*, 903 F.3d 78, 84 n.7 (3d Cir. 2018); *Fakorede v. Mid-S. Heart Ctr., P.C.*, 709 F. App'x 787, 790 (6th Cir. 2017) (unpublished); *United States v. Bozeman Health*, No. CV 15-80-BU-SEH, 2017 WL 514205, at *2 (D. Mont. Feb. 7, 2017) (not reported).

facility, service, or item for which payment" would be made "under a Federal health care program." Therefore, it appears that Relator's theory of liability is that NOWCAP provided remuneration to Dr. Condie and BHB in return for referrals.[3]

But simply providing any referral is not enough to create liability under § 1320a-7b(b)(2). For the referral to constitute a prohibited kickback, the plain language of the AKS requires the entity or person receiving the referral be associated with "furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." *See, e.g., id.; United States ex rel. Lacy v. New Horizons, Inc.*, 348 F. App'x 421, 428 (10th Cir. 2009) (unpublished) (describing how the AKS prohibits providing remuneration "in return for, among other things, referring individuals to facilities *funded by federal health care program*s.") (emphasis added); *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1223 (10th Cir. 2008) (explaining that the AKS "forbids any remuneration knowingly and willfully offered, paid, solicited, or received *in exchange for . . . Medicaid patient referrals*.") (quoting *United States v. LaHue*, 261 F.3d 993, 996 (10th Cir. 2001)) (internal quotation marks omitted) (emphasis added).

Here, Relator's complaint is silent on whether NOWCAP is "funded by federal health care programs" or whether Dr. Condie and BHB referred "Medicaid patient[s]." As a matter of fact, it appears that NOWCAP could not provide services "for which payment may be

[3] Although 42 U.S.C. § 1320a-7b(b)(1), which imposes liability on those who *receive* remuneration under a kick-back scheme, seems relevant in this case, Relator failed to cite this provision in the *Am. Compl.* and in his *Mem. in Opp'n to Mo. to Dismiss.* As a consequence, the Court will not consider it as a theory of NOWCAP's liability.

made . . . under a Federal health care program" because NOWCAP needed to use Dr. Condie

and BHB's "billing identity" to receive such a payment. *Am. Compl.* ¶ 56. Stated differently,

NOWCAP would not need to borrow a "billing identity" if its own identity was

independently adequate. It is incongruous that, in the same breath, Relator condemns

NOWCAP for concealing its identity to obtain Medicaid payments while at the same time

implying that NOWCAP never needed identity concealment in the first place.

When describing the "what" of NOWCAP's wrongful conduct, Relator states that:

> Defendant NOWCAP, in conjunction with Defendant Condie,
> entered into a contract pursuant to which patients were cross-
> referred to each other. The contract specifically delineated a fee-
> splitting relationship unrelated to actual services performed by
> each. Rather, it is (on the face of the contract) a pay-for referral
> (i.e. kickback) scheme. All claims for services arising from such
> a scheme are, statutorily, false claims. Actual claims were
> submitted to Medicaid arising out of this relationshi[p] and for
> which payments were made between the parties.

*Mem. in Opp'n to Mo. to Dismiss* 20–21, ECF No. 25. But because Relator has failed to

plead a violation of the AKS, he has also failed to plead a violation of the FCA. 42 U.S.C. §

1320a-7b(g). Accordingly, the Court must dismiss his complaint.

IV.   CONCLUSION

The Court finds that Relator has failed to state a claim for relief under FED. R. CIV. P. 12(b)(6). Specifically, Relator has not alleged, with particularity under FED. R. CIV. P. 9(b), how NOWCAP paid remuneration in exchange for individuals seeking services compensable "under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2). This failure rules out Relator's AKS and FCA theories of liability. *Id.*, § 1320a-7b(g). However, because the faults in Relator's *Am. Compl.* could possibly be remedied through an amendment, the Court finds that "granting leave to amend would [not] be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)). It is therefore

**ORDERED** that NOWCAP'S *Mo. to Dismiss*, ECF No. 21, should be and is hereby **GRANTED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that Relator shall have until January 15, 2019, to file and serve a second amended complaint.

Dated this ___7th___ day of December, 2018.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE