R. Michael Shickich
Law Offices of R. Michael Shickich, LLC
111 W. 2nd Street, Ste. 500
Casper WY 82601
Phone: 307-266-5297
Fax: 307-266-1261
E-mail: rms@injuryfirm.net

Robert D. Sherlock (admitted pro hac vice )
EISENBERG, GILCHRIST & CUTT
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone 801-366-9100
Fax 801-350-0065
rsherlock@egclegal.com
Attorney for Qui Tam Plaintiffs/Relators

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JAN 14  PM 4: 34

STEPHAN HARRIS. CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *EX REL.* MARK GASKILL **PLAINTIFFS,** Vs. **NORTHWEST COMMUNITY ACTION PROGRAM OF WYOMING, INC. AKA (NOWCAP);  ACUMEN FISCAL AGENT,** **Defendants.** | § § § § § § § § § § § § § § | **Civil Action No.** **16-cv-201J** **SECOND AMENDED COMPLAINT** **FALSE CLAIMS ACT, 31 USC 3729 et. seq.** **JURY TRIAL DEMANDED** |

**TABLE OF CONTENTS**

**I. INTRODUCTION** ……………………………………………………………………4

**II. JURISDICTION & VENUE** ……………………………………………………......5

**III. PARTIES** ………………………………………………………………………..5

    A. RELATORS ……………………..………………………………………….....5

    B. DEFENDANTS ……………………..………………………………………….6

    C. CURRENT CASE STATUS RE: DEFENDANT GIBSON CONDIE

**IV. FEDERAL STATUTES AND REGULATIONS APPLICABLE**
    **TO DEFENDANTS' FALSE CLAIMS ACT VIOLATIONS** ………………....7

    A. THE FEDERAL FALSE CLAIMS ACT ……………………………………….7

    B. THE ANTI-KICKBACK STATUTE ……………………..…………………….8

**V. FEDERAL GOVERNMENT HEALTH CARE PROGRAMS: WYOMING**
    **MEDICAID**……………………..………………………....................................10

    A. FEDERAL MEDICAL ASSISTANCE:….........................................................11

    B. WAIVERS AND DEMONSTRATION PROJECTS: ……………………………. 13

    C. SELF-DIRECTED SERVICES …………………………………………….....14

**VI. MANDATORY AND MATERIAL REQUIREMENTS FOR WYOMING**
    **MEDICAID PROVIDERS** …………………………………………………...15

    A. ENROLLMENT AND SCREENING OF PROVIDERS ……………....………....15

    B. RISK-BASED PROVIDER SCREENING ………………………………….…16

    C. CLAIMS ARISING FROM A VIOLATION OF THE ANTI-KICKBACK

        STATUTE ARE NOT COVERED SERVICES ………………………………… 18

**VII. DEFENDANTS' SCHEMES TO KNOWINGLY AND**
    **INTENTIONALLY DEFRAUD WYOMING MEDICAID**……….……18

A. DEFENDANTS BIG HORN BASIN MENTAL HEALTH
   GROUP, INC., AND DR. GIBSON CONDIE, PH.D. … … … … … … … …..…18
B. DEFENDANT NOWCAP ENTERED INTO A KICKBACK ARRANGEMENT
   WITH DEFENDANT BHB AND DEFENDANT CONDIE … … … … … … … …19
C. DEFENDANT ACUMEN KNOWINGLY DISREGARDED MATERIAL
   FEDERAL AND WYOMING PROVIDER ENROLLMENT REQUIREMENTS….….21

VIII. CLAIMS FOR RELIEF … … … … … … … … … … … … … … … … …...24
   FIRST CLAIM FOR RELIEF … … … … … … … … … … … … … … … …...23
   SECOND CLAIM FOR RELIEF … … … … … … … … … … … … … …....25

IX. PRAYER FOR RELIEF … … … … … …..… … … … … … … … … … …...…..26

X. DEMAND FOR TRIAL BY JURY…..… …...… … … … … … …..… … … …....27

## I. INTRODUCTION

1. On behalf of the United States of America pursuant to the qui tam provisions of the Federal False Claims Act, 31 U.S.C. § 3729 et seq., Plaintiff/Relator Mark Gaskill files this qui tam Complaint against Defendants for false and fraudulent claims, material failures to perform Medicaid and Medicare regulatory requirements, and receiving government contracts and funds on the basis of false certifications of compliance with these same requirements and regulations. Relators seek treble damages, and civil penalties arising from Defendants' conduct described herein, as well as all relief statutorily available due to the retaliation against Relator as set forth in 31 U.S. Code 3730(h).

2. This action concerns improper and unlawful submission of legally and factually false claims, claims based upon false records and statements, conspiracy to submit false claims causing the State of Wyoming to submit false certification to the Federal Government to obtain Federal Financial Participation funds, and express and implied certifications, all made by Defendants, in order to, *inter alia*, conceal and misrepresent to Medicaid authorities and the Federal government the Defendants' fraudulent and knowingly false claims to Wyoming Medicaid in violation of 31 U.S.C. § 3729(a).

3. Relator discovered these violations in the course of his work as the Manager of Program Integrity for Wyoming Medicaid. He conducted his own investigation in furtherance of a False Claims Act qui tam action. He brings this action on behalf of the

United States to recover damages for the false claims that have been and continue to be submitted.

## II. JURISDICTION AND VENUE

4. This action is brought on behalf of the United States Government under 31 U.S.C. § 3729, *et seq.*, commonly known as the False Claims Act ("FCA"). Relators bring this action under 31 U.S.C. § 3730(b) to recover for false claims which Defendants knowingly submitted , conspired to submit or caused to be submitted, and false records in connection with false claims that were made, used, or caused to be made or used in violation of 31 U.S.C. § 3729.

5. This Court has jurisdiction over such FCA claims pursuant to 31 U.S.C. § 3730(b), 31 U.S.C. § 3732(a), and 28 U.S.C.  § 1331.

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because the Defendants can be found in this district and the conduct described herein occurred in this district.

## III. PARTIES

### A. RELATOR

7. Plaintiff/ Relator Mark Gaskill is a resident of Wyoming.  From 1981 to 1987 he served as a Hospital Corpsman with the United States Navy. He holds a Bachelor's Degree in Psychology from Old Dominion University (1987) and a Master's Degree in Family Therapy from Drexel University (1994). He was previously employed at the Utah Medicaid Office of the Inspector General (OIG), in Salt Lake City, Utah, as the Manager of Data

Analytics.  From July 1, 2015 through May 6, 2016, Relator was employed by the State of

Wyoming as the Manager of Quality Assurance and Program Integrity for the Wyoming

Department of Health, Division of Healthcare Financing, Program Integrity (Medicaid), i.e.,

Wyoming Medicaid.

8. Relator has direct and independent knowledge regarding the matters set forth

herein. In particular, Relator has direct and independent knowledge regarding Defendants'

conduct and practices as described in this Complaint and all related matters as alleged herein.

**B. DEFENDANTS**

12. Defendant Northwest Community Action Program of Wyoming, Inc. (hereinafter

"NOWCAP"), also known as Northwest Wyoming Community Action Program  Inc., is a

Wyoming corporation. It is a community action corporation (non-governmental "agency").

NOWCAP operates NOWCAP Services, a program for persons with developmental

disabilities. NOWCAP Services provides services to people with developmental disabilities

and brain injuries throughout Wyoming and currently has offices in Casper, Cody, Worland

and Rock Springs.

13. Defendant Acumen Fiscal Agent LLC is a Utah Limited Liability Company with a

principal place of business in Mesa, Arizona. It provides Fiscal Agent services to Medicaid

programs and other public benefit programs in at least 18 states. During all times relevant to

this Complaint, defendant Acumen was registered as a foreign limited liability company in

the State of Wyoming. It performed services as a "Fiscal Employer Agent" under for

Wyoming Medicaid, handling home and community based self-directed care funds.

14. However, at all times Acumen was functioning as a "provider" under a Provider Agreement with Wyoming Medicaid. The LLC Managing Member, Laurel, Jensen and Von LLC (an Arizona LLC) also operates Hire My Care (www.hiremycare.org), which functioned and continues to function as a placement service for caregivers seeking placement in a home-care situation under these programs, and vice-versa. It also functions as a commercial portal for other entities to actively market products and services to homebound seniors or others using Acumen. In addition, the entities share or shared the same executive management, Gerald Nebeker, Ph.D., as CEO at all times relevant to this matter.

## IV. FEDERAL STATUTES AND REGULATIONS APPLICABLE TO DEFENDANTS' FALSE CLAIMS ACT VIOLATIONS

### A. THE FEDERAL FALSE CLAIMS ACT

17. Pursuant to the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(A) *et seq.*, a cause of action arises when any person knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval or creates a false record or statement to decrease an obligation to transmit money owed to the United States Government.

18. As defined under 31 U.S.C. §3729(b)(1), "knowing" and "knowingly" means: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. No proof of specific intent to defraud is necessary.

19. The False Claims Act further provides that the relator shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The

amount is not less than 15% and not more than 25% of the proceeds of the action if the

Government intervenes in the case, or not less than 25% nor more than 30% if the

Government does not intervene. The relator shall also receive an amount for reasonable

expenses, attorney's fees and costs. All such expenses, fees and costs shall be awarded

against the Defendants.

## B. THE ANTI-KICKBACK STATUTE

20. The Medicare and Medicaid Patient Protection Act, also known as the Anti-

Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b), was enacted in 1972 and amended in

1977 to prohibit receiving or paying "any remuneration" to induce referrals. In addition to

criminal penalties, a violation of the AKS can subject the perpetrator to exclusion from

participation in Federal Health Care Programs, 42 U.S.C. § 1320a-7(b)(7), as well as civil

monetary penalties of $50,000 per violation, 42 U.S.C. § 1320a-7a(a)(7), and three times the

amount of remuneration paid, regardless of whether any part of the remuneration is for a

legitimate purpose, 42 U.S.C. § 1320a-7a(a).

21. The AKS prohibits any person or entity from knowingly and willfully offering to

pay or paying any remuneration to another person to induce that person to purchase, lease,

order, or arrange for or recommend purchasing, leasing, or ordering any good, facility,

service, or item for which payment may be made in whole or in part under a Federal Health

Care Program. This includes any State health program or health program funded in part by

the federal government. 42 U.S.C. §§ 1320a-7b(b), 1320a-7b(f). The statute provides, in

pertinent part:

1) Whoever knowingly and willfully *solicits or receives any remuneration* (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.  42 U.S.C. § 1320a-7b(b).

22.   Likewise, the AKS runs in the other direction as well, prohibiting any person from receiving anything of value in return in for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.  The statute also provides, in pertinent part:

> (2) Whoever knowingly and willfully **offers or pays any remuneration** (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

> > (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

> (B) to purchase, lease, order, or arrange for or recommend
> purchasing, leasing, or ordering any good, facility, service, or
> item for which payment may be made in whole or in part
> under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined
> not more than $25,000 or imprisoned for not more than five years, or
> both

23. In the Patient Protection and Affordable Care Act (PPACA) the AKS was amended to explicitly state that "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act ("PPACA"), Pub.L. No. 111-148, 124 Stat. 119 § 6402(f) (2010) (codified as amended at 42 U.S.C. § 1320a-7b(g)).

24. "Kickbacks" are broadly defined to include payments, gratuities, and other benefits provided to physicians. For purposes of the AKS the term "remuneration" includes the transfer of *anything of value*, directly or indirectly, overtly or covertly, in cash or in kind.

25. Compliance with the AKS is a precondition to participation as a health care provider under federally-funded healthcare programs including but not limited to state Medicaid programs. In addition, compliance with the AKS is a condition of payment for claims for which Medicare or Medicaid reimbursement is sought by medical providers.

### V. FEDERAL GOVERNMENT HEALTH CARE PROGRAMS: WYOMING MEDICAID

26. Medicaid was established by Title XIX of the Social Security Act of 1965, 42 U.S.C. §1396-1396v. Medicaid is a jointly funded federal-state program and enables states

to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary medical services. Funding for Medicaid is shared between the Federal Government and those state governments that choose to participate in the program, in accordance with Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*.

27. Medicaid providers must comply with both state and federal rules and regulations that are applicable to such organizations under federal law, the state's Medicaid plan (as approved by the Department of Health and Human Services), and any federal waivers granted to the state, 42 CFR §438.602.

## A. Federal Medical Assistance

28. The Federal Government pays a portion of Medicaid costs through the Federal Medical Assistance Percentage (FMAP). In Wyoming, the Federal government, from FY 2011 to present, paid for approximately 50 % of all Medicaid health care services in Wyoming. The State of Wyoming funds the remaining percentage.

29. The Federal government pays each state for this portion of the Medicaid program through quarterly grants. To receive Federal Medicaid managed care grants each state submits a quarterly estimate to the United States for estimated costs, including an estimate for services. The quarterly estimate is submitted on a Form CMS 37, which includes a certification that:

> . . . budget estimates only include expenditures . . . that are allowable in accordance with the applicable federal, state, and local statutes, regulations, policies, and the state plan approved by the Secretary and in effect during the fiscal year under  Title XIX of the Act for the Medicaid Program.

30. The United States uses the estimate in the CMS 37 to make grant awards for that quarter. The award authorizes the state to draw federal funds as needed through a line of credit.

31. At the end of each quarter, the state submits its quarterly expenditure report, Form CMS 64, which details each state's actual expenditures. The form must be executed and certified by the executive officer of the state agency or his/her designee. The reconciled payments to providers for covered services to eligible beneficiaries are included in Form CMS 64, which includes the same certification as in the CMS 37:

> This report only includes expenditures under the Medicaid program . . . that are allowable in accordance with applicable implementing federal, state, and local statutes, regulations, policies, and the state plan approved by the Secretary and in effect during the Quarter . . . .

32. Medicaid programs, constitute "Federal Health Care Programs" as defined in 42 U.S.C. § 1320a-7b(b).

33. Expenditures or payments under the Medicaid program that are made pursuant to a kickback induced scheme are not allowable and not reimbursable under applicable implementing federal and state statutes and regulations. Expenditures or payments under the Medicaid program that are made in violation of material Medicare conditions of payment, participation, or other requirements are excluded from coverage and are not reimbursable under applicable implementing federal and state statutes and regulations.

## B. WAIVERS AND DEMONSTRATION PROJECTS

34. Pursuant to Section 1915 (c) of the Social Security Act, 42 U.S.C. 1396n , a state may with the approval of HHS, obtain waivers of certain required elements and experiment with other delivery methods. The 1915(c) waivers are one of many options available to states to allow the provision of long term care services in home and community based settings under the Medicaid Program.

35. Wyoming currently has approval from HHS for a Section 1915(c) waiver for Home and Community based (HCBS) services. HCBS services are those services provided under waiver that would not be otherwise available under the Wyoming Medicaid state plan. Such services enable the elderly, disabled, and chronically mentally ill persons who would otherwise be placed in an institution to live in the community.

36. In addition to these "homebound" services, the state of Wyoming has a §1915(c) waiver to provide a range of services to children and adults with developmental disabilities and intellectual disabilities. Some comprehensive waiver beneficiaries may include some behavioral support services as well. Providers billing state Medicaid for this range of services bill services as "waiver" services.

37. However some beneficiaries receiving services may also qualify for non-waiver services (such as medical and mental health) under Wyoming Medicaid. These services would be billed as non-waiver services. Waiver services are subject to limitations on frequency, intensity, etc., pursuant to their plan of care and regulatory limitations.

## C. SELF-DIRECTED SERVICES

38. The §1915(c) (HCBS) Waiver in Wyoming also includes home-based "self-directed services." Self-direction is only a *service delivery mechanism* within the HCBS waiver program under which  covered individuals select, direct, and manage their needed services and support, after and only to the extent it is identified in an individualized service plan and budget plan. Additionally, in Wyoming a Fiscal Agent serves as an intermediary, performing the services usually performed by the employer with respect to the employee and in turn receiving an administrative fee for assuring all payroll and regulatory requirements incumbent on a Medicaid provider are fulfilled. During all times relevant to this Complaint, defendant Acumen served as this "fiscal intermediary." Such services were rendered pursuant to a Provider Agreement with Wyoming Medicaid.

The services as a Fiscal Intermediary are a separate line of services from those provided by the "self-directed" providers. As Fiscal Intermediary, Acumen was paid a fixed sum to perform "Financial Management" services for the Medicaid beneficiary. That amount, billed to Wyoming Medicaid with a "Procedure Code" of T2040 (as distinct from the in-home services themselves, Code T2041 – "Supports Brokerage – 15 minutes"). It was billed on behalf of Acumen itself, not a beneficiary, under Pay-To Provider number 116315900 , which is Acumen.  In short, these services, in the amount of $129.44 per month for each beneficiary were billed irrespective of the amount of actual home services billed for that beneficiary.  The services were to assure not only that the home care provider was paid, but that the state's fisc was properly protected.

14

## VI. MANDATORY AND MATERIAL REQUIREMENTS
## FOR WYOMING MEDICAID PROVIDERS

### A. ENROLLMENT AND RISK-BASED SCREENING OF PROVIDERS

39. Federal and Wyoming Medicaid regulations require each individual provider

rendering services to Wyoming Medicaid recipients (other than in an emergency, or other

limited circumstances) to have formally enrolled with Wyoming Medicaid.

> 42 CFR 455.410 - Enrollment and screening of providers.
> (a) The State Medicaid agency must require all enrolled providers to be
> screened under this subpart.
> (b) The State Medicaid agency must require all ordering or referring
> physicians or other professionals providing services under the State plan or
> under a waiver of the plan to be enrolled as participating providers. . .[1]

40. Any person rendering Medicaid-compensated services to a beneficiary is a

"provider":

> "Provider means any individual or entity furnishing Medicaid services
> under a provider agreement with the Medicaid agency";
>
> 42 CFR 1000.30

> (a) Payments only to providers. No person or entity that provides
> services to a recipient shall receive Medicaid funds unless the person or entity
> is a party to a fully executed provider agreement and is enrolled.

---

[1] See also 42 CFR 1000.30. Wyoming Medicaid Rules, Chapter 13, § 5(a) (2002);
Wyoming Medicaid Rules, Chapter 13, § 4(a) (2015); Wyoming Medicaid Rules, Chapter
26, Sections 7 (a) and (b) (2006); Medicaid Provider Participation Agreement, paragraphs
5.A and H; Provider Enrollment Certification 6; CMS-1500 Manual, 3.1; and Medicaid
Bulletin, effective 12/1/12, Supervising Physicians and Psychologists Billing Wyoming
Medicaid.

(b)  Enrollment as provider.  An individual or entity which wishes to participate in the Medicaid program shall apply to be a provider on the forms specified by the Division.

Wyoming Medicaid Rules, Chapter 3, §§ 4 (a) and (b) (1998)

41. All treating providers must be enrolled with Wyoming Medicaid both at the time of an initial treatment and during the course of treatment. Medicaid payment is made only to providers who are actively enrolled in the Medicaid Program. 42 CFR 455.410(b). The State Medicaid agency requires all ordering or referring physicians or other persons providing services under the State plan or under a waiver of the plan, to be enrolled as participating providers.

## B. RISK-BASED PROVIDER SCREENING

42. Since 2011, CMS has required state Medicaid agencies to perform risk-based screening on all Medicare and Medicaid providers. As outlined in the preamble to the final rule, 76 Fed. Reg. at 5895-5896 (February 2, 2011), physicians and non-physician practitioners, medical groups, and clinics that are state-licensed would generally be categorized as "limited" risk. Provider types that are highly dependent on Medicare, Medicaid and CHIP to pay salaries and other operating expenses and are not subject to additional governmental or professional oversight would be considered "moderate" risk. Those identified as being especially vulnerable to improper payments would be considered "high" risk. 42 CFR 455.410(a) provides that a state Medicaid agency must require all enrolled providers to be screened according to the provisions of Part 455 subpart E.

43. Under 42 CFR 455.450, a state Medicaid agency is required to screen all applications, including initial applications, applications for a new practice location, and applications for re-enrollment or revalidation, based on a categorical risk level of "limited," "moderate," or "high."   When the State Medicaid agency designates a provider as a moderate categorical risk, the State Medicaid agency must do all of the following:

(a) Verify that a provider meets any applicable Federal regulations, or State requirements for the provider type prior to making an enrollment determination.

(b) Conduct license verifications, including State licensure verifications in States other than where the provider is enrolling, in accordance with § 455.412.

(c) Conduct database checks on a pre- and post-enrollment basis to ensure that providers continue to meet the enrollment criteria for their provider type, in accordance with § 455.436.

(d) Conduct on-site visits in accordance with § 455.432.

44. Acumen and the home-care providers either employed by it,  placed by it, or for whom it is performing Fiscal Agent services (on behalf of a beneficiary)  are highly dependent on Medicaid to pay salaries and other operating expenses and are not subject to additional governmental or professional oversight. They are "moderate" risk providers and entities, although some may be "high" risk.

45. Essential to the basic ability of the State of Wyoming to perform this screening was for the State of Wyoming to know *who was performing services to or on behalf of its beneficiaries.*  Enrollment was, by regulation as well as logic, the touchstone of that process.

**C. CLAIMS ARISING FROM A VIOLATION OF THE ANTI-KICKBACK STATUE ARE NOT COVERED SERVICES:**

45. Services that arise from a kickback scheme are not covered services and are false claims for purposes of the False Claims Act. 42 U.S.C. § 1320a-7b(g)). Including any such services and reporting the same on claim forms constitutes false claims, and false records underlying a claim, as well as and express false certifications.

## VII. DEFENDANTS' SCHEMES TO KNOWINGLY AND INTENTIONALLY DEFRAUD WYOMING MEDICAID

**A. BIG HORN BASIN MENTAL HEALTH GROUP, INC., ("BHB"), AND DR. GIBSON CONDIE, PH.D.**

46. Beginning in approximately 2001 or earlier, Gibson Condie created, facilitated, and structured a scheme to knowingly and intentionally submit false claims to the Wyoming Department of Health for services purportedly rendered to Wyoming Medicaid beneficiaries. These claims were submitted to Wyoming Medicaid and include funds received pursuant to a Federal Health Care program and include federal funding.

49. Each such claim was false at the time it was submitted and was knowingly and intentionally false, or was submitted in reckless disregard of repeated and explicit requirements barring the receipt of Wyoming Medicaid money by a provider not control with Wyoming Medicaid.

50. On October 27, 2017, Condie entered a guilty plea to healthcare fraud (18 U.S. Code §1347) in a criminal prosecution arising out of the same conduct as alleged in the

Complaint and this Amended Complaint. Defendant was sentenced to imprisonment for 36 months and payment of restitution to the United States and the State of Wyoming in the amount of $2,283,702.49.

## B. DEFENDANT NOWCAP ENTERED INTO A KICKBACK ARRANGEMENT WITH BHB AND CONDIE

53. Beginning not later than 2011, Defendant NOWCAP and former defendant Condie (purportedly on behalf of Defendant BHB) entered into a service relationship under which Condie billed Wyoming Medicaid for certain services actually rendered by NOWCAP. These services included but were not limited to psychosocial rehab and other community based services. Starting in approximately May, 2013, the volume of these clients increased from 50 to over 300.

54. Subsequently, beginning in 2014, BHB, by and through Defendant Condie, entered into a written "Service Agreement" with Defendant NOWCAP. Under this agreement, in which BHB was the "Company" and Defendant NOWCAP was the "Contractor," the "Contractor" [NOWCAP] was engaged to "perform certain professional services" for the Company [BHB]:

> **Description of Services**. Beginning on December 1, 2014, the company and contractor will commence business under this agreement (collectively referred to as "Services"). The services provided by the contractor shall be bona fide Services as defined under the Wyoming Title 19 Medicaid program.
>
> The contractor will perform all services in strict accordance with all applicable rules, regulations, standards, best practices and expressed specific expectations of the Company.

>**Payment for Services.** In exchange for the Services performed by the
>Contractor, the Company will pay the Contractor one-half (50%) of all services
>billed to the Wyoming Title 19 Medicaid program with no retainage or
>reduction of payment being withheld by the Company for Services not paid by
>Wyoming Title 19 Medicaid.

For the services under this kickback scheme, BHB billed as if it was the treating provider.

This was necessary because NOWCAP could not, on its own, with the providers it had, and

as a psychosocial rehabilitation and community-based services agency, render and bill for

the codes (e.g. clinical assessments) with the providers it had on staff. Nonetheless, Relator

is informed and believes it DID purport to render these services; by billing "through" BHB

and the scheme, it could receive payment for services it was not permitted or qualified to

perform and bill.

55. Pursuant to this agreement, Defendant NOWCAP was rendering services as

defined under the Wyoming Title 19 Medicaid program "for and on behalf of" Defendants

BHB and Condie. Defendant BHB billed these services under the BHB billing and rendering

identity, thus deliberately hiding and fraudulently representing the true identity of the

providers actually serving vulnerable, developmentally disabled Wyoming Medicaid

recipients.

56. For this "service," Defendants BHB and Condie received a 50% "cut" of the

billing, an amount that bore no relationship to the actual cost of billing services or any other

factor reasonably related to any service BHB or Condie did or could have rendered. Rather,

the payment of the 50% "cut" to BHB was for the cross referral of patients and use of the

billing identity that effectively and fraudulently misrepresented to the State of Wyoming who was providing services or what the services actually were. This scheme amounted to a well-developed kickback scheme and conspiracy to submit fraudulent claims to the State of Wyoming for payment under a Federal Health Care Program.

57. Relator is informed and believes that Condie, in addition to providing billing services to NOWCAP for certain Medicaid reimbursable mental health, psychosocial rehabilitation, and community-based services, also referred developmentally disabled persons to NOWCAP for NOWCAP services. Likewise, NOWCAP referred, on a reciprocal basis, enrollees of NOWCAP programs to Defendants BHB and Condie for separately reimbursable services.

58. During the calendar year 2015 alone, Defendant BHB paid $177,640 to NOWCAP pursuant to this scheme. Under the contract, this represents at least 50% of the amount billed by BHB and Condie for such services.

## C. DEFENDANT ACUMEN KNOWINGLY DISREGARDED MATERIAL FEDERAL AND WYOMING PROVIDER ENROLLMENT REQUIREMENTS

59. Wyoming Medicaid beneficiaries receiving waiver-covered home and community based support services as self-directed support also receive "Fiscal Employer Agent Financial Management Services (FMS)". The FMS portion of self-directed waiver services supports the beneficiary by handling some of their responsibilities as an employer, including but not necessarily limited to managing funds for goods and services, and handling payroll and employer-related taxes and insurance. Acumen is a Wyoming Medicaid enrolled

provider. It acts as a fiduciary agent (intermediary) for Wyoming Medicaid and directly distributes Wyoming Medicaid funds (including FFP funds) to self-help providers.

60. Defendant Acumen directly paid the "self-directed care assistants" (i.e., providers) in reckless disregard of its Federal and state regulatory obligation to NOT pay a "provider," regardless of whether the provider was the employee of Acumen or not, unless that provider had been enrolled with Wyoming Medicaid and had been subjected to the required risk-based screening .

61. The enrollment of all providers and their required screening are highly material requirements for receipt of Medicaid funds. Through these mechanisms, the State of Wyoming can exercise necessary authority over the self-help assistant, assure that vulnerable elderly adults for whom these services are provided are not abused or victimized, and assure that providers with criminal or undesirable backgrounds are not placed in close proximity to these vulnerable beneficiaries.

63. As a result, the State of Wyoming and Wyoming Medicaid had no knowledge or record of the identity of the provider actually rendering services to the vulnerable homebound and other beneficiaries, no opportunity to assess the level of background screening required to be applied to each such individual.

63. From July 2010 through December 2015, Acumen paid to such unenrolled provider some 235, 914 claims totaling $24,740,463. All such claims were prohibited payments under material Wyoming and Federal Medicaid regulation, including but not limited to the Provider Enrollment Agreements under which Acumen provided such services.

64. Each such claim by Acumen to Wyoming Medicaid was false at the time it was submitted and was knowingly and intentionally false, or was submitted in reckless disregard of repeated and explicit highly material requirements barring the receipt of Wyoming Medicaid funds by a provider not enrolled with Wyoming Medicaid.

65. In knowing and reckless disregard of these enrollment requirements, Defendant Acumen accepted reimbursement claims from unenrolled providers and paid those claims to such individuals. In turn, Acumen billed and received payment from Wyoming Medicaid, including its Administrative Fees despite the fact that Acumen did not perform the services or comply with the highly material regulatory requirements and material conditions for payment to the providers and for receipt of its administrative fee.

66. Since July 2010 through the date of the original Complaint in this matter, Defendant Acumen received from the State of Wyoming not less than $3,456,695 as its financial management fee without performing the services (e.g. assuring enrollment of those persons to whom it was paying -- directly – Wyoming Medicaid funds).

### VIII. CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF – 31 U.S.C. § 3729(A)(1)(A)
### (Against NOWCAP)

80. Relators incorporate by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

81. Defendant NOWCAP and former defendant Condie knowingly, in reckless disregard and/or in deliberate ignorance of the truth, conspired between themselves to

present and/or cause to be presented false and fraudulent claims for payment and approval

for services delivered or purported to be delivered to patients insured by federally-funded

health insurance programs. These included factually false and fraudulent claims as detailed

herein, claims for services derived from violations of the Anti-kickback laws, and claims for

reimbursement or funds based upon payments and records that were knowingly and

deliberately false or were made in reckless disregard or deliberate ignorance of whether they

were true or false. These included, but were not limited to, express and implied certifications

that the services were medically necessary, cost effective,  delivered by properly enrolled

and screened providers, correctly represented on the submitted claims, supported by clinical

documentation, rendered as represented, otherwise covered under the Medicaid program and

delivered in compliance with applicable regulations.

82. Wyoming Medicaid, in reliance on the accuracy of these claims and statements,

continued payments to Defendants.

83. All of the representations and certifications both express and implied, and other

similar documents made or provided with respect to each funding request to Wyoming

Medicaid had a natural tendency to influence the decision whether to pay the claim and were

material to the payment of the claim.

84. As a result of the conspiracy, Defendants caused Wyoming Medicaid to incur

significant damage and those damages are continuing to accrue.

## SECOND CLAIM FOR RELIEF – 31 U.S.C. 3729(a)(1)(A)
### (Against Defendant ACUMEN)

85. Relator incorporates by reference all preceding paragraphs of this Complaint as though the same were set forth herein at length.

86. Defendant ACUMEN  knowingly, in reckless disregard and/or in deliberate ignorance of the truth, made, used and/or caused to be made or used, false records and statements material to a false and fraudulent claim to obtain approval and payment from the Government when they submitted claims for funds to Wyoming Medicaid.

87. By submitting claims for payment ACUMEN represented to Wyoming Medicaid that the HCBS Self-Directed services (for which ACUMEN was the fiscal fiduciary for the Medicaid Beneficiary) were provided in compliance with material Wyoming and Federal regulations and requirements. These requirements, including but not limited to enrollment of ALL providers, are designed to assure the qualifications of such persons and protection of vulnerable patients through appropriate risk-based assessment or screening (as part of enrollment).  In addition, ACUMEN represented that its own claims for its monthly fee were truthful, i.e., that it had fulfilled the material requirements of its contract and that it had not failed to perform any material elements of its contract, upon which its entitlement to payment was dependent.

88. Wyoming Medicaid, in reliance on the accuracy of these claims and statements, paid for these services and the administrative fee to ACUMEN.

89. All of the representations and certifications both express and implied, contained with respect to each bill to Wyoming Medicaid had a natural tendency to influence their decision whether to pay the claim and were material to the payment of the claim.

90. As a result of these false and fraudulent records and statements, Defendants caused Wyoming Medicaid and the other government payors to incur significant damage and those damages are continuing to accrue.

## IX. PRAYER FOR RELIEF

95. WHEREFORE, Plaintiff/Relator, acting on behalf of and in the name of the United States, demands and prays that judgment be entered in favor of the United States against each Defendant, jointly and severally, as follows:

> A. The amount of the United States' damages in an amount to be proven at trial, including but not limited to the full amount paid to any defendant under each contract obtained by fraud;
>
> B. Treble the amount of the United States' damages to be proven at trial;
>
> C. Civil penalties in the maximum amount allowed by the False Claims Act, for each false claim submitted,
>
> D. Reasonable costs and attorney's fees;
>
> E. The maximum allowed to Relators under 31 U.S.C. § 3730(d);
>
> G. Trial by jury as to the allegations against each Defendant; and
>
> H. Such other and further relief as this Court deems to be just and proper.

## X. DEMAND FOR TRIAL BY JURY

96. Pursuant to Rule 38, Federal Rules of Civil Procedure, a jury trial is demanded.

Dated: January 14, 2019

Respectfully submitted,

By:_____

_____
Robert D. Sherlock (Utah Bar No. 02942)
(*admitted pro hac vice* )
**EISENBERG, GILCHRIST & CUTT**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
rsherlock@egclegal.com

By:_____
R. Michael Shickich
**Law Offices of R. Michael Shickich, LLC**
111 W. 2nd Street, Ste. 500
Casper WY 82601
Phone: 307-266-5297
Fax: 307-266-1261
E-mail: rms@injuryfirm.net