R. Michael Shickich
Law Offices of R. Michael Shickich, LLC
111 W. 2nd Street, Ste. 500
Casper WY 82601
Phone: 307-266-5297
Fax: 307-266-1261
E-mail: rms@injuryfirm.net

Robert D. Sherlock (*admitted pro hac vice*)
rsherlock@egclegal.com
EISENBERG, CUTT, KENDELL & OLSEN
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone 801-366-9100
Fax 801-350-0065
Attorney for Qui Tam Plaintiff/Relator

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel*. MARK GASKILL<br>                              Plaintiffs,<br>vs.<br><br>NORTHWEST COMMUNITY ACTION PROGRAM<br>OF WYOMING INC.<br><br>                              Defendant.<br><br><br>*[Note Corrected Caption]* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.<br><br>16-cv-201J<br><br><br>MEMORANDUM IN<br>OPPOSITION TO MOTION TO<br>DISMISS SECOND AMENDED<br>COMPLAINT |

# I.

# INTRODUCTION

This action concerns the knowing and intentional submission of false claims based upon false records, claims for services directly arising out of an arrangement in violation of the Antikickback Statute, and conspiracy to violate the False Claims Act by Defendant Northwest Community Action Program Of Wyoming, Inc. (aka NOWCAP). The Second Amended Complaint alleges that, as part of its relationship with former defendant Condie [now convicted of health care fraud for a nearly identical scheme with others], defendant NOWCAP entered into a fee-splitting written agreement that on its face violates the Anti-Kickback Statute, and conspired with Condie and Big Horn Basin Mental Health to submit false claims to Wyoming Medicaid. All those claims are, statutorily, false claims. 42 U.S.C. § 1320a-7b(g)) specifically states that "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]."

In addition, the Second Amended Complaint alleges that these two parties – NOWCAP and Condie/Big Horn Basin – conspired to violate the False Claims Act. The same factual circumstances that constitute the antikickback ALSO constitute a collusive arrangement – a conspiracy – to submit false claims to Wyoming Medicaid. The claims were submitted in reckless disregard or deliberate ignorance of the truth or falsity of the underlying requirements for payment.

The Second Amended Complaint fully and adequately alleges all necessary facts and elements under Fed. R. Civ. P. 9(b).

## II.

### STANDARDS OF REVIEW

**A. Rule 12(b)(6):** Dismissal under Rule 12(b)(6) is appropriate <u>only</u> where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hospital Medical Center, 521 F.3d 1087, 1104 (9th Cir. 2008).* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In passing on a Rule 12(b)(6) motion, including one based on Rule 9(b), the court's role is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim upon which relief may be granted." *U.S. ex rel. Sikkenga v. Regence Blue Cross Blue Shield,* 472 F.3d 702, 715 (10th Cir. 2008).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a Rule 12(b)(6) motion, a court must accord the non-movant every favorable inference. *Conley v. Gibson,* 355 U.S. 41, 45-6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In considering a 12(b)(6) motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving

party." *Wyler Summit Partnership v. Turner Broad. Sys., Inc.*, 135 F.3d 658,661 (9th Cir. 1998). *Smith v. Jackson, 84 F.3d 1213,* 1217 (9th Cir. 1996). The Court "assume[s] that the facts as alleged are true, and examine[s] only whether relators' allegations support a cause of action under the False Claims Act. . ." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006). There is a strong presumption <u>against</u> dismissing an action for failure to state a claim. See *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997).

Under 12(b)(6), a complaint only need plead "'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp., 534 F.3d 1017*, 1022 (9th Cir. 2008)  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).    Defendants' arguments, therefore, must be heavily scrutinized.

In addition, pleading  on information and belief is not prohibited. The touchstone of plausibility is based in part  on other factual pleadings, the position of the Plaintiff-Relator, and the Relator's ability to have gained information upon the allegations concerning the scheme. These lead to a reasonable inference that the Plaintiff has a basis for that information and belief.  See, e.g., *U.S. ex rel. Mastej v. Health Management Associates, Inc. ,*  591 Fed.Appx. 693 (11th Cir. 2014).

**B.  Rule 9(b):** In the 10th Circuit, it is accepted that complaints brought under the FCA must comply with the requirements set forth in Fed.R. Civ. P. Rule 9(b). The purpose of Rule 9(b) is simply "to afford defendant[s] fair notice of plaintiff's claims

and the factual ground upon which [they] are based." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *United States ex rel. Polukoff v. St. Mark's Hospital,* 895 F.3d 730 (10th Cir. 2018), quoting  *Williams v. Duke Energy Int'l, Inc.,* 681 F.3d 788, 803 (6th Cir. 2012).

Rule 9(b), also requires the Court to look at an *overall view of the Complaint as a whole*. In its overall application, compliance with Rule 9(b) requires only that the complaint  be

> specific enough to give . . . Defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. *Neubronner v. Milken, 17 F.3d 666*,672 (9th Cir. 1993) (internal citations omitted).

Rule 9(b) is generally considered satisfied when a defendant has `fair notice' of the charges against it. *United States v. Kensington Hospital,* 760 F.Supp. 1120, 1126 (E.D.Pa.1991).  As similarly and succinctly stated by the Tenth Circuit,

> The complaint must provide enough information to describe a fraudulent scheme to support a plausible inference that false claims were submitted. *United States ex rel. Lemmon v. Envirocare of Utah, Inc.,* 614 F.3d 1163, 1169 (10th Cir. 2010).

Rule 9(b) does *not* require a plaintiff to allege, in detail, all facts supporting each and every instance of fraud, nor is a Plaintiff required to plead all evidence in

his/her possession.  A plaintiff  "cannot be expected to have personal knowledge of the details of corporate internal affairs" in corporate fraud cases. *In re Craftmatic Securities Litigation*, 890 F.2d 628, 645 (3d Cir.1989).

While the commonplace parlance of claims of fraud states that the Complaint must describe the  "who, what, when, where, and how of the misconduct charged," *United States ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010), at the motion-to-dismiss stage "this is a pleading requirement, not an evidentiary burden." Id. at 998-99. See also *United States ex rel. Campie v. Gilead Scis., Inc.*, 2015 WL 106255, at *6 (N.D. Cal Jan. 7, 2015).  With respect to its actual pleading requirements in False Claims Cases, "claims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Lemmon,* supra.

FCA claims comply with Rule 9(b) when they "provid[e] factual allegations regarding the who, what, when, where and how of the alleged claims." Id. But, "in determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016).

**C.  The Federal False Claims Act :** Pursuant to the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(A) *et seq.*, a cause of action arises when any person knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval or creates a false record or statement to decrease an obligation to transmit money owed

to the United States Government.

As defined under 31 U.S.C. §3729(b)(1), "knowing" and "knowingly" means: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is necessary.

**D. The Anti-Kickback Statute:** The Medicare and Medicaid Patient Protection Act, also known as the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b) prohibits any person or entity from knowingly and willfully offering to pay or paying any remuneration to another person to induce that person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal Health Care Program. This includes any State health program or health program funded in part by the federal government. 42 U.S.C. §§ 1320a-7b(b), 1320a-7b(f).

The statute provides, in pertinent part:

> [W]hoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
>
> 42 U.S.C. § 1320a-7b(b).

In the Patient Protection and Affordable Care Act (PPACA) the AKS was amended to explicitly state that "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act ("PPACA"), Pub.L. No. 111-148, 124 Stat. 119 § 6402(f) (2010) (codified as amended at 42 U.S.C. § 1320a-7b(g)).

"Kickbacks" are broadly defined to include payments, gratuities, and other benefits provided to physicians.  For purposes of the AKS the term "remuneration" includes the transfer of *anything of value*, directly or indirectly, overtly or covertly, in cash or in kind.

**E. Conspiracy Under the False Claims Act**. General civil conspiracy principles apply to conspiracy claims under the False Claims Act. *U.S. ex rel. Durcholz v. FKW, Inc.,* 189 F.3d 542, 546 n. 3 (7th Cir.1999); *United States v. Murphy,* 937 F.2d 1032, 1039 (6th Cir.1991).  *See also* *Calisesi,, et. al. ex rel. U.S.  V. Hot Chalk, Inc., et al.,* 2015 WL 1966463 (D. Az. 2015).  A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary, and each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir.1985).

[T]he Tenth Circuit, in applying Kansas law, has recognized the following elements of "civil conspiracy," such a claim: " '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate cause thereof.' " *McKibben v. Chubb,* 840 F.2d 1525, 1533 (10th Cir.1988) (quoting *Stoldt v.City of Toronto,* 234 Kan. 957, 678 P.2d 153, 161 (1984)).

> *Insurance Company Of North America v. Bath,* 726 F.Supp. 1247 (D. Wyo. 1989)

> <u>See also</u>  *Powell Valley Health Care, Inc. v. Healthtech Management Services, Inc.*, 2013 WL 12085501 (U.S. D.C. Wyo., May 23, 2013);

## III.
## RELATOR'S SECOND AMENDED COMPLAINT MORE THAN ADEQUATELY MEETS THE PLEADING REQUIREMENTS OF RULE(9)(B), AND PLEADS A CLEARLY EVIDENT  SCHEME TO SUBMIT FALSE CLAIMS

**A. The Story:** A plain narrative of the NOWCAP scheme begins with an unusual arrangement:  an actual, written kickback contract (itself a conspiracy) with another provider of Medicaid services. The story is actually quite straightforward.

1. NOWCAP, a community action program in the State of Wyoming, provided services to developmentally disabled Wyoming residence. As a community action program and not a traditional health care provider, NOWCAP did not and could not bill Medicaid for certain clinical services. Pursuant to the Wyoming § 1915(c) waiver under which it operated, NOWCAP (at times relevant to this case) received a capitated, per-enrollee payment for services covered under the waiver.

2. However, on or about December 1, 2014, NOWCAP entered into a specific, written agreement with former defendant Dr. Gibson Condie. Pursuant to that contract,  NOWCAP and Condie split, on a 50 – 50 basis, Condie's billings  to Wyoming Medicaid  for "certain services" performed by NOWCAP's personnel. These were supposedly rendered for people who were otherwise enrolled in NOWCAP's programs for  developmentally disabled Wyoming residents. The "services" for which Condie was billing were things actually performed by NOWCAP employees --- the "contractor" under the agreement.

3. The contract – on its face – worked like this:

    a. The "Company" is Condie / Big Horn Basin. The "Contractor" is NOWCAP.

    b. The parties entered into a specific agreement, including a written contract, by which NOWCAP – already a Wyoming Medicaid provider for its services under a §1915 waiver for developmentally disabled Wyoming residents  -- would become a contractor for Condie to bill purported 'bona fide' services to regular fee-for-service Medicaid.

    c. The "Contractor" (NOWCAP) , beginning December 1, 2014, began performing "services" for Condie / Big Horn Basin . The 'services'

were supposed to be "bona fide services" [1] under Wyoming Medicaid

program. The services were subject to the expressed specific expectations

of Condie / Big Horn Basin. The contract nowhere specified who could

provide such services, what such providers' qualifications must be, etc. [2]

     d . Pursuant to the contract,  NOWCAP,  had entered into an

agreement to refer, from its employees wearing their NOWCAP [3] identity,

to themselves ( now wearing their Condie / Big Horn Basin identity)  to

perform "services' for which Condie/Big Horn Basin  would bill  as its

own services.

     e.  Each time a NOWCAP employee  abandoned their relationship

with NOWCAP  to instead now become an agent /contractor [directly or

indirectly] of Condie/ Big Horn Basin and perform services for which

Condie/ Big Horn Basin [not NOWCAP] would independently bill

Wyoming Medicaid,  that action constituted a referral to Condie/ Big

Horn Basin, for which NOWCAP was paid a 50%- of-charges kickback

by Condie/ Big Horn Basin.

---

[1] The term 'bona fide services' is not defined under Wyoming Title 19 Medicaid. Thus the meaning in the contract is unknown.

[2] Because of this lack of specificity, any NOWCAP employee – a desk clerk, etc. – could purport to render 'services', report the 'services' to Condie, and Condie would bill Wyoming Medicaid under his billing identity.

[3] I.e. , a community action – developmentally disabled 1915 (c) waiver entity, receiving  a capitated payment for providing its services for each patient /enrollee.

f. The "Company" (Condie/ Big Horn Basin) billed Medicaid for these 'services' as if Condie/ Big Horn Basin actually performed them. This is evidenced by the fact that Condie/BHB paid NOWCAP over $177,000 in one year alone as its "cut" of the billing to Wyoming Medicaid (50%).

g. The payment is clear evidence of overt acts being performed pursuant to the conspiracy because payment for the services went to Condie, as he had billed the services as if he were the rendering and pay-to provider.

**B. The Second Amended Complaint:** Relator's Second Amended Complaint fully complies with the requirements of Rule 12(b)(6) and Rule (9)(b). First, none of the elements pled in this case are based on pure speculation. All are supported by factual allegations and the reasonable inferences from those factual allegations. Even allegations that, of necessity at this pleading stage are stated as "information and belief" are based fully on other facts as pled. The Relator, Mr. Gaskill was completely in a position to have firsthand knowledge of the schemes he investigated. All indicia of reliability, and all inferences from those indicia, support the Second Amended Complaint.

The Second Amended Complaint has further "fleshed out" the scheme as the court desired, and fully meets the "who, what, when, where, and how" pleading rubric

of Rule 9(b). The Second Amended Complaint even addresses a non-required element:
the 'why' of the scheme.

These include but are not limited to the following:

**1. Who?**   Defendant NOWCAP, in conjunction with Defendant Condie. [4] ;
(SAC ¶  46 - 58);

**2. What?**  Defendant NOWCAP, in conjunction with Defendant Condie,
entered into a written contract pursuant to which patients were "referred" from
NOWCAP to Condie and his entities under a pay-for referral (i.e. kickback) scheme.
All claims for services arising from such a scheme are, statutorily, false claims. Actual
claims were submitted to Medicaid by Condie on behalf of NOWCAP, as explicitly
outlined in the contract itself. Those claims resulted in payments from Condie to
NOWCAP in 2015 in the amount of over $177,000 for receipts from Wyoming
Medicaid. Pursuant to the contract on its face, that represents  only one-half of the
Medicaid billings and receipts – billed by Condie for services actually performed by

---

[4] "[W]e excuse deficiencies that result from the plaintiff's inability to obtain information
within the defendant's exclusive control. *See George*, 833 F.3d at 1255.  This certainly applies
to NOWCAP's claim that the complaint in deficient because the Relator cannot identify, at this
pleading stage, who within NOWCAP performed the services, or sent the billing sheet to
Condie to bill to Medicaid using Condie's identity. Note that the Defendant's argument that the
specific individuals, by name, within an organization must be identified in a complaint – at the
pleading stage – has never been held to be a requirement where False Claims are alleged
against that organization.

NOWCAP personnel (whose qualifications, identity and the specific services are in the exclusive possession of NOWCAP)[5] (SAC ¶ 46 – 58; 81; 84).

In addition, each of these actions constituted a clear conspiracy to violate the False Claims Act.  These included (1) two or more persons (SAC ¶ 4, 46 – 58; 81; 84); (2) an object to be accomplished (SAC ¶ 53-58);   (3) a meeting of the minds in the object or course of action (SAC ¶ 53-58);  (4) one or more unlawful overt acts (SAC ¶ 46 – 58; 81; 84); and (5) damages as the proximate cause [*sic*;][6] thereof (SAC ¶ 56 - 58).[7]

**3. When?**  From not later than the date of the contract (December 1, 2014) through at least 2015.  (SAC ¶ 53-54);

**4. Where?**  The premises and business locations of NOWCAP in Wyoming (Casper, Cody, Worland, and Rock Springs) (SAC ¶ 12);

**5. How?**  As described above, the scheme consisted of a contractually based kickback system and conspiracy to violate the False Claims Act. (SAC ¶ 53 – 58; 84; see also all paragraphs referenced above).

It is evident from the Second Amended Complaint itself that Defendant NOWCAP has received "fair notice of plaintiff's claims and the factual ground upon which [they] are based." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.,* 614 F.3d 1163, 1172 (10th Cir. 2010). Further, it is clear that sufficient specificity has been

---

[5] Id.

[6] Likely should have stated 'proximate result thereof'

[7] Conspiracy is specifically identified as a cause of action and theory in the Second Amended Complaint. (SAC ¶¶ 2, 4, 56, 81, and 84.

alleged " to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.,* 681 F.3d 788, 803 (6th Cir. 2012). See also *United States ex rel. Polukoff v. St. Marks Hospital, et.al.* 895 F.3d 730 (10th Cir. 2018), *petition for certiorari filed Jan 14, 2019. .*

     NOWCAP's motion should be denied in its entirety.

## IV.
## LEAVE TO AMEND THE COMPLAINT MUST BE ALLOWED IF THE COURT IS INCLINED TO GRANT DEFENDANTS' MOTION

     Leave to amend should be granted unless the district court "determines that the pleading <u>could not possibly be cured by the allegation of other facts</u>." *Lopez v. Smith* , 203 F.3d 1122, 1127 (9th Cir. 2000) This approach is consistent with Fed. R. Civ. P. 15(a). See *Foman v. Davis,* 371 U.S. 178, 182 (1962) (Rule 15(a)'s mandate "is to be heeded."). If, and to the extent, that this Court determines that the Second Amended Complaint may be deficient in any respect, Relators should be given the opportunity to address any issues through further amendment. See also *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010) (quoting *Miller ex. Rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1250 (10th Cir. 2009) .

## V.
## CONCLUSION

     The scheme by NOWCAP is more than adequately pled and the claims arising from the kickback scheme are, statutorily, False Claims. The same scheme, and same facts , are evidence of a conspiracy to submit claims for unknown services , rendered by

unknown persons in the employ of  NOWCAP, but to submit claims to Wyoming

Medicaid for these "ghost services" as though Condie and Big Horn Basin had

performed them.  At no time in their motion does Defendant NOWCAP claim that it

didn't know what wrongs it is alleged to have committed. The facts as pled, taken as

true at this pleading stage, and the Second Amended Complaint taken as a whole,  lead

not only to logical and fair inferences supporting the Complaint but also lead to

*inevitable, and irrefutable*  conclusions in support of the Relator's case.

For all of the foregoing reasons, Defendant's  Motion should be denied in its

entirety.

Respectfully submitted,

By*:   /s/ Robert D. Sherlock*

Robert D. Sherlock (Utah Bar No. 02942)
*(admitted pro hac vice )*
**EISENBERG, CUTT, KENDELL &
OLSEN**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
rsherlock@egclegal.com

## CERTIFICATE OF SERVICE

I hereby certify that I am an attorney at Eisenberg, Gilchrist & Cutt.  My business address is 215 S. State Street, Suite 900, Salt Lake City, Utah  84111.  I am over the age of eighteen years and not a party to the above-titled action.  I certify that on April 10, 2019 a true and correct copy of the following  document was served on the following recipients via CM/ECF, the Court's electronic transmission system:

**Plaintiff-Relator's Memorandum In Opposition To Motion to Dismiss Second Amended Complaint**

Timothy M. Stubson, (Bar #6-3144)
Mistee Elliott (Bar #6-3540)
**Crowley Fleck PLLP**
111 West 2nd Street, Suite 220
(307) 232-6901
tstubson@crowleyfleck.com
melliott@crowleyfleck.com
Attorneys for Defendant NOWCAP

R. Michael Shickich
**Law Offices Of  R. Michael Shickich, LLC**
1204 East 2nd Street
Casper, WY 82601
rms@injuryfirm.net

**and to the following via the Court's ECF system, email, and United States Mail:**

Mark A. Klaasen
**United States Attorney**
P.O. Box 668
Cheyenne, WY 82003-0668

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 10, 2019

*/s/ Robert D. Sherlock*

Robert D. Sherlock