IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JUL -3 PM 2: 04

STEPHAN HARRIS, CLERK
CHEYENNE

| | |
|---|---|
| UNITED STATES OF AMERICA *ex. rel.* MARK GASKILL,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWEST COMMUNITY ACTION PROGRAM OF WYOMING, INC.,<br><br>Defendant. | Case No. 16-CV-00201-ABJ |

## ORDER DENYING NOWCAP'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

THIS MATTER comes before the Court on Defendant Northwest Community Action Program of Wyoming, Inc.'s ("NOWCAP") *Motion to Dismiss Second Amended Complaint*, ECF No. 57. NOWCAP filed a supporting memorandum, ECF No. 58, where it argued that Plaintiff-Relator Mark Gaskill's ("Gaskill") *Second Amended Complaint*, ECF No. 49, should be dismissed for failure to state a claim and lack of particularization. Gaskill disputed NOWCAP's arguments in an opposing memorandum, ECF No. 59, to which NOWCAP filed a three-page reply memorandum, ECF No. 60. Having considered all the filings, the applicable law, and being otherwise fully advised, the Court FINDS and ORDERS as follows:

1

## I. BACKGROUND[1]

Even though this Court has dismissed one of his complaints for failing to state a claim, Gaskill's renewed effort to draft a sufficient complaint remains light on the facts. In the new twenty-six page complaint, approximately three full pages contain factual allegations relevant to Gaskill's *qui tam* action against NOWCAP. Below, the Court will summarize the pertinent allegations.

On October 27, 2017, Dr. Condie pled guilty to healthcare fraud. *Sec. Am. Compl.* ¶ 50. Gaskill alleges that NOWCAP was involved with Dr. Condie's fraud through an illegal kickback scheme. According to Gaskill, "[b]eginning not later than 2011, [NOWCAP and Dr. Condie] . . . entered into a service relationship under which Dr. Condie billed Wyoming Medicaid for services actually rendered by NOWCAP." *Id.* ¶ 53.

Dr. Condie, through his business Big Horn Basin Mental Group, Inc. ("BHB"), memorialized this so-called Service Agreement with NOWCAP in 2014. *Id.* ¶ 54. Per the terms of that written agreement, NOWCAP performed services for BHB and Dr. Condie. *Id.* Once BHB and Dr. Condie billed Wyoming Medicaid for those services, they agreed to "pay [NOWCAP] one-half (50%) of all services billed . . . with no retainage or reduction of payment being withheld" if Wyoming Medicaid chose not to pay for the services. *Id.* For concealing NOWCAP's billing identity and referring patients to them, Gaskill alleges that NOWCAP agreed to evenly split with BHB and Dr. Condie profits obtained through

---

[1] The following facts are derived from the *Second Amended Complaint.*, ECF No. 49. Where these facts are more than "mere conclusory statements," the Court will accept them as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

the Service Agreement. *Id.* ¶ 56. Also, Gaskill claims that NOWCAP referred certain individuals enrolled in its programs to BHB and Dr. Condie. *Id.* ¶¶ 56–57. Gaskill contends that the Service Agreement was profitable for NOWCAP and that, in 2015, NOWCAP received $177,640 under the scheme. *Id.* ¶ 58. Further, NOWCAP's clientele increased from fifty "to over 300." *Id.* ¶ 53.

NOWCAP now moves for this Court to dismiss Gaskill's *Second Amended Complaint*. NOWCAP's motion is based on two grounds. First, NOWCAP argues that, like Gaskill's *Amended Complaint*, Gaskill's *Second Amended Complaint* fails to state a prima facie violation of the False Claims Act ("FCA"). *See* ECF No. 58 at 1, 3–6. Second, NOWCAP asserts that, even if Gaskill corrected the faults in the prior complaint, his new complaint still fails to state a claim with sufficient particularity. *Id.* at 6–7. The Court will now consider both arguments.[2]

## II. 42 U.S.C. § 1320a-7(b)(1)

Like the *Amended Complaint*, the *Second Amended Complaint* asserts that NOWCAP violated the FCA through violation of the Anti-Kickback Statute ("AKS"). The AKS is tied to the FCA because "[a] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. § 1320a-7b(g). Hence, if NOWCAP violated the AKS and a Medicaid claim resulted from NOWCAP's violation, then NOWCAP is deemed to have also violated the

---

[2] In its motion to dismiss the amended complaint, NOWCAP argued the public disclosure bar defeated Gaskill's complaint. ECF No. 21 at 7–9. In the current motion to dismiss, NOWCAP abandons that theory. As a result, the Court will not at this time address the public disclosure bar.

3

FCA. The Court must therefore initially determine whether Gaskill has pled that NOWCAP violated the AKS.

The *Amended Complaint* alleged that NOWCAP violated the following provision of the AKS:

> Whoever knowingly and willfully *offers or pays* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
> (A) to refer an individual to a person *for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program*, or
> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

42 U.S.C. § 1320a-7b(b)(2) (emphasis added). Although it was not clear, it seemed as if Gaskill's original theory of liability was that NOWCAP provided remuneration to Dr. Condie and BHB in return for referrals.

But there was a problem with Gaskill's § 1320a-7b(b)(2) argument. After considering Tenth Circuit precedent, the Court held, "[f]or the referral to constitute a prohibited kickback, the plain language of the AKS requires the entity or person receiving the referral be associated with 'furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.'" ECF No. 48 at 8 (quoting *United States ex rel. Lacy v. New Horizons, Inc.*, 348 F. App'x 421, 428 (10th Cir. 2009) (unpublished); *United States ex rel. Conner v. Salina*

4

*Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1223 (10th Cir. 2008)). In other words, when relators allege that defendants violated the AKS under § 1320a-7b(b)(2), they must show "the offer or payment [was] made 'to induce' referrals" of patients to the defendants, thereby furnishing those defendants with the opportunity to bill the federal government for services rendered. HUGH E. AARON, *Application of the Medicare and Medicaid Anti-Kickback Statute to Business Arrangements Between Hospitals and Hospital-Based Physicians*, 1 ANNALS HEALTH L. 53, 60 (1992); *see also United States v. LaHue*, 261 F.3d 993, 996 (10th Cir. 2001) (citing *United States v. Anderson*, 85 F. Supp. 2d 1047, 1053 (D.Kan.1999)) (stating that defendants violate the AKS by soliciting or receiving remuneration "in exchange for Medicare or Medicaid patient referrals . . . .").

In this case, NOWCAP needed to "borrow" a billing identity before it could furnish a service payable by Medicaid because it was unable to independently bill the federal government. *See Sec. Am. Compl.* ¶ 54. Also, the *Amended Complaint* did not allege that NOWCAP offered or paid any remuneration to BHB or Condie in return for Medicaid patient referrals, which makes sense—NOWCAP could not have billed for those patients on its own. Therefore, the Court concluded that, on its face, Gaskill's complaint failed to plead a violation of § 1320a-7b(b)(2). ECF No. 48 at 9.

Gaskill's second attempt corrects the problem. At paragraph twenty-one, Gaskill's *Second Amended Complaint* quotes a more germane provision of the AKS:

> (1) Whoever knowingly and willfully *solicits or receives* any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
> (A) *in return for referring an individual* to a person for the furnishing or arranging for the furnishing of any item or service for which

> payment may be made in whole or in part under a Federal health care program, or
> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

42 U.S.C. § 1320a-7b(b)(1) (emphasis added). Instead of focusing on offers or payments, § 1320a-7b(b)(1) emphasizes soliciting or receiving remuneration. Under the plain language of this section, NOWCAP can be held liable for referring patients to BHB or Dr. Condie if it did so in exchange for remuneration. *See LaHue*, 261 F.3d at 996 (citation omitted); AARON, *supra* at 60–61.

A review of Gaskill's new complaint shows alleged facts supporting a prima facie violation of 42 U.S.C. § 1320a-7b(b)(1). Pointing to the language of the Service Agreement, Gaskill alleges that Dr. Condie and BHB evenly split Medicaid payments with NOWCAP. *Sec. Am. Compl.* ¶ 56.[3] NOWCAP thus received remuneration under the agreement, thereby satisfying the "soliciting or receiving" aspect of the transaction. The other half of the transaction is that NOWCAP must have referred patients to Dr. Condie

---

[3] NOWCAP criticizes Gaskill for including inconsistent language regarding who was kickback payor and the payee. ECF No. 60 at 2. The Court is sympathetic to NOWCAP's position; Gaskill's language has been inconsistent. In parts of his complaint, Gaskill implies that NOWCAP paid Dr. Condie and BHB. *Sec. Am. Compl.* ¶ 56. In other parts, Gaskill suggests that NOWCAP was actually the payee. *Id.* ¶ 58. And in his opposition memorandum, Gaskill doubles down on Dr. Condie and BHB being the payors. ECF No. 59 at 11. Nonetheless, the Court finds that the flow of Medicaid payments must have started with Dr. Condie and BHB and ended with NOWCAP. Since NOWCAP needed their billing identity, Wyoming Medicaid first paid Dr. Condie and BHB, then Dr. Condie and BHB split the profits by sending half to NOWCAP. Regardless of whether NOWCAP is considered the de facto payor regarding Dr. Condie and BHB's portion, Gaskill's complaint sufficiently alleges that NOWCAP was the payee regarding its split of the profits. *Sec. Am. Compl.* ¶ 58. And with regard to that portion, NOWCAP would not have received those profits unless it had referred the patients to Dr. Condie and BHB and then used their billing identity.

and BHB. And Gaskill makes that allegation, too: he claims that NOWCAP referred to Dr. Condie and BHB the very patients upon which the profit-splitting scheme hinged. *See id.* ¶¶ 53–58; ECF No. 59 at 13. Because NOWCAP could not independently bill Wyoming Medicaid—which was the problem with Gaskill's last complaint—NOWCAP needed to refer those patients to Dr. Condie and BHB, provide undercover services, and then allow Dr. Condie and BHB to bill Wyoming Medicaid on NOWCAP's behalf. *See Sec. Am. Compl.* ¶ 54.[4]

Accordingly, the Court finds that Gaskill's second amended complaint alleges that NOWCAP received remuneration in return for referring patients to Dr. Condie and BHB. Though Dr. Condie and BHB might not have been performing services for those referred patients, they were able to arrange for NOWCAP to furnish services for those patients in a manner whereby "payment [would] be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1)(A). This occurred through NOWCAP's use of Dr. Condie and BHB's billing identity.

Besides commanding that both sides of the transaction take form—that is, that the defendant received remuneration for referring patients—42 U.S.C. § 1320a-7b(b)(1) also involves a scienter element. Relators must "show that the payment was made *for the purpose of inducing* the referral." ALICE G. GOSFIELD, MEDICARE AND MEDICAID FRAUD AND ABUSE § 2:67 (June 2019 update). That said, in the Tenth Circuit, inducing referrals

---

[4] In addition, Gaskill alleges that NOWCAP and BHB and Dr. Condie cross-referred patients. *Sec. Am. Compl.* ¶ 57. He states, "NOWCAP referred, on a reciprocal basis, enrollees of NOWCAP programs to Defendants BHB and [Dr.] Condie for separately reimbursable services." *Id.*

7

need not be the payment's sole purpose. In *United States v. McClatchey*, the Tenth Circuit held "that a person who offers or pays remuneration to another person violates the Act so long as one purpose of the offer or payment is to induce Medicare or Medicaid patient referrals." 217 F.3d 823, 835 (10th Cir. 2000).

By the same token, as it relates to NOWCAP's *receipt* of renumeration, the question is whether one purpose of NOWCAP's referral of patients to BHB and Dr. Condie was to induce them to pay NOWCAP. Neither party gives the issue much thought. Nonetheless, the Court finds Gaskill's complaint satisfies the "one purpose" requirement. Dr. Condie and BHB executed the Service Agreement with NOWCAP so that they could "commence business under [the] agreement . . . ." *Sec. Am. Compl.* ¶ 54. Insofar as it concerned NOWCAP, that business consisted of referring patients to Dr. Condie and BHB, providing services for those patients, benefiting from Dr. Condie and BHB's ability to bill Wyoming Medicaid, and then acquiring its share of the earnings. In other words, the purpose of the agreement was to "commence business" and collect payments. And with respect to the latter, NOWCAP was a success: "During the calendar year 2015 alone, Defendant BHB paid $177,640 to NOWCAP pursuant to this scheme." *Id.* ¶ 58. The Court therefore finds that one purpose of NOWCAP's referral of patients to Dr. Condie and BHB was to induce them to pay NOWCAP through the Service Agreement.

Hence, Gaskill states allegations that, if true, would establish NOWCAP's liability under 42 U.S.C. § 1320a-7b(b)(1)(A). He alleges that NOWCAP received remuneration in return for referrals. He also alleges that one of NOWCAP's purposes for those referrals was to "commence business under the agreement." Finally, he alleges that NOWCAP,

through BHB and Dr. Condie, submitted claims to Wyoming Medicaid in accordance with the Service Agreement. The Court therefore finds that Gaskill states a claim that NOWCAP violated the AKS and FCA.[5]

### III. FED. R. CIV. P. 9(b)

Even if Gaskill stated a prima facie claim under the FCA by means of the AKS, NOWCAP alleges that his complaint is not sufficiently particularized. Claims based on the FCA must comply with the requirements of FED. R. CIV. P. 9(b). *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016). FED. R. CIV. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Claims falling under the ambit of FED. R. CIV. P. 9(b) must provide defendants with "fair notice" of those claims "and the factual ground upon which [they] are based." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). Relators must "show the specifics of a fraudulent scheme and provide an adequate basis for the reasonable inference that false claims were submitted as part of that scheme." *Id.* (citing *United States ex rel. Duxbury v. Ortho Biotech Prods.*, 579 F.3d 13, 29 (1st Cir. 2009); *United States ex rel. Lusby v. Rolls-Royce Corp.*, 470 F.3d 849,

---

[5] Gaskill also claims that his complaint alleges "[c]onspiracy . . . as a cause of action and theory . . . ." ECF No. 59 at 14 n.7. Because NOWCAP does not mention conspiracy in either of its briefs supporting its motion to dismiss, the Court will not discuss it either.

854–55 (7th Cir. 2009); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

Besides these requirements, which the Court outlined in its last order, NOWCAP urges the Court to graft on a few more features. Citing a United States District Court opinion from Florida, NOWCAP claims that relators must describe kickback schemes by "including the time, place, and substance of the defendant's alleged fraud. *United States v. Choudry*, 262 F. Supp. 3d 1299, 1307 (M.D. Fla. 2017)." ECF No. 58 at 3 (internal quotation marks omitted). NOWCAP also claims that, to satisfy FED. R. CIV. P. 9(b), Gaskill should discuss "the names of the doctors who received the incentives, the names of the defendants' employees who negotiated the incentives with the doctors, precisely what the incentives were, when they were provided, why they were provided, and why they were illegal." *Id.* at 3–4 (internal quotation marks omitted) (quoting *Choudry*, 262 F. Supp. 3d at 1307).

Returning to this circuit, NOWCAP then claims that Gaskill must describe particularly how NOWCAP's allegedly wrongful actions related to submission of an actual false claim. *Id.* at 4 (quoting *U.S. ex rel. Sharp v. E. Oklahoma Orthopedic Ctr.*, No. 05-CV-572-TCK-TLW, 2009 WL 499375, at *3 (N.D. Okla. Feb. 27, 2009)). To do that, NOWCAP asserts that Gaskill must identify "(1) the dates of the false claims, (2) the content and identification numbers of the forms or the bills submitted, (3) the fees charged to the government, (4) the goods and services for which the government was billed, (5) the persons involved in the billing, (6) the length of time between the alleged fraudulent

practices and the submission of the claims based on those practices." *Id.* (citing *Sharp*, 2009 WL 499375, at *[4]).

Many of NOWCAP's proposed requirements are not the law of the Tenth Circuit. And where NOWCAP's requirements overlap with Tenth Circuit law, the Court finds that Gaskill's complaint satisfies them.

Starting with *Choudry*, the Court finds that its "time, place, and substance" requirement coincides with the Tenth Circuit's "who, what, when, where, and how" standard, which it set forth in *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019). Under that standard, relators must plead "the time, place, content, and consequences of the fraudulent conduct." *Lemmon*, 614 F.3d at 1171 (citing *Koch*, 203 F.3d at 1236). In *Lemmon*, the Tenth Circuit explained that can be accomplished by pleading "only . . . the specifics of a fraudulent scheme and provid[ing] an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Id.* at 1172 (citations omitted).

Gaskill has done that here. He states that the fraudulent scheme is a profit-sharing arrangement through which NOWCAP referred patients to BHB and Dr. Condie, provided undercover services for those patients, and then made use of BHB and Dr. Condie's billing identity. These parties began operating under the agreement in 2011 (or earlier) and memorialized it in 2014. *Sec. Am. Compl.* ¶¶ 53–54. By 2015, Gaskill claims that NOWCAP was making $177,640 annually through the scheme. *Id.* ¶ 58. Finally, Gaskill alleges that NOWCAP provided services under the agreement at its business locations in

Wyoming. *See id.* ¶ 12. Thus, the Court concludes that the complaint satisfies both *Choudry's* and the Tenth Circuit's standards.

Next, NOWCAP alleges that Gaskill must provide "the names of the doctors who received the incentives, the names of the defendants' employees who negotiated the incentives with the doctors, precisely what the incentives were, when they were provided, why they were provided, and why they were illegal." ECF No. 58 at 3 (citing *Choudry*, 262 F. Supp. 3d at 1307). In view of *Lemmon*, it does not seem that the Tenth Circuit would require this level of detail when Gaskill already described the Service Agreement and showed that claims were made through it. But even if it did, Gaskill's complaint suffices.

Here, Dr. Condie was the doctor incentivized to pay NOWCAP. Also, per the Service Agreement, the incentives were reciprocal: the incentive for NOWCAP's referrals was Dr. Condie and BHB's payment; the incentive for Dr. Condie and BHB's payment was NOWCAP's referrals. The Service Agreement's "why" is self-evident—the parties executed the agreement to conduct business and make money. As for the dates, by the terms of the Service Agreement the reciprocal incentives were memorialized on December 1, 2014. Next, Gaskill explains that the incentives were illegal because they violated the AKS and because NOWCAP used Dr. Condie and BHB to "receive payment for services it was not permitted or qualified to perform and bill." *Sec. Am. Compl.* ¶ 54. Finally, because NOWCAP knows which of its employees negotiated the Service Agreement with Dr. Condie, the Court finds that the purpose of the notice pleadings rules have been more than satisfied, Gaskill's lack of knowledge about those employees notwithstanding. *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (finding that

a relator's complaint satisfied FED. R. CIV. P. 9(b) even when it did not discuss "which employees handle federal billing for procedures reimbursable under Medicare . . . ."), *cert. dismissed sub nom. Intermountain Health Care, Inc. v. U.S. ex rel. Polukoff*, No. 18-911, 2019 WL 188163 (U.S. June 10, 2019); *see also George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) ("in determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." (citations omitted)). Consequently, the Court finds that the *Second Amended Complaint* satisfies *Choudry*'s list of additional factors.

Third, NOWCAP asserts that Gaskill must describe particularly how its allegedly wrongful actions related to submission of an actual false claim. ECF No. 58 at 4 (quoting *Sharp*, 2009 WL 499375, at \*3). If at one time that were the law of the Tenth Circuit, it is no longer. Under *Lemmon*, relators need "only" provide "the specifics of a fraudulent scheme and . . . **an adequate basis for a reasonable inference** that false claims were submitted as part of that scheme." 614 F.3d at 1172 (emphasis added) (citations omitted); *see also United States ex rel. Wagner v. Care Plus Home Health Care, Inc.*, No. 15-CV-260-GKF-JFJ, 2017 WL 6329850, at \*4 (N.D. Okla. Dec. 11, 2017) (discussing *Sikkenga* and *Lemmon's* friction over the actual submission of a false claim pleading requirement). Gaskill has done that through directing the Court to the Service Agreement and payments NOWCAP received through it.

Finally, NOWCAP argues that Gaskill must satisfy *Sharp's* six-factor test. However, those factors are not elements, and, as *Sharp* explained, relators need only allege

"at least *some* of the following [factors] . . . ." 2009 WL 499375, at *4. And here, Gaskill has alleged some of those factors: he provides relevant dates for the kickback scheme (including the date the parties to the scheme memorialized it), explains that NOWCAP made $177,640 under the scheme in 2015, and generally describes the nature of NOWCAP's services.

Furthermore, in light of *Lemmon*, the Court is not convinced that *Sharp* and its factors are the be-all and end-all of the analysis. *Sharp* is a 2009 opinion by a district court; *Lemmon* is a 2010 opinion by the Tenth Circuit Court of Appeals. *Lemmon* is therefore the more recent and influential authority. Once more, under *Lemmon*, Gaskill need only show the specifics of NOWCAP's scheme and a reasonable basis for the Court to infer that "false claims were submitted as part of that scheme." 614 F.3d at 1172. As discussed, Gaskill satisfied that standard. Accordingly, the Court finds Gaskill's new complaint is sufficiently particularized under FED. R. CIV. P. 9(b).

### IV. CONCLUSION

As he originally framed the transaction, Gaskill was unable to fit the Service Agreement into the AKS. NOWCAP did not pay money in exchange for referrals for which it ultimately billed Wyoming Medicaid; NOWCAP received money in exchange for referrals for which BHB and Dr. Condie ultimately billed Wyoming Medicaid. Now that Gaskill has corrected the transaction's orientation so as to assert a claim under the provision of the AKS dealing with receiving remuneration for referrals, Gaskill has asserted a claim for relief that is plausible on its face. That claim is also sufficiently particularized under FED. R. CIV. 9(b) since it explains the specifics of the Service Agreement and expresses that false claims were submitted through that agreement. It is therefore

**ORDERED** that NOWCAP's *Motion to Dismiss Second Amended Complaint*, ECF No. 57, is hereby **DENIED.**

Dated this 2d day of July, 2019.

_____
Alan B. Johnson
United States District Judge